NAIDHANH

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                            23 Cr. 490 (SHS)

5   WAEL HANA,

6
                    Defendant.
7
    ------------------------------x
8
                                             October 18, 2023
9                                            2:30 p.m.

10
    Before:
11
                        HON. SIDNEY H. STEIN,
12
                                             U.S. District Judge
13

14

15                          APPEARANCES

16   DAMIAN WILLIAMS
          United States Attorney for the
17        Southern District of New York
     BY:  PAUL M. MONTELEONI
18        ELI J. MARK
          DANIEL C. RICHENTHAL
19        Assistant United States Attorneys

20   GIBBONS, P.C.
          Attorneys for Defendant Wael Hana
21   BY:  LAWRENCE S. LUSTBERG
          ANNE M. COLLART
22        RICARDO SOLANO, JR.

23   ALSO PRESENT:   Tracee Mergen, Special Agent (FBI)
                     Ryan Larkin, Special Agent (FBI)
24

25

NAIDHANH

| 1 | (Case called) |

THE COURT:  All right.  Mr. Hana, I'm going to be asking you a series of questions for the next, oh, half hour or so.  Let's start by having you tell me your full name.

THE DEFENDANT:  Wael Hana.

THE COURT:  Mr. Hana, do you speak and understand English fluently?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Is English your native language, sir?

THE DEFENDANT:  The first language is Arabic.  The second is English, yes.

THE COURT:  Do you consider yourself fluent in English?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you conduct your normal business affairs in English?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you wish, sir, you have a right to have an interpreter here in Arabic, or any other language you want, both today or in any other proceeding in this matter.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you want an interpreter here?

THE DEFENDANT:  Thank you.  No, thank you, your Honor.

THE COURT:  How old are you, sir?

NAIDHANH

1          THE DEFENDANT:  Forty years old.

2          THE COURT:  What is the highest level of education

3    you've obtained?

4          THE DEFENDANT:  I have a Bachelor's Degree of Social

5    Work from Egypt.

6          THE COURT:  All right.  That's the equivalent of a

7    college graduation here --

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  -- a B.S. or a B.A.?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  All right.  Thank you.

12         Was all of your education up to that point in Egypt?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  In the past 24 hours, Mr. Hana, have you

15    taken any pills, medicine, or drugs of any kind?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  In the past 24 hours, have you taken any

18    alcoholic beverages?

19         THE DEFENDANT:  I had a glass of wine with dinner last

20    night.

21         THE COURT:  All right.  Did that affect your

22    cognition, your ability to think or to process information

23    today?

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  In other words, are you feeling any

NAIDHANH

1    effects of that single glass of wine last night?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  All right.  Not surprised.

4            Have you ever been treated or hospitalized for any

5    mental illness, sir, or any alcohol or substance abuse?

6            THE DEFENDANT:  No, your Honor.

7            THE COURT:  Are you now or have you recently been

8    under the care of a doctor or a psychiatrist?

9            THE DEFENDANT:  No, your Honor.

10            THE COURT:  Do you feel alert, awake, and clear headed

11    today as you stand here before me?

12            THE DEFENDANT:  Yes, your Honor.

13            THE COURT:  Now, Mr. Lustberg, do you have any doubt

14    as to Mr. Hana's competence to proceed today with the Curcio

15    hearing?

16            MR. LUSTBERG:  No, your Honor.  None at all.

17            THE COURT:  Ms. Collart?

18            MS. COLLART:  No, your Honor.  I do not.

19            THE COURT:  I see we now have Mr. Solano.

20            Do you have any doubt as to Mr. Hana's competence to

21    proceed today?

22            MR. SOLANO:  No, your Honor.

23            THE COURT:  All right.  I hereby find that Mr. Hana is

24    competent to proceed today.

25            Mr. Hana, when I refer to your attorneys, I'm going to

NAIDHANH

1    refer to Mr. Lustberg and Ms. Collart and Mr. Solano.

2            Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Indeed, if there are other attorneys that

5    you work with in the Gibbons law firm, I am including them as

6    well.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Okay.  Do you understand, sir, that you've

10   been charged with serious federal felonies in the superseding

11   indictment?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Do you understand that Count 1 of the

14   superseding indictment charges you with conspiracy to commit

15   bribery pursuant to 18 U.S.C. 371, and the maximum sentence of

16   that count is a fine and/or imprisonment for up to five years?

17           Do you understand that?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  The maximum penalty of Count 2 that

20   charges you with conspiring to commit honest services fraud in

21   violation of 18 U.S.C. 1349 is a fine and imprisonment for up

22   to 20 years, or either or both.

23           Do you understand that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  The maximum penalty of Count 4 that

NAIDHANH

1    charges you with conspiring -- conspiracy for a public official

2    to act as a foreign agent pursuant to 18 U.S.C. 371 is a fine

3    and/or imprisonment for up to five years.

4              Do you understand that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Now, during my questioning this afternoon,

7    sir, if at any time you don't understand anything I'm asking

8    you, or, for that matter, if you don't understand anything I'm

9    telling you, I want you to stop me, Mr. Hana.  You can ask me

10   anything you want.  You can ask your attorneys anything you

11   want at any time in this proceeding.  My concern is to make

12   certain that you understand what I'm asking you and you

13   understand what I'm telling you.

14             Do you understand that, sir?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  All right.  Are you currently represented

17   here by Mr. Lustberg, and Ms. Collart, and Mr. Solano, and the

18   law firm of Gibbons, PC?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Are you satisfied up to now with their

21   representation of you?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Mr. Hana, the reason for this proceeding

24   is an issue has arisen as to whether or not there's a conflict

25   of interest or a potential conflict of interest with respect to

NAIDHANH

1    the representation of those individuals and their firm in

2    continuing to represent you.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  Now, my question is going to fall into

6    basically two buckets, because there are two areas of potential

7    conflict or actual conflict here.  The first bucket arises from

8    those lawyers' current representation of Mr. Daibes, because

9    your codefendant is Mr. Daibes, but it appears, and it's true,

10   that Mr. Lustberg and the Gibbons firm represents Mr. Daibes in

11   what's alleged to be a related federal case in the District of

12   New Jersey.

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  The second bucket of questions I'm going

16   to be asking you arises from Mr. Lustberg's potential personal

17   knowledge of certain facts which may be relevant in this case.

18   Each of those buckets raises separate issues about a potential

19   conflict here.

20           Do you understand that?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  The purpose of this proceeding is for me

23   to get a certain comfortable level, if it's true, that you

24   understand what the nature of that potential conflict is.  So

25   I'm going to be asking you questions to probe that, and toward

NAIDHANH

1    the end of this colloquy, I'm going to ask you to be describing

2    in your own words what you think the nature of that conflict

3    is.

4           Do you understand that?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Okay.  Now, I haven't made any conclusions

7    regarding that potential conflict or actual conflict.  In other

8    words, I'm not making a determination that they do have such a

9    conflict at this time.  What's important is you have a right to

10   conflict-free counsel.  In fact, the 6th Amendment to the

11   Constitution gives you the right to counsel in a criminal case,

12   and that's been interpreted to mean effective counsel.  That,

13   in turn, has been interpreted to mean conflict-free counsel.

14   In other words, counsel whose only obligation is to you, and

15   not to anybody else.  That's your right under the 6th

16   Amendment.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  It's up to you to decide whether or not,

20   in light of the potential risks which we'll be going through

21   posed by their serving as your counsel, you wish to continue

22   with them as your lawyers, or whether you want to find other

23   lawyers, because you're always free to find other lawyers.

24          Now, you may remember the last time we were here I

25   said to everybody, except Mr. Menendez, who was not present,

NAIDHANH

1    that -- I was alerting you that if for any reason at any point

2    here you want new counsel, you should do that far enough in

3    advance that new counsel coming in won't lead to an adjournment

4    of the trial date, because new counsel is not going to be a

5    reason for my pushing the trial date out.  But that's another

6    issue.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Okay.  So I'm saying if you do want new

10   counsel at any point, do it far enough in advance of the trial

11   that new counsel can come on and effectively represent you by

12   the trial date.

13           As I said, the purpose here is to describe to you what

14   the possible conflict is, and to make sure you understand the

15   risks in that potential conflict, and then for you to determine

16   whether or not you want to waive the potential conflict and go

17   forward with Mr. Lustberg, and Ms. Collart, and Gibbons PC as

18   your lawyers.

19           Do you understand the purpose of the colloquy here?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Okay.  Now, at any point, sir, you have

22   the ability, I'm giving you the ability to ask to speak to

23   another lawyer who does not have this potential conflict or

24   actual conflict.  In other words, somebody who has absolutely

25   no connection with Mr. Daibes and that related -- allegedly

NAIDHANH

1 related New Jersey case.  I'll appoint that person free of

2 charge to talk to you, so you can get independent counsel, and

3 I'll do that at any point in this proceeding.  Indeed, at the

4 end, I'll will ask you, and your lawyer will remind me if I

5 fail to ask you, whether you want another counsel to come in.

6 But that's your right.

7             Do you understand that?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  I'd appoint that person free of charge as

10 well.  As I said, I'm prepared to appoint somebody else, but

11 you also have the right to retain another lawyer to talk to

12 you, another independent lawyer if you so wish.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  You can stop me at any time you want to be

16 able to consider this or to take a break or talk to another

17 lawyer.  We can pick it up at another time.

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  All right.  Let me now proceed to talk

21 about the potential risks in proceeding with Mr. Lustberg,

22 Ms. Collart, Mr. Solano, and Gibbons, PC.

23             Now, as I've told you, under the Sixth Amendment to

24 the Constitution, an attorney who represents somebody in a

25 criminal case has an obligation to represent their client to

NAIDHANH

1    the best of his or her ability.  That lawyer has a duty of

2    loyalty, that's 100 percent loyalty to the client, and not to

3    anybody else.

4              Do you understand that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  There's that duty of loyalty regardless of

7    who's paying the bills for the representation.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Now, in addition to the duty of 100

11   percent loyalty that a lawyer has to a client, an attorney also

12   has the duty of confidentiality.  I imagine you've discussed

13   that with your attorneys already.  Anything you tell your

14   attorneys, as long as it's done in the context of their

15   representation of you, and in the context of you seeking legal

16   advice, or, for that matter, their rendering legal advice to

17   you, all of that is confidential.

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Your attorneys are not permitted, under

21   the rules of ethics, to tell anyone about your conversations

22   with them, insofar as it goes to your seeking legal advice or

23   their giving legal advice, and they can't use anything they've

24   learned through your representation, through their

25   representation of you, in any way without your consent, except

NAIDHANH

1    in very limited circumstances, which, to my knowledge, are not

2    applicable here.

3          Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  So they can't say anything to anybody

6    about what you're talking about.  That's attorney-client

7    confidentiality.

8          So, Mr. Lustberg, and Ms. Collart, and Mr. Solano have

9    a duty of 100 percent loyalty to you and only you, and a duty

10   of confidentiality that arises out of their representation.

11         Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Now, it so happens that Mr. Lustberg and

14   Ms. Collart have formed a -- previously formed an

15   attorney-client relationship with one of your codefendants

16   here, Mr. Daibes, in connection with a federal criminal matter

17   that is currently pending in the District of New Jersey.

18         Are you aware of that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  That is alleged to have a relationship to

21   this case.

22         Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Now, that case is proceeding, as I

25   understand from news reports, that Mr. Daibes, at some point,

NAIDHANH

1  plead guilty to one or more of the charges against him; but

2  recently he withdrew his plea of guilty, and that case is going

3  to proceed against Mr. Daibes.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  It arises out of allegedly fraudulent bank

7  loan applications.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Now, are you aware that the government has

11 alleged that that case is related to this case?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  I'm not taking a position on that, or any

14 other allegation here, but I want to ensure that you understand

15 that they are alleged to be related.

16         Do you understand that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Now, here, the superseding indictment

19 alleges that you and Mr. Daibes, along with others,

20 participated in a conspiracy in which Robert Menendez received

21 bribes, including through his wife -- they're both your

22 codefendants -- in exchange for, among other things, promising

23 and seeking to interfere with Mr. Daibes' pending federal

24 criminal case in the District of New Jersey.

25         Are you aware of that allegation here?

NAIDHANH

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  You told me earlier that you have reviewed

3    the superseding indictment, and you discussed it with your

4    attorneys, correct?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  So you saw in that indictment how the

7    government, in part, alleges that this case is related to that

8    case; is that correct?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Now, without telling me what they've said,

11   have Mr. Lustberg and Ms. Collart discussed this allegation and

12   the potential conflict of interest that it and the fact that

13   they represent Mr. Daibes in that New Jersey Federal District

14   Court case poses with you?

15             THE DEFENDANT:  Yes, they did, your Honor.

16             THE COURT:  Did they answer any questions you may have

17   had about that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Did they explain to your satisfaction the

20   nature of the potential conflict?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  All right.  Now, what I want to stress to

23   you is because Mr. Daibes is a client of Mr. Lustberg and Ms.

24   Collart, and presumably Mr. Solano, and anybody else in the

25   Gibbons law firm, in that New Jersey case, they have a duty of

NAIDHANH

1    100 percent loyalty, and a duty of confidentiality to

2    Mr. Daibes.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Now, it's possible that their duty of

6    loyalty to Mr. Daibes may conflict with their duty of loyalty

7    to you in this case.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  In particular, if they learn something

11   confidential in their representation of Mr. Daibes in the New

12   Jersey matter that might be helpful to you, they may not be

13   able to use it to help you unless Mr. Daibes consents, because,

14   as I've told you, anything they learn in the course of that

15   representation of Daibes they can't tell anybody.  So even

16   though Daibes may -- and I'm making this up.  I don't know what

17   the conversations are.  I don't want to know what the

18   conversations are.  But if they've learned something that can

19   help you in the course of their representation of Mr. Daibes,

20   they may not be able to use that in representing you here

21   unless Mr. Daibes authorizes them to release that information.

22             Do you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  So that may hinder their representation of

25   you here.

NAIDHANH

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  That's true even if it wouldn't harm

4    Mr. Daibes.  In other words, if Mr. Daibes has told them

5    something that helps you, but doesn't hurt him, they can't take

6    the position of, oh, we're not harming our client, Mr. Daibes,

7    so we're going to disclose it to Mr. Hana, and use it in

8    connection with the trial in this case, the Southern District

9    of New York case.  They can't do that, because it doesn't

10   matter whether or not it helps or hurts Mr. Daibes.  They can't

11   use it in any way without the consent of Mr. Daibes.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you see how that could hinder them in

15   their representation of you here?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  That may go to cross-examination at trial.

18   For example, Mr. Daibes, if he testifies again, I have no idea

19   what's going to happen at trial or who the defendants are going

20   to be within the five defendants here, but there's -- I need to

21   tell you about some of the possibilities.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  That potential conflict extends not only

25   to questioning witnesses.  It also extends to any arguments

NAIDHANH

1    they can make to me or to the jury.

2                Do you understand that?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Now, let me flip it.  You see what I'm

5    doing?  I'm coming up with some of the possibilities where this

6    potential conflict may manifest itself, and I assure you I

7    can't come up with every possibility.  I just don't know how

8    the case is going to evolve, or what Mr. Daibes and these

9    lawyers are going to be talking about, or what's relevant.

10   These are hypotheticals.  I'm doing my best to give you a range

11   of possibilities here, so you'll get a sense of what this

12   potential conflict looks like.

13               Do you understand that?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  So I gave you the example of their

16   learning something from Mr. Daibes that helps you, and they

17   can't use it, because they have a duty of confidentiality to

18   Mr. Daibes.  Now I'm going to flip it as a hypothetical.  Let's

19   assume they learn something from Mr. Daibes that inculpates

20   Mr. Daibes.  In other words, it's against Mr. Daibes, and,

21   indeed, when they're talking with him, because he's their

22   client in the New Jersey case, he may indeed say things that

23   inculpate him.

24               Do you know what I mean when I say inculpate him?

25   That they incriminate him.  Do you understand that?

NAIDHANH

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  They may realize that, wow, here's

3     something that I could use to Mr. Hana's advantage in the

4     Southern District case, either in negotiating with the U.S.

5     Attorney, or maybe even cross-examining Mr. Daibes, if

6     Mr. Daibes takes the stand here, but I can't use it.  I wish I

7     could use it to help Mr. Hana, and cross-examine Mr. Daibes

8     about this wrongdoing that he told them about; but Mr. Lustberg

9     is going to be hampered.  He can't do that because of the duty

10     of confidentiality to Mr. Daibes.

11          Do you understand that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  This potential conflict arises not only in

14     pretrial discussions in regard to whether or not you should

15     cooperate with the government, for example, or during trial in

16     regard to questioning witnesses or making arguments to me, but

17     it also applies at sentencing, because if sentencing is

18     relevant here, and of course I'm not saying that it is, but if

19     it does become a sentencing, it's possible that the government

20     may seek your cooperation in giving information against other

21     defendants, but Mr. Lustberg may be hindered in arguing -- in

22     giving you information that could be used by him or by you to

23     cooperate against Mr. Daibes, again, because of that duty of

24     loyalty and confidentiality to Daibes that they have.

25          Do you understand?

NAIDHANH

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  That's the essence of the potential

3     conflict.

4          Your attorneys here cannot do something to help you in

5     this case to the extent they would otherwise be obligated to if

6     doing so conflicted with their duty of loyalty or duty of

7     confidentiality to Mr. Daibes.

8          Do you understand?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now, in addition, your attorneys here,

11     that is, Mr. Lustberg, Ms. Collart, and Mr. Solano, might,

12     because they have these duties to Mr. Daibes, be limited in

13     what advice they could give you.  For example, they might

14     otherwise recommend that you cooperate, testify, or take other

15     action in defending this case, but, again, it's something that

16     might hurt Mr. Daibes, which means that their duty to you and

17     their duty to him may conflict.

18          Again, do you see, I'm just running changes on all the

19     possibilities here?  Do you understand what I'm telling you,

20     sir?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Now, it's true even if they end their

23     relationship as attorneys to Mr. Daibes, because the duties of

24     confidentiality and loyalty continues even after the end of the

25     attorney-client relationship.

NAIDHANH

1              Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  That's also true if the New Jersey case

4    terminates and this case continues on.  So if their

5    relationship with Mr. Daibes ends, or that case ends, the duty

6    of loyalty and confidentiality to Mr. Daibes still continues

7    and they still have to honor it.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Now, all of this can possibly affect the

11   way in which your attorneys represent you here, including

12   advice they give you, actions they undertake on your behalf,

13   and arguments they make either to me in legal arguments, or to

14   the jury in -- regarding any of the facts in this case.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you understand that this potential

18   conflict has existed throughout Mr. Lustberg's and

19   Ms. Collart's representation of you?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  It continues now, and it will continue

22   even after their representation of Mr. Daibes ends.

23             Do you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  They had that potential conflict even

NAIDHANH

1    before the indictment came down in this case.

2            Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Okay.  Now, as I said, I can't think of

5    everything that would come up here, but I can give you

6    examples.  I'm going to give you a few more.  It may be that

7    Mr. Daibes has told Mr. Lustberg confidential information in

8    connection with the other case that they can use to make

9    arguments before me in order to help you.  I've already done

10   that I think as one of the possibilities here.  But if

11   Mr. Daibes won't give his consent, they can't use that

12   information to assist you.  Again, I think I've given that

13   example, but I want to make sure you understand it, because it

14   hinders or may hinder their representation of you.

15           Do you understand that?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  It's possible that Mr. Daibes could be a

18   witness against you at trial or in other proceedings, and if

19   Mr. Daibes does testify, you have the right to cross-examine

20   him through your lawyers.  In other words, hypothetically, if

21   Mr. Daibes testifies against you here, Mr. Lustberg would have

22   the right to cross-examine him, but, again, they're hindered

23   because of this potential conflict.  They can't use any

24   confidential information they learned from Daibes to

25   cross-examine him, even if it helps you, even if it helps you a

NAIDHANH

```
1    great deal.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Indeed, it may be that there might be a

5    different witness or witnesses who Mr. Lustberg would want to

6    call in your defense, but unless Mr. Daibes were to consent,

7    Mr. Lustberg could not use any confidential information that he

8    learned from his representation of Daibes to question that

9    witness or other witnesses.

10             Do you understand that?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  In general, sir, the duty of loyalty and

13   the duty of confidentiality that your attorneys have to

14   Mr. Daibes could result in them questioning witnesses less

15   vigorously or less effectively than an attorney who didn't have

16   this potential conflict would have.

17             Do you understand that?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Your attorneys may also refrain from or be

20   limited in their ability to make certain arguments to me or to

21   the jury should the case go to trial, or in another proceeding

22   regarding evidence, even though arguments may be beneficial to

23   you, because of the duties to Mr. Daibes that they have.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.
```

NAIDHANH

1          THE COURT:  Do you understand that no one can predict

2    with any certainty the course that this case will take, or how

3    the restrictions on your attorneys' ability to represent you

4    will actually play out in the course of the Southern District

5    case.

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Now, as I've told you before, sir, I'm

9    fully prepared to appoint another independent attorney.  That

10   is -- I shouldn't say it that way.  I'm fully prepared to

11   appoint an attorney who's independent at no charge to you for

12   you to discuss this issue with that attorney.

13         Do you wish me to appoint another attorney on your

14   behalf so you can discuss this issue?

15         THE DEFENDANT:  No, thank you.

16         THE COURT:  All right.  Now, I told you when we first

17   began, and what I've been dealing with here is that first

18   bucket of information, the potential conflict arising out of

19   their representation of Mr. Daibes.  So I told you I was going

20   to ask you for you to tell me in your own words what the nature

21   of this potential conflict is, sir.

22         Could you tell me how you understand the conflict,

23   sir?  I should say the potential conflict, sir.

24         THE DEFENDANT:  Well, I understand Mr. Lustberg and

25   Ms. Anne, they represent Mr. Daibes in another matter, and

NAIDHANH

1   represent me in this matter, and there could be a conflict.

2   And the Court wants to make sure there's no conflict there.

3          THE COURT:   What is that conflict?  Can you tell me

4   what that conflict is?

5          THE DEFENDANT:   Because they represent him in the New

6   Jersey matter, and they represent me in this matter, and there

7   could be a potential witness, there could be other --

8          THE COURT:   And that they would be hindered in

9   representing you to the best of their ability because

10  information -- they may not be able to use information he's

11  given them.

12         Do you understand that?

13         THE DEFENDANT:   Attorney privilege or confidentiality.

14  Yes, I understand, your Honor.

15         THE COURT:   All right.   Thank you.

16         Now, if you decide at the end of this proceeding that

17  you do want Mr. Lustberg and Ms. Collart to continue to

18  represent you, you're going to be prohibited from arguing in

19  the future that they gave you ineffective assistance of counsel

20  because of this potential conflict.

21         Do you understand that?

22         THE DEFENDANT:   Yes, your Honor.

23         THE COURT:   You can't argue in the future that they

24  did not do a sufficient job defending you in light of the

25  potential conflict.

NAIDHANH

1            Do you understand that?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Is there anything I've said or anything

4    I've raised in this first bucket that you want to have

5    explained to you better, that you want me to explain anything

6    better?

7            THE DEFENDANT:  No, your Honor.

8            THE COURT:  Do you want to talk to your attorneys

9    about it?

10            THE DEFENDANT:  No, thank you.

11            THE COURT:  So let me ask you this:  In light of this

12    first bucket, do you wish to have Mr. Lustberg and Ms. Collart

13    and Gibbons, PC, continue to represent you in connection with

14    the charges against you here?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  Do you want to speak to another counsel

17    about this issue?

18            THE DEFENDANT:  No, your Honor.

19            THE COURT:  Is that your own decision, sir?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Do you think you've had sufficient time to

22    think about?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Have you received any threats, inducement,

25    payment, or other promise --

NAIDHANH

1              THE DEFENDANT:  No.

2              THE COURT:  -- that may have influenced your decision

3    on this issue?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  All right.  I'm comfortable, sir, that you

6    understand the nature of the conflict and -- the potential

7    conflict and you're waiving it, and in regard to this first

8    bucket, you wish to continue with your attorneys.

9              Let me go to the second bucket here, and it's another

10   potential issue here.  Mr. Lustberg, apparently, has personal

11   knowledge of certain facts alleged to be relevant to the

12   charges here that arise from his representation of Mr. Daibes.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Has he discussed that with you?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Okay.  Now, I'll give you one example from

18   the indictment, but this point is not limited to this one

19   example.  The point here is that he has knowledge of things

20   that are relevant in this case, because of his representation

21   of Daibes.

22             Do you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Okay.  So in paragraph 52(c) of the

25   superseding indictment it says, on or about January 22, 2022,

NAIDHANH

```
 1    Menendez and Daibes called Daibes' lawyer, that's Mr. Lustberg
 2    presumably, to complain that the lawyer had not been aggressive
 3    enough in attempting to get Daibes' case dismissed.  That's an
 4    allegation here.
 5              Now, it may be, I don't know, and we're a long way
 6    from trial, but it may be that at trial, that may be an issue,
 7    and it may be that the government is going to seek to induce
 8    Mr. Lustberg's knowledge about that conversation if it indeed
 9    took place.
10              Do you understand that?
11              THE DEFENDANT:  Yes, your Honor.
12              THE COURT:  I take it it's true as well of
13    Ms. Collart, I don't know what is the specific allegation here,
14    but it is theoretically possible that she has knowledge of
15    facts that are relevant here.
16              Do you understand that?
17              THE DEFENDANT:  Yes, your Honor.
18              THE COURT:  So either of them might be a potential
19    witness on those facts.
20              Do you understand that?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Now, the fact that they are potential
23    witnesses, and, again, I'm not -- I don't know that they're
24    going to be witnesses, but the fact that they're potential
25    witnesses presents a number of risks to you.
```

NAIDHANH

 1              Do you understand that?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  Have you talked to them about this

 4     potential conflict?

 5              THE DEFENDANT:  Yes, your Honor.

 6              THE COURT:  Here, too, sir, if you wish, I'll appoint

 7     an independent lawyer to represent you, that you can talk with

 8     at no charge, so that you can ask him or her anything you want.

 9              Do you understand that?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Do you want me to appoint an independent

12     lawyer?

13              THE DEFENDANT:  No.

14              THE COURT:  All right.  Now, there are at least two

15     risks that arise out of the fact that your lawyers may have

16     individual or may have personal knowledge of facts that are

17     relevant here.  First, neither counsel nor anyone else from

18     Gibbons can make arguments to me or the jury that are not

19     consistent with their personal knowledge of the facts.  In

20     other words, lawyers cannot get up before me or the jury and

21     argue facts that they know are not true.

22              Do you understand that?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Now, if they've participated in relevant

25     things here, so they have knowledge of particular facts at

NAIDHANH

1    issue here, personal knowledge, they can't make arguments to

2    the contrary of those facts.  So they're hindered in their

3    representation -- possibly hindered in their representation to

4    you because of that.  If they didn't have knowledge of those

5    facts, they'd be able to make whatever appropriate arguments

6    they want.  But if they do have knowledge of the facts, they're

7    limited.  They can't make arguments that are inconsistent with

8    their personal knowledge of the facts.

9            Do you understand?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Indeed, as part of that line here, they

12   can't question other witnesses in a manner suggesting that a

13   fact that they personally know is true is, in fact, false.

14   Same theory.  I'm just switching it a little.  Instead of their

15   making arguments to the jury or to me that they know are not

16   factually true, which they can't do, similarly, they can't

17   question witnesses in a way that suggests that certain facts

18   that they know are true are not true, or the reverse.

19           Do you understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Okay.  Now, there's a second risk to their

22   having knowledge, possible knowledge of facts here, and that's

23   that either may be called as a witness by the government if the

24   government decides to call them as witnesses.  Again, we're not

25   at trial now.  This trial is set for May.  Nobody is being

NAIDHANH

asked for the witness lists.  I don't know who the witnesses

for the government are going to be.  I don't know who the

witnesses for the defense are going to be.  But if the

government were to call one or both of them as a witness,

there's the possibility that whoever they call as a witness may

have to withdraw, because a lawyer cannot be a witness and a

lawyer at the same time.

        Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  So it may be that they may voluntarily

withdraw, or I may order their withdrawal if they're a witness

and it's relevant to the case proceeding.

        Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  A lawyer can't be both a lawyer and

testify as a fact witness at the same time.

        Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that, as I've said

throughout this colloquy, this discussion, I can't predict how

this is going to play out?  I can't predict whether the

government is going to call them as witnesses.  I can't predict

whether or not anything they do know out of their own knowledge

is going to be relevant in this case.  That decision will be

made much closer to trial.  As I told you earlier in this

NAIDHANH

1  discussion, you won't be able to adjourn the trial to get a new

2  counsel if it's very close.

3          Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Now, the fact that either of them might be

6  fact witnesses could potentially affect their advice to you,

7  because they may prefer not to be a witness.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Similarly, if you prefer that they not be

11  a witness, it could affect your ability to follow their advice

12  or to make certain decisions.

13          Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Now, even if Mr. Lustberg and Ms. Collart

16  are not called as witnesses, it's possible that other witnesses

17  may be aware that either of them was personally involved in or

18  had knowledge of facts that are relevant here, and that may

19  create challenges for them in cross-examining those witnesses.

20  That wouldn't be an issue with a lawyer who had no knowledge of

21  the facts -- no personal knowledge of the facts.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  So why don't you tell me now what you see

25  is the potential or actual conflict in this second bucket, that

NAIDHANH

1    is, the fact that your lawyers may have personal knowledge of

2    facts that are involved in this case.

3           What's the problem with that?

4           THE DEFENDANT:  What I understand, if the government

5    called Mr. Lustberg or Ms. Anne to be a witness, it could

6    affect the ability of them -- of the trial.

7           THE COURT:  Well, it could affect their ability to

8    represent you fully.

9           THE DEFENDANT:  Yes.  Yes, your Honor.

10          THE COURT:  I may have to require that they withdraw

11   as your counsel.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you understand that just with that

15   first bucket, you won't be able to argue -- if you want them to

16   continue as your lawyers, you're going to have that choice in a

17   moment -- you have that choice throughout this.  If you decide

18   that you want them to continue, you won't be able to argue that

19   they rendered ineffective assistance of counsel, because of

20   this potential conflict, due to their potentially having

21   knowledge, personal knowledge of the facts that are relevant

22   here.

23          Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Is there anything I've been asking you

NAIDHANH

1  about this second bucket that you want explained -- that you

2  want me to explain?

3  　　　　　THE DEFENDANT:  No, your Honor.

4  　　　　　THE COURT:  Anything you want your own lawyers to

5  explain to you?  Do you want to talk to them now?

6  　　　　　THE DEFENDANT:  No, your Honor.

7  　　　　　THE COURT:  So let me ask you, in light of this second

8  bucket, do you wish to have Mr. Lustberg, Ms. Collart, and

9  Gibbons continue to represent you in this case?

10  　　　　　THE DEFENDANT:  Yes, your Honor.  Especially, they

11  have my file since 2019, it's going to be very difficult for me

12  to get somebody to understand.  And since the last year and a

13  half I got the documents from the subpoena, they've been

14  producing all of the documents to the government.  Yes, your

15  Honor, I want them to represent me.

16  　　　　　THE COURT:  Okay.  No, I understand that, but I don't

17  want that fact -- I understand how you've been working with

18  them for a long time, documents have gone back and forth, but I

19  don't want that to be the deciding factor in whether you stay

20  with them or not, because if you decide that you don't want

21  them to be your lawyers, or later on if I say they can't be

22  your lawyers, those document issues can be taken care of

23  theoretically rather simply.  They would have to turn all their

24  files over to the new law firm, and they would have to assist

25  the new law firm in representing you, getting you up to speed.

NAIDHANH

1  So I don't want that to be the deciding factor here.

2           Do you understand that?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Okay.  Do you want them to continue here?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Is that your own decision?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Have you received any threat, inducement,

9  payment, or other promise that may have influenced your

10  decision here?

11           THE DEFENDANT:  No, your Honor.

12           THE COURT:  Do you want another lawyer to come in on

13  this?

14           THE DEFENDANT:  No, your Honor.

15           THE COURT:  Do you understand you're waiving the right

16  to have someone come in and talk to you about this?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  I do find that Mr. Hana understands the

19  nature of the potential conflicts here, and he's waived the

20  right to have separate counsel, and he wishes to proceed with

21  Gibbons, PC, and Mr. Lustberg, and Ms. Collart.

22           Is there any additional questioning, Mr. Lustberg,

23  that you wish me to undertake here?

24           MR. LUSTBERG:  No, your Honor.

25           THE COURT:  Government?

NAIDHANH

1          MR. RICHENTHAL:  Just two small things, your Honor.  I

2     don't know they require additional questions, but I defer to

3     the Court.

4          First, in talking about the potential conflict of

5     either Mr. Lustberg or Ms. Collart being witnesses, the Court

6     talked principally about in questioning witnesses or making

7     arguments.  It's also possible, I think this was in the

8     proposed colloquy, that certain documents that may come into

9     evidence.  For example, toll records, might refer to

10    Mr. Lustberg --

11         THE COURT:  Toll?

12         MR. RICHENTHAL:  Toll records, phone records, your

13    Honor.

14         THE COURT:  Yes.

15         MR. RICHENTHAL:  Or other things might come into

16    evidence that might refer to Mr. Lustberg or Ms. Collart or the

17    firm.  There are potentially ways around that, but I just want

18    the flag and make sure the Court is comfortable Mr. Hana

19    understands that there are also documents that could raise

20    similar issues with respect to defense counsel's ability to

21    make arguments on those documents, or the jury seeing them in

22    those kinds of things.

23         THE COURT:  Did you say two things?

24         MR. RICHENTHAL:  Yes, your Honor.

25         The second is -- and, again, I think this is implicit,

NAIDHANH

1   but I want to make sure it's sufficiently explicit, that

2   Mr. Hana seems to have knowingly waived his rights today, but

3   the Court, as I think you indicated, may need to revisit at

4   least the second bucket later on in this proceeding, depending

5   on how it goes.  But if he's taking on the risk, that it's

6   possible his counsel could have to withdraw, if you order, even

7   if he's knowingly waiving these risks at this point.

8          THE COURT:  Yes.  I think except for the documents,

9   everything was explicit, but I'll do it shortly.

10          What the government has asked me to point out to you,

11   sir, is that in regard to what I've been calling the second

12   bucket, that is, the fact that Mr. Lustberg or Ms. Collart may

13   be fact witnesses, that may mean very late in the game I may

14   have to order them to withdraw, which means that you would then

15   have to obtain a new attorney.

16          Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Okay.  What Mr. Richenthal was also

19   raising, and I probably should have been explicit in this,

20   remember, I was going through a whole variety of possibilities

21   here that related to your cross-examining witnesses, who to

22   call, not to call.  Everything I've been talking to you about

23   applies not only to oral testimony, but to documents

24   themselves.

25          In other words, for example, there may be documents

NAIDHANH

1   that involve things that are relevant.  Again, toll records on

2   calls, when they were made, to whom they were made, they may

3   involve Mr. Lustberg and Ms. Collart.  Again, the government

4   said there are ways around that.  There may be redactions that

5   are possible, but it may not be true, and those may present --

6   those may ripen into actual conflicts.

7              Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  All right.  Again, I find that this

10  defendant has waived his right to conflict-free counsel, and

11  wishes to proceed with his current lawyers.

12             Mr. Lustberg, anything?  I think you said no.

13             MR. LUSTBERG:  No, nothing further, your Honor.  Thank

14  you very much --

15             THE COURT:  All right.

16             MR. LUSTBERG:  -- for the thorough colloquy.

17             THE COURT:  I thank everybody.

18             (Adjourned)

19

20

21

22

23

24

25