

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 20, 2024

**BY EMAIL**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.,*
             **S2 23 Cr. 490 (SHS)**

Dear Judge Stein:

      The Government respectfully writes, pursuant to the Court's January 30, 2024 Order (Dkt. 169) setting forth procedures regarding sealed and redacted filings in this case, to explain the basis for the proposed redactions it has made to a July 2022 warrant affidavit (the "Affidavit") attached as Exhibit A to its opposition to defendants Robert Menendez's and Wael Hana's suppression motions (the "Memorandum," Dkt. 190).[1] The proposed redactions pertain to material in the Affidavit that is either (i) not cited or referred to with specificity in the Memorandum, or (ii) identifying information of a potential witness or third party. For the reasons set forth below, those redactions (marked in Attachment 1 to this letter) are fair, appropriate, and consistent with the principles the Court applied in ruling on the motions from several media organizations to unseal in this case (Dkt. 170).[2]

---

[1] The Government submits this letter by email in accordance with the Court's Order, but in light of the content of this letter does not object to the public docketing of this letter (not including the proposed redacted document attached hereto, which should remain under seal for all of the reasons stated herein).

[2] Counsel for Menendez and counsel for Hana do not oppose these proposed redactions.

Honorable Sidney H. Stein
February 20, 2024
Page 2

### I. Applicable Law

#### A. *The Common Law Right of Access*

The Supreme Court has recognized a common law right of public access to judicial documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978). However, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.*

The common law right of access attaches with different weight depending on two factors: (a) "the role of the material at issue in the exercise of Article III judicial power" and (b) "the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050.

After determining the weight afforded to the presumptive right of access, the common-law right is balanced against countervailing interests favoring secrecy. "[T]he fact that a document is a judicial record does not mean that access to it cannot be restricted." *Amodeo I*, 44 F.3d at 146. Noting that it is difficult to "identify all the factors to be weighed in determining whether access is appropriate," the Supreme Court has further observed that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99.

The Second Circuit has recognized certain categories of countervailing factors to be balanced against the presumption of access, including: (i) the danger of impairing law enforcement or judicial efficiency and (ii) the need to protect privacy interests. *Amodeo I*, 44 F.3d at 147. The Second Circuit has identified the law enforcement privilege as an interest worthy of protection, noting that the privilege is designed:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

*Id.* (citing *In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988)). In addition, the Second Circuit in *Amodeo II* found that the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency." 71 F.3d at 1050. Thus, "[i]f release [of a judicial document] is likely to cause persons in the particular or future cases to resist

involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

The Second Circuit has also held that "[t]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also In re Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990) (holding that the "common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed"). The Second Circuit has identified such interests as "a venerable common law exception to the presumption of access." *Amodeo II*, 71 F.3d at 1051. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (listing "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" as weighing more heavily against access than conduct affecting a substantial portion of the public); *see also In re Newsday, Inc.*, 895 F.2d at 79 (holding that disclosure of "intimate relations" qualifies the common law right of access). "The nature and degree of injury must also be weighed." *Amodeo II*, 71 F.3d at 1051. Finally, in balancing the qualified right of public access against privacy interests, courts must consider "the sensitivity of the information and the subject," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

### B. *The First Amendment Right of Access*

The First Amendment's presumptive right of access applies to civil and criminal proceedings and "protects the public against the government's arbitrary interference with access to important information." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.* ("*NYCTA*"), 684 F.3d 286, 298 (2d Cir. 2012) (internal quotation marks omitted).

The Second Circuit has applied two different approaches when deciding whether the First Amendment right applies to particular material. The "experience-and-logic" approach asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted). The second approach—employed when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (internal quotation marks and alteration omitted).

Even when it applies, however, the First Amendment right creates only a presumptive right of access. "What offends the First Amendment is the attempt to [exclude the public] without sufficient justification," *NYCTA*, 684 F.3d at 296, not the simple act of exclusion itself. Thus, the presumptive right of access may be overcome by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

Honorable Sidney H. Stein
February 20, 2024
Page 4

      C.     *Redactions*

Once a document is subject to either the common-law or First Amendment right of access, it may still be subject to appropriate redactions. Indeed, "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *Amodeo I*, 44 F.3d at 147; *see also, e.g.*, *In re Providence Journal*, 293 F.3d 1, 15 (1st Cir. 2002) ("Redaction constitutes a time-tested means of minimizing any intrusion on [First Amendment right of access]" (citing *Amodeo I*)).

**II.**    **Discussion**

As the Affidavit was submitted as an exhibit to a judicial document, and the exhibit was relevant to a pending motion, the public has a legitimate interest in understanding its substance. But that interest needs to be balanced against protecting the privacy of third parties and preserving the integrity of this criminal proceeding and the Grand Jury's ongoing investigation. The redactions attached hereto as Attachment 1 are appropriate to balance those factors.

The Affidavit contains statements of the affiant, some of which are cited in the Memorandum and many of which are not. The Government has no objection to the public docketing of the portions that are specifically cited in the Memorandum or provide context for them, but believes that the other portions should be redacted to avoid prejudicing the ongoing investigation or trial.

The portions of the Affidavit not specifically relied on in the parties' papers should not be publicly docketed. The portions not used in the proceedings are, by definition, not "a necessary corollary of the capacity to attend the relevant proceedings" implicating the First Amendment right of access. *Lugosch*, 435 F.3d at 120; *see also In re Motion for Civil Contempt by John Doe*, No. 12 Misc. 557 (BMC), 2016 WL 3460368, at *3 (E.D.N.Y. June 22, 2016) (in civil contempt proceeding, noting that under the *Lugosch* test, "[o]nly the documents necessary to understand the merits" of the proceeding are covered under the First Amendment). Even if the documents were considered within the First Amendment's protection, redaction from them of information *not* intended to be relied on in the proceedings would not in any way impair First Amendment interests because it would not diminish public access to the proceedings. Thus, with respect to this motion, the portions of the Affidavit not specifically referenced occupy the lowest end of the continuum of relevance to Article III duties and are subject to the weakest presumption of public access. *See Amodeo II*, 71 F.3d at 1050; *see also, e.g.*, *United States v. Gatto*, No. 17 Cr. 686 (LAK), 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019) ("This information therefore played a negligible if any role in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts is minimal."). And although a search warrant affidavit may itself be considered a judicial document, the interests in avoiding prejudice to the Government's investigation or the trial outweighs the public's interest in access to it at this stage, while the investigation is still ongoing and trial arising from the subject matter of a number of the statements recounted in the Affidavit has not yet been held. *United States v. Cohen*, 366 F. Supp. 3d 612, 623 (S.D.N.Y. 2019).

Honorable Sidney H. Stein
February 20, 2024
Page 5

Against the interest in public access, the interests in redaction are substantial. The entire Affidavit is a statement of a potential witness (the affiant), and much of it recounts the statements of a number of additional potential witnesses. With an ongoing investigation, and in the shadow of an upcoming trial, any potential witness statement concerning matters under investigation or that may be the subject of trial—whether or not that particular witness is likely to be called—may influence or affect the testimony of other witnesses to those facts, affect the jury pool, or otherwise prejudice the course of the investigation or trial. *See, e.g., Cohen*, 366 F. Supp. 3d at 623 (noting that information related to "the full volume and nature of the evidence gathered thus far, and the sources of information provided to the Government," could if disclosed in an ongoing investigation "enable uncharged individuals to coordinate or tailor their testimony" (citing *In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08 Misc. 208 (DRH), 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008))). And as to many of these statements, "unmasking those who are cooperating with the Government's investigation or who have otherwise provided information to the Government could deter further cooperation with the investigation," whether the unmasking relates to the identity of who has spoken to the Government or the substance of what or how much they have communicated. *Cohen*, 366 F. Supp. 3d at 623.

The redactions also include—for those portions of the Affidavit that are cited in the Memorandum—redaction for the identifying information of third parties, most of whom have provided information to the Government. The precise identities of these third parties are of little relevance to the judicial function, in contrast to the substance of the statements by or regarding them. On the other side of the scale, the privacy interests of third parties, such as persons providing information to law enforcement, is well recognized as meriting judicial solicitude. *See In re New York Times Co.*, 828 F.2d at 116 ("The privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation."); *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 232 (D. Conn. 2019) (noting that court's supervisory power "is routinely used to redact or otherwise restrict access to sensitive personally identifying information contained in court documents"); *see also Amodeo II*, 71 F.3d 1051 n.1 (endorsing district court's redaction, in separate case, of identities of "peripheral characters"). Indeed, "unmasking those who are cooperating with the Government's investigation or who have otherwise provided information to the Government could deter further cooperation with the investigation," *Cohen*, 366 F. Supp. 3d at 623, and could prejudice the proceedings by affecting potential witnesses, which is why it is common to redact such information.

Finally, the redactions are consistent with the Court's rulings resolving the motions made by various media organizations to unseal other filings. In a February 1, 2024 Order, the Court ordered the unsealing of the portions of an exhibit that were cited with specificity by the parties in

Honorable Sidney H. Stein
February 20, 2024
Page 6

their papers, but the redactions of identities of third parties, and of portions not so cited. (Dkt. 170 at 3.) The same principles warrant the redactions to the Affidavit here.

                                         Respectfully submitted,

                                         DAMIAN WILLIAMS
                                         United States Attorney

By:  s/ Paul M. Monteleoni
       Eli J. Mark
       Paul M. Monteleoni
       Lara Pomerantz
       Daniel C. Richenthal
       Assistant United States Attorneys
       (212) 637-2431/2219/2343/2109

Enclosure

cc:    Adam Fee, Esq.
        Avi Weitzman, Esq.
        Robert Luskin, Esq.
        Lawrence Lustberg, Esq.
        Ricardo Solano, Jr., Esq.
        Anne Collart, Esq.