

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 9, 2024

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re: *United States v. Robert Menendez, et al.*,
> S4 23 Cr. 490 (SHS)

Dear Judge Stein:

The Government respectfully writes in the above-captioned matter in opposition to defendant Robert Menendez's letter motion seeking to compel the Government to collect documents not in the possession of the prosecution team regarding the recusal of the individual referred to in the S4 Superseding Indictment (the "Indictment") as "Official-3" from the prosecution of Fred Daibes. (Dkt. 229 ("Def. Ltr.")). This motion is foreclosed by well-settled law and seeks documents that are neither exculpatory nor material to the defense.

### I. The Indictment and the Requested Documents

The Indictment charges the defendants with corruption offenses related to, among other things, Menendez's promises and attempts—in exchange for cash, gold bars, and other things of value—to disrupt the federal prosecution of Daibes being conducted by the U.S. Attorney's Office for the District of New Jersey. (Indictment ¶¶ 45-46).

One of the means by which Menendez is alleged to have promised and attempted to disrupt the prosecution was by seeking and recommending the appointment of a U.S. Attorney who Menendez and Daibes thought could be influenced by Menendez. In pursuit of this goal, Menendez met with a candidate for that position (referred to in the Indictment as the "Candidate" before his appointment and "Official-3" after), and asked him to "look into" Daibes's prosecution if he became U.S. Attorney. (Indictment ¶ 47). After the meeting, the Candidate advised Menendez that he might have to recuse himself from that prosecution "as a result of a matter he

had handled in private practice" involving Daibes. (*Id.*). Menendez subsequently informed the Candidate that Menendez would recommend a different individual for the position (*id.*), but following the publication of news articles critical of that other individual, the Candidate spoke to an outside political advisor of Menendez (the "Advisor") and discussed the possibility of the Candidate recusing from the prosecution (*id.* ¶ 49). Subsequently, the Advisor informed Menendez that the Advisor believed that the Candidate would likely not have to recuse from the prosecution of Daibes. (*Id.*). The Candidate was subsequently confirmed as U.S. Attorney and, "on the basis of information that Official-3 [*i.e.*, formerly the Candidate] provided to the U.S. Department of Justice to determine whether a recusal was warranted, Official-3 was informed that Official-3 was recused from the prosecution" of Daibes. (*Id.* ¶ 53). Menendez subsequently directed the Advisor to ask Official-3 why he had recused himself from the prosecution of Daibes, when Menendez had previously believed that he would not recuse himself (*id.* ¶ 53.f), and asked the Advisor to tell Official-3 to give Daibes "all due process" despite Official-3's recusal (*id.* ¶ 53.g).

Menendez now seeks an order compelling the Government to obtain correspondence, if any, exchanged between Official-3 and Department of Justice officials in Washington, D.C. regarding whether Official-3 should recuse himself from the prosecution of Daibes. (Def. Ltr. 1-2).[1]

## II.  The Requested Documents are Not in the Possession of the Prosecution Team

Menendez requests an order that the Government obtain (to the extent it exists) and then furnish him with correspondence between another U.S. Attorney's Office and employees in the Department of Justice headquarters regarding the recusal of that U.S. Attorney from another case. This request seeks materials that are outside of the possession of the prosecution team, and therefore not discoverable in this case.

The disclosure obligations set forth in Federal Rule of Criminal Procedure 16, *Brady*, and *Giglio* apply to materials in the Government's "possession." As a general matter, although "[a]n individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case[,] . . . knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citations omitted); *see also United States v. Locascio*, 6 F.3d 924, 948-49 (2d Cir. 1993) (declining to "infer the prosecutors' knowledge simply because some other government agents knew about" additional evidence where federal prosecutors were unaware of documents in possession of Federal Bureau of Investigation ("FBI") agents who were "uninvolved in the investigation or trial of the defendants"); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (declining to impute

---

[1] Menendez's claim that the Indictment "specifically referenced" a supposed "recusal memorandum to DOJ's headquarters" (Def. Ltr. 1) is demonstrably incorrect. The Indictment refers only to "information," not to a memorandum or any specific document(s), much less one(s) sent to a particular office. (Indictment ¶ 53).

Honorable Sidney H. Stein
March 9, 2024
Page 3

knowledge of prosecutor in Florida to prosecutor in New York and noting that the "Department of Justice alone has thousands of employees"). This is so for very good reason. The imposition of "an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Avellino*, 136 F.3d at 255 (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)). Thus, discovery and disclosure obligations only extend to "information known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)).

In considering whether Rule 16 and other disclosure obligations apply to records in the possession of another government agency or component of a government, a prosecutor's duty extends to obtaining and reviewing such records only where the Government conducts a "joint investigation" with that agency or component of government. *See, e.g.*, *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4-5 (S.D.N.Y. Aug. 17, 2018) (no joint investigation between Government, Public Company Accounting Oversight Board ("PCAOB") and Securities and Exchange Commission ("SEC") where PCAOB was not involved in witness interviews or developing prosecutorial strategy, and SEC was not involved in the grand jury presentation, reviewing the fruits of the Government's investigation, or developing prosecutorial strategy); *United States v. Collins*, 409 F. Supp. 3d 228, 241-43 (S.D.N.Y. 2019) (no joint investigation between U.S. Attorney's Office and SEC where the two entities conducted a small number of joint interviews and engaged in limited sharing of information with each other); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (no joint investigation between Government and New York Stock Exchange ("NYSE") where documents sought were "the product of an investigation that was undertaken by the NYSE of its own practices, and there [wa]s no suggestion that the Government participated in that investigation").

Moreover, the involvement of agents from one component of an agency in an investigation does not render the entirety of that agency, or components thereof, part of the prosecution team. *See, e.g.*, *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) ("While the prosecution's disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned."); *see also Locascio*, 6 F.3d at 949 (refusing to impute to Assistant U.S. Attorneys knowledge of reports prepared by FBI agents who were "uninvolved in the investigation or trial of the defendants").

Menendez's remark that the prosecutors on this case and the officials who may have received the requested documents are all employed by the Department of Justice (Def. Ltr. 2) is both true and legally irrelevant. The "Department of Justice alone has thousands of employees," *Quinn*, 445 F.2d at 944, and courts routinely and properly refuse to impute knowledge across components of the Department of Justice. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374

(JMF), 2022 WL 457315, at *9 (S.D.N.Y. Feb. 15, 2022) ("This [prosecution team] rule applies not only to other federal agencies, but also to other offices within the Department of Justice, including other United States Attorney's Offices." (citing cases)); *United States v. Morgan*, 302 F.R.D. 300, 306-07 (S.D.N.Y. 2014) ("[T]he extent of any aid the FBI employees provided was limited to the content of their communications with the prosecutors. The Court is not persuaded that the entire FBI, or even the entire Nuclear DNA Unit at the FBI Laboratory, thus became part of the prosecution team, and therefore, there is no reason to impute to prosecutors knowledge of any evidence in the possession of the FBI as a whole or the Nuclear DNA Unit relating to LCN DNA testing."); *United States v. Noel*, No. 19 Cr. 830 (AT), 2020 WL 12834537, at *4 (S.D.N.Y. June 9, 2020) (even though the Bureau of Prisons ("BOP") "is a component of the Department of Justice . . . that fact standing alone is not sufficient to make the BOP an arm of the prosecution").

But even leaving aside the scale or nature of the agency or component of the government, instead of "bureaucratic proximity," as Menendez appears to suggest is the standard, the Second Circuit has held that "'the relevant inquiry is what the person *did*, not who the person *is*.'" *United States v. Hunter*, 32 F.4th 22, 37 (2d Cir. 2022) (quoting *Stewart*, 433 F.3d at 298) (emphases in original); *cf. United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (holding that, in the context of a speedy trial motion, other members of the Department of Justice who were involved in making decisions about timing and progress of the case were part of the "government" for Rule 16 purposes).

As the foregoing precedents recognize, the factors relevant in determining whether an agency or a component of an agency are part of the prosecution team, and therefore their records are deemed to be in the "possession" of the Government, include whether the agency or component: "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Middendorf*, 2018 WL 3956494, at *4.

Menendez, who bears the burden on his motion, has made no showing that any of those factors are applicable to the Department of Justice employees in charge of reviewing and/or making recusal determinations—*i.e.*, any of those individuals to whom Official-3 may have transmitted information. Nor can he. The individuals who the Government understands are in charge of advising on recusal determinations with respect to United States Attorneys are part of an entirely different office of the Department of Justice, based in Washington, D.C., which does not prosecute cases—the Executive Office for United States Attorneys ("EOUSA"). *See* Department of Justice, EOUSA: Mission and Functions, https://www.justice.gov/usao/eousa/mission-and-functions. No employee from EOUSA participated in the prosecution's witness interviews, was involved in presenting the case to the grand jury, played a role in the development of prosecutorial strategy, approved the bringing of this case, approved search warrants or other forms of investigative legal process, approved the Indictment (or any prior indictment in this case), participated in meetings regarding how to bring this case, prepared the prosecution for or accompanied the prosecution to court proceedings—or took any other step that is akin to anything even remotely suggestive of being a part of the prosecution team. While certain members of the United States Attorney's Office for the Southern District of New York previously exchanged a

limited number of emails with EOUSA regarding, as is relevant to Menendez's motion, the reasons for Official-3's recusal from the Daibes matter (which emails did not attach any correspondence sent to or from Official-3), even if the Court were to assume *arguendo* that this brief email exchange amounts to a review of relevant documents gathered by or a sharing of documents with the prosecution team (which it does not), *see Middendorf*, 2018 WL 3956494, at *4, none of the other factors is even close to present.[2]

In addition, this Court should reject Menendez's conclusory assertion that the Government has "purely for tactical reasons" "elected to keep" the requested documents "in the hands of DOJ employees outside of this District." (Def. Ltr. 2). The prosecution team here has not "elected to keep" the requested documents (if they exist) in any particular place or in the hands of any particular persons. The prosecution team here has never seen the documents, and has had no say where or with whom they reside. In any event, the settled case law about the scope of the Government's discovery obligations is not overcome simply by a defendant complaining that a prosecution team may "pick and choose what information it requests from other agencies and offices." *United States v. Ingarfield*, No. 20 Cr. 146 (RA), 2023 WL 3123002, at *7 (S.D.N.Y. Apr. 27, 2023) (internal quotation marks omitted); *see also id.* (rejecting argument that U.S. Attorney's Office for the Eastern District of New York and FBI were part of prosecution team because they participated in certain interviews, remarking "although it may have been prudent for the government to seek to learn more about a critical cooperating witness in its case, it was not obligated to do so").

In sum, the prosecution team does not possess the documents Menendez requests (assuming they exist). On this basis alone, the motion should be denied.

### III. The Requested Documents, to the Extent they Exist, are Not Exculpatory or Material

Menendez's motion also fails to set forth any reasonable basis to believe that the documents sought are either exculpatory or material to preparing his defense under Rule 16. Therefore, the documents are not discoverable for this second, independent reason.

As an initial matter, Rule 16(a)(2) expressly exempts from discovery, except as governed by 18 U.S.C. § 3500, statements made by prospective government witnesses. Accordingly, to the extent that Menendez seeks witness statements, as he appears to do, Rule 16 is not a proper basis to do so.

In any event, Menendez's assertion that that the content of what Official-3 told the Department of Justice about Official-3's recusal is purportedly exculpatory or material to the preparation of his defense is not sufficient, by itself, to require production. *See, e.g.*, *United States v. Walker*, No. 96 Cr. 736 (HB), 1997 WL 327093, at *2 (S.D.N.Y. June 12, 1997) ("To establish a showing of materiality, a defendant must offer more than the conclusory allegation that the

---

[2] These emails are not discoverable at this stage for all the reasons set forth in Section III, below, and also because they are internal government documents made in connection with investigating or prosecuting the case, and thus expressly exempted by Rule 16(b)(2).

requested evidence is 'material.'"). Menendez states that the reasons Official-3 communicated to the Department of Justice "have nothing to do with [] Menendez," and then goes on to claim that "if, as we expect, the Documents omit any reference to [] Menendez or any discussions he may have had with Official-3, it would critically undermine the government's theory and bolster [] Menendez's defense case." (Def. Ltr. 2). But this is a *non sequitur*—the Indictment does not allege that Menendez was the basis for Official-3's recusal and the Government does not intend to so argue at trial. Indeed, there is no reason to expect that Official-3 would have mentioned Menendez in his communication(s) to the Department of Justice regarding recusal, much less in a manner that would assist Menendez. To the contrary, the Indictment alleges that Official-3 told Menendez that he might have to recuse himself "as a result of a matter he had handled in private practice involving DAIBES," not because of Menendez. (Indictment ¶ 47). It plainly would thus not "undermine the government's theory" if Official-3 communicated to the Department of Justice the information relating to the matter he had handled in private practice, which then resulted in Official-3's recusal. Indeed, that is precisely the Government's theory.

Menendez's arguments that the information Official-3 provided to the Department of Justice in connection with recusal is somehow exculpatory, despite its expected consistency with the Indictment, are illogical. Menendez claims that the documents are purportedly helpful to him because he "expected Official-3 to recuse himself for the very reasons [he] suspect[s] are outlined in the Documents" (Def. Ltr. 2). However, the basis upon which Menendez contemporaneously expected Official-3 to recuse does not depend on what reasons Official-3 separately communicated to the Department of Justice. In short, the claim that Menendez "expected Official-3 to recuse himself" depends on what *Menendez* was told about the likelihood of Official-3's recusal, not on what the *Department of Justice* was told in one or more separate communications to which Menendez was not party and of which he had no contemporaneous knowledge.[3] And fundamentally, to the extent that any communications between Official-3 and the Department of Justice relating to recusal were consistent with what Official-3 told Menendez—which is precisely what Menendez says he expects—documentation of those communications does not go to any disputed issue because any such evidence would be entirely consistent with both the Government's theory and, it appears, Menendez's. Any such materials are thus neither exculpatory nor material to the preparation of a defense under Rule 16. *See, e.g.*, *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) ("Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." (internal quotation marks omitted)).

Rather than being in any way exculpatory, the only respect in which the requested documents could potentially be relevant is in a speculative attempt to seek to obtain materials that might impeach one or more of the Government's potential witnesses. If Menendez believes that the content of what Official-3 communicated to the Department of Justice is in some way inconsistent with statements that witnesses may make at trial (although Menendez does not explain

---

[3] The Indictment, of course, sets forth ample reason to believe that Menendez expected Official-3 would *not* recuse himself (*see, e.g.*, Indictment ¶¶ 49, 53.f) prior to his appointment, as the Government expects to establish at trial.

Honorable Sidney H. Stein
March 9, 2024
Page 7

why he may so believe), that would amount, at most, to impeachment material. The Government intends, consistent with its longstanding practice, to provide witness statements and potential impeachment material in the prosecution team's possession at an appropriate time in advance of trial. Menendez is not entitled to such material, if any, now.

Accordingly, Menendez's motion should be rejected for this separate reason as well.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  s/ Paul M. Monteleoni
Eli J. Mark
Paul M. Monteleoni
Lara Pomerantz
Daniel C. Richenthal
Assistant United States Attorneys
(212) 637-2431/2219/2343/2109

cc: (by ECF)

Counsel of Record