## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ROBERT MENENDEZ, *et al.*,

Defendants.

Criminal Action No. 23-490 (SHS)

*Document Electronically Filed*

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WAEL HANA'S OMNIBUS MOTIONS IN LIMINE

---

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

BACKGROUND ...................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 3

DISCUSSION ........................................................................................................................... 5

     I.    THE GOVERNMENT SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE REGARDING MR. HANA'S ALLEGEDLY LAVISH LIFESTYLE. ................................................................ 5

     II.   THE GOVERNMENT SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE OF UNCHARGED CONDUCT REGARDING MR. HANA AS AN ALLEGEDLY UNREGISTERED AGENT OF A FOREIGN PRINCIPAL. ................................................... 12

          A.    Mr. Hana's FARA Registration Status Is Irrelevant To The Conduct Charged. ........................................................................... 14

          B.    Introduction Of Evidence Regarding Mr. Hana's Registration Status Will Inevitably Confuse The Issues Before The Jury. ................... 18

          C.    Evidence Of Mr. Hana's FARA Registration Status Is Unduly Prejudicial. .................................................................................... 20

          D.    Evidence Of Mr. Hana's FARA Registration Status Should Be Excluded Under Rule 404(B). ............................................................ 22

CONCLUSION ......................................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Att'y Gen. of United States v. Wynn*,
  636 F. Supp. 3d 96 (D.D.C. 2022) ..........................................................................................15

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) ....................................................................................................7

*Finch v. Hercules Inc.*,
  No. 92-cv-251, 1995 WL 785100 (D. Del. Dec. 22, 1995) ......................................................7

*Henry v. Tracy*,
  No. 10-cv-800, 2014 WL 12729363 (W.D.N.Y. May 12, 2014) ..............................................4

*Kinsey v. Cendant Corp.*,
  588 F. Supp. 2d 516 (S.D.N.Y. 2008) ....................................................................................11

*Laureano v. City of New York*,
  No. 17-cv-181, 2021 WL 3272002 (S.D.N.Y. July 30, 2021) ................................................3

*Old Chief v. United States*,
  519 U.S. 172 (1997) ..........................................................................................................3, 21

*Sprint/United Management Co. v. Mendelsohn*,
  552 U.S. 379 (2008) ............................................................................................................4

*United States Football League v. Nat. Football League*,
  842 F.2d 1335 (2d Cir. 1988) ..............................................................................................18

*United States v. Al-Moayad*,
  545 F.3d 139 (2d Cir. 2008) ................................................................................................8

*United States v. Balwani*,
  No. 18-cr-258, 2022 WL 597040 (N.D. Cal. Feb. 28, 2022) ................................................10

*United States v. Barret*,
  No. 10-cr-809, 2011 WL 6704862 (E.D.N.Y. Dec. 21, 2011), *aff'd*, 677 F.
  App'x 21 (2d Cir. 2017) ......................................................................................................5

*United States v. Bowe*,
  360 F.2d 1 (2d Cir. 1966) ....................................................................................................19

*United States v. Bowen*,
  511 F. Supp. 3d 441 (S.D.N.Y. 2021) ..................................................................................3

*United States v. Carboni*,
    204 F.3d 39 (2d Cir. 2000)...........................................................................................21

*United States v. Dominique-McClain*,
    623 F. Supp. 3d 33 (E.D.N.Y. 2022) ...........................................................................3

*United States v. Downing*,
    297 F.3d 52 (2d Cir. 2002)............................................................................................5

*United States v. Dupree*,
    620 F. App'x 49 (2d Cir. 2015) .................................................................................11

*United States v. Ewings*,
    936 F.2d 903 (7th Cir. 1991) ........................................................................................8

*United States v. Fallon*,
    61 F.4th 95 (3d Cir. 2023) ..........................................................................................18

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980)........................................................................................21

*United States v. Garcia*,
    291 F.3d 127 (2d Cir. 2002).........................................................................................4

*United States v. Gelzer*,
    50 F.3d 1133 (2d Cir. 1995).........................................................................................4

*United States v. Graham*,
    51 F.4th 67 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1754 (2023)...........................21

*United States v. Hatfield*,
    685 F. Supp. 2d 320 (E.D.N.Y. 2010) ......................................................6, 8, 9, 11

*United States v. Holmes*,
    No. 18-cr-258, 2021 WL 2044470 (N.D. Cal. May 22, 2021) ................................10

*United States v. Jackskion*,
    102 F.2d 683 (2d Cir. 1939)..........................................................................................8

*United States v. Jackson-Randolph*,
    282 F.3d 369 (6th Cir. 2002) ....................................................................................7, 8

*United States v. Jadusingh*,
    No. 18-cr-257, 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020)....................................18

*United States v. James*,
    607 F. Supp. 3d 246 (E.D.N.Y. 2022) ........................................................................9

*United States v. Jimenez,*
   96 F.4th 317 (2d Cir. 2024) ...........................................................................15

*United States v. Livoti,*
   196 F.3d 322 (2d Cir. 1999)............................................................................22

*United States v. Malka,*
   602 F. Supp. 3d 510 (S.D.N.Y. 2022)......................................................14, 18

*United States v. Manafort,*
   318 F. Supp. 3d 1 (D.D.C. 2018) ...................................................................15

*United States v. McCallum,*
   584 F.3d 471 (2d Cir. 2009)........................................................................4, 23

*United States v. Michel*,
   No. 19-cr-148, 2022 WL 4182342 (D.D.C. Sept. 13, 2022) ..........................15

*United States v. Mitchell*,
   172 F.3d 1104 (9th Cir. 1999) ..........................................................................7

*United States v. Ozsusamlar,*
   428 F. Supp. 2d 161 (S.D.N.Y. 2006)...............................................................3

*United States v. Peters,*
   543 F. App'x 5 (2d Cir. 2013) ........................................................................11

*United States v. Pitre*,
   960 F.2d 1112 (2d Cir. 1992)............................................................................5

*United States v. Potapova,*
   No. 17-cr-206, 2018 WL 10320584 (N.D.N.Y. July 3, 2018), *aff'd*, 800 F.
   App'x. 14 (2d Cir. 2020)................................................................................12

*United States v. Quattrone,*
   441 F.3d 153 (2d Cir. 2006)........................................................................6, 7

*United States v. Robinson,*
   702 F.3d 22 (2d Cir. 2012)................................................................................4

*United States v. Robinson,*
   No. 17-cr-249, 2017 WL 4466616 (S.D.N.Y. Oct. 5, 2017) ............................4

*United States v. Rossy,*
   No. 22-cr-550, 2023 WL 8039500 (S.D.N.Y. Nov. 20, 2023) ......................12

*United States v. Ruggiero,*
   726 F.2d 913 (2d Cir. 1984)............................................................................20

iv

*United States v. Smothers*,
   652 F. Supp. 3d 271 (E.D.N.Y. 2023) ...................................................................21

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) ...................................................................................................6

*United States v. Sriyuth*,
   98 F.3d 739 (3d Cir. 1996) ........................................................................................8

*United States v. Stahl*,
   616 F.2d 30 (2d Cir. 1980) ..................................................................................6, 11

*United States v. Sterritt*,
   No. 21-cr-193, 2023 WL 4140269 (E.D.N.Y. June 22, 2023) ................................21

*United States v. Ulbricht*,
   79 F. Supp. 3d 466 (S.D.N.Y. 2015) ...................................................................3, 18

*United States v. Wey*,
   252 F. Supp. 3d 237 (S.D.N.Y. 2017) .......................................................................3

*United States v. Williams*,
   705 F. App'x. 869 (11th Cir. 2017) ...........................................................................6

*White v. McKinley*,
   605 F.3d 525 (8th Cir. 2010) ...................................................................................18

**Statutes**

18 U.S.C. § 219 ............................................................................................... *passim*

18 U.S.C. § 951 .........................................................................................................17

22 U.S.C. § 611 ......................................................................................................2, 16

22 U.S.C. § 612 .........................................................................................................15

22 U.S.C. § 613 ....................................................................................................16, 20

**Rules**

Fed. R. Evid. 401 ............................................................................................ *passim*

Fed. R. Evid. 402 ....................................................................................................3, 14

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 404(b) ........................................................................................ *passim*

## **BACKGROUND**

On March 29, 2024, the Government provided purported notice of certain evidence it may seek to introduce in support of its case-in-chief at trial, including evidence that would trigger notice requirements under Federal Rule of Evidence 404(b).  With respect to Mr. Hana, the Government identified its intent to offer evidence regarding Mr. Hana's financial needs and desires, including: (1) Mr. Hana's preference for expensive, luxury items, such as jewelry, watches, and upscale meals, and receipt of such items from co-defendants and/or other conspirators or those acting at their direction; and (2) prior to the success of IS EG Halal, Mr. Hana did not pay his debts as they were due, his residence was foreclosed upon, and he had limited business success and limited funds.  Further, the Government advised that it intends to offer evidence that Mr. Hana worked with the Government of Egypt, including to seek to obtain goods for potential military use.

For the reasons explained herein, the Government's notice, described above, is insufficient under Rule 404(b)(3), which requires federal prosecutors to identify "any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it," and to "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Fed. R. Evid. 404(b)(3)(A)-(B).  Here, the notice simply describes the general nature of the anticipated evidence without identifying any of the actual evidence that Mr. Hana should anticipate.  Likewise, the purportedly permissible 404(b) purposes are identified in only the most generic, boilerplate terms and, thus, lack any real articulation of a proper non-propensity purpose for which the evidence is being offered.

More substantively, much of this evidence is simply not relevant under Rule 401, as it does not have "any tendency" to make the Government's allegations "more or less probable than it would be without the evidence" and is not "of consequence in determining the action."  Fed. R. Evid. 401.  And even if it were relevant, the evidence would be inadmissible under both Rule 403

1

because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time," or Rule 404(b)(1) as impermissible character evidence "to show that on a particular occasion [Mr. Hana] acted in accordance with the character."  For all these reasons, as detailed below, the general evidence referenced by the Government in its Rule 404(b) Notice should be excluded in its entirety.

Last, certain other evidence should be excluded pursuant to Rules 403 and 404(b), namely, evidence of Mr. Hana's allegedly lavish lifestyle and his registration status under the Foreign Agent Registration Act, 22 U.S.C. § 611, *et seq.* ("FARA").  The admission of such evidence of other "bad" acts would be irrelevant to the charged offenses, highly prejudicial, and serve no proper evidentiary purpose under Rule 404(b).  With respect to Mr. Hana's purported lifestyle, it is obvious that the Government is hoping to prejudice Mr. Hana and inflame the jury by portraying him as a "fat cat" who has made a lot of money—just  the type of class prejudice that the law does not allow.  Perhaps more critically, allowing the Government to introduce Mr. Hana's registration status under FARA would require the full exploration of the intricacies of FARA's statutory framework, including its definitions, registration requirements, and statutory exemptions, in order for the jury to determine whether Mr. Hana was required to, but did not, register—a factual determination that the jury is not called upon to address in reaching a verdict on the charges actually set forth in the Indictment.  Doing so clearly risks confusing the jury as to the actual issues in this case, creates the very real possibility of the jury convicting Mr. Hana of a charged offense because it believes he may have committed an uncharged FARA violation, and further prolongs an already lengthy trial.  Mr. Hana's in limine motions to exclude this evidence should, for all of these reasons, be granted in the interest of a fair, and far more efficient, trial.

## LEGAL STANDARD[1]

"The purpose of a motion in limine is to allow a court to rule on the admissibility of potential evidence in advance of trial."  *Laureano v. City of New York*, No. 17-cv-181, 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021).  Thus, a court should exclude evidence on a motion in limine when it is "clearly inadmissible on all potential grounds."  *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006).

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action."  Fed. R. Evid. 401(a)-(b); *see, e.g.*, *United States v. Bowen*, 511 F. Supp. 3d 441, 446 (S.D.N.Y. 2021); *United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017).  The operative inquiries, then, are whether the evidence "possesses sufficient probative value to justify receiving it in evidence" and "tend[s] to prove the matter sought to be proved."  Advisory Committee Notes on Fed. R. Evid. 401.  Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402; *see, e.g.*, *United States v. Dominique-McClain*, 623 F. Supp. 3d 33, 36 (E.D.N.Y. 2022).

Under Rule 403, evidence must be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *see, e.g.*, *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015).  Thus, "Rule 403 is concerned with some adverse effect beyond tending to prove the fact or issue that justified its admission into evidence."  *Ulbricht*, 79 F. Supp. 3d at

---

[1] Hereinafter, unless otherwise noted, the Third Superseding Indictment (ECF No. 238) is referred to as the "Indictment," and citations to the same take the form "Ind."  Additionally, unless otherwise noted, all internal citations and quotation marks are omitted from citations.

481 (cleaned up) (quoting *United States v. Gelzer,* 50 F.3d 1133, 1139 (2d Cir. 1995)).  In other words, even assuming that evidence is relevant under Rule 401, Rule 403 requires "balancing the probative value of and need for the evidence against the harm likely to result from its admission." Advisory Committee Notes on Fed. R. Evid. 403.  "Assessing the probative value of proffered evidence and weighing any factors against its admissibility is a matter for this Court's sound discretion and judgment." *Henry v. Tracy*, No. 10-cv-800, 2014 WL 12729363, at *3 (W.D.N.Y. May 12, 2014) (citing *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)).

As well, Rule 404(b)(1) precludes propensity evidence—that is, evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  The categories of evidence identified in Rule 404(b) may, however, be admissible for another proper purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Thus, the Second Circuit has adopted an "inclusionary approach" to Rule 404(b) evidence, which "allows evidence for any purpose other than to show a defendant's criminal propensity."  *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). Importantly, however, "this inclusionary approach does not invite the government to offer, carte blanche, any prior act of the defendant in the same category of crime."  *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009); *United States v. Robinson*, No. 17-cr-249, 2017 WL 4466616, at *3 (S.D.N.Y. Oct. 5, 2017) (same).

Evidence of wrongs or uncharged crimes may also be admissible as direct evidence in a criminal case, but only "if that conduct arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial."  *United States v. Robinson,*

702 F.3d 22, 37 (2d Cir. 2012).  Of course, such evidence is still subject to balancing under Rule 403 and, therefore, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).  Therefore, to be admissible under Rule 404(b), "[p]rior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial.  In addition, (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." *United States v. Downing,* 297 F.3d 52, 58 (2d Cir. 2002); *United States v. Barret*, No. 10-cr-809, 2011 WL 6704862, at *10 (E.D.N.Y. Dec. 21, 2011), *aff'd,* 677 F. App'x 21 (2d Cir. 2017).

## DISCUSSION[2]

### I.    THE GOVERNMENT SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE REGARDING MR. HANA'S ALLEGEDLY LAVISH LIFESTYLE.

Evidence of Mr. Hana's finances, including both his purported lavish desires and his prior financial needs, should be excluded under Federal Rules of Evidence 401, 403, and 404(b) because, in sum, such evidence is totally irrelevant, extremely inflammatory, and unduly prejudicial.  In the Government's Rule 404(b) Notice, the prosecution indicated its desire to introduce evidence regarding:  (1) Mr. Hana's preference for expensive, luxury items, such as jewelry, watches, and upscale meals, and receipt of such items from co-defendants and/or other conspirators or those acting at their direction; and (2) that prior to the success of IS EG Halal, Mr. Hana had limited business success and limited funds, including that Mr. Hana did not pay his debts as they were coming due, and his residence was foreclosed upon.  But there is a distinction in the law between general evidence of wealth which can support motive under Rule 404(b), and evidence of lavish spending which cannot and is irrelevant except under certain limited

---

[2] This motion should not be construed as waiving any other objections Mr. Hana may have at trial, including but not limited to, objections based upon the hearsay rules.

circumstances not applicable here.  *See United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) (denying the Government's request to introduce evidence concerning the defendant's "lavish" spending under Rule 404(b) where the relevant issue was "not how [the defendant] acquired the money he used to fund his extravagant lifestyle" but rather "whether the stock trades and compensation methods he used to acquire this money were legal.  And, to resolve this inquiry, it is irrelevant if [defendant] spent his fortune on lavish parties, instead of donating it to starving Malawian orphans.").

It is readily apparent that the Government's only possible reason for presenting this evidence to the jury is an improper one:  to visit undue prejudice on Mr. Hana, portraying him as a "fat cat" who has made a lot of money, and can afford to purchase luxury watches, expensive jewelry, and upscale meals, all in an effort to prejudice and inflame the jury.  In other words, the sole purpose of this pejorative "evidence" is to turn the jury against Mr. Hana, though it has absolutely no probative value with respect to the offenses actually charged against him.  But, of course, this is precisely what the Federal Rules of Evidence are designed to protect against.

Indeed, the law is clear:  appeals to class prejudice "have no place in a court room."  *United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980) (reversing conviction based on "the prosecutor's trial strategy . . . that obviously included a persistent appeal to class prejudice").  In *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940), the Supreme Court explained that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."   Accordingly, the Second Circuit, as well as other appellate courts, have consistently recognized that "evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations," and thus deprive the defendant of a fair trial.  *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006); *see also United States v. Williams*, 705 F. App'x.

869, 873 (11th Cir. 2017) ("Use of a defendant's wealth to appeal to class bias can be highly improper and can deprive that defendant of a fair trial."); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (noting that inappropriate references to a defendant's wealth can be highly prejudicial); *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002) ("This court has already recognized that prosecutorial appeals to wealth and class biases can create prejudicial error.").

Those dangers are readily apparent here, as evidence related to Mr. Hana's finances, including that he purchased and/or received luxury watches, expensive jewelry, and upscale meals—things that most jurors could not afford—is either meant to show, or certainly risks being used to depict, Mr. Hana as some kind of "fat cat" whom jurors should not like and should therefore convict.[3]  *See Finch v. Hercules Inc.*, No. 92-cv-251, 1995 WL 785100, at *10 (D. Del. Dec. 22, 1995) (excluding evidence of defendant's financial wealth as it "would serve to prejudice the jury against defendant and its senior officers by portraying them as 'avaricious fat cats who can afford to pay a sizable judgment.'").  Indeed, there is no basis whatsoever to believe that an individual who spends their money on luxury watches or expensive jewelry has any more incentive to commit bribery and fraud than a thrifty person.  *See United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th

---

[3] Beyond evidence concerning Mr. Hana's preference for expensive items, the Government should also be precluded from seeking to prove Mr. Hana's *disadvantageous* financial situation prior to the success of IS EG Halal, which is also an aspect of its Rule 404(b) Notice.  Indeed, the law proscribes holding one's lack of success against him just as much as it does his success; unless it is proven to be actually relevant and other safeguards are in place.  *See Quattrone*, 441 F.3d at 187 ("While evidence of compensation, wealth, *or lack thereof* can unduly prejudice jury deliberations, that evidence may be admitted where other safeguards are employed such as limiting instructions or restrictions confining the government's references to that wealth.") (emphasis added).  Nor, as discussed below, would any attempt to connect Mr. Hana's prior debts, stemming back to a foreclosure complaint filed in 2015, to his purportedly lavish spending in the more recent years— something that could, for example, require expert psychological evidence—be proper, as this would occasion precisely the kind of mini-trial that Rule 403 is meant to avoid.  *See infra* at 11-12 (citing cases).

Cir. 1999) ("A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value."); *Jackson-Randolph*, 282 F.3d at 377 ("[I]t is illogical and improper to equate financial success and affluence with greed and corruption."). Thus, this evidence runs the very real risk of evoking "strong adverse" emotions that could improperly influence the jury's assessment of the law and facts. *See United States v. Al-Moayad,* 545 F.3d 139, 163 (2d Cir. 2008) (under Rule 403, unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *see also United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) ("[A] significant danger of undue prejudice will be found to exist where there are substantial possibilities . . . that a jury will harbor strong adverse sensitivity to the challenged evidence."). This evidence should therefore be excluded under Rule 403.

This is not to say that lifestyle evidence is never admitted. As the court in *Hatfield* observed, "'evidence of a lavish lifestyle' is not relevant to show motive, but is probative when a defendant disputes his 'participation' in an act." 685 F. Supp. 2d at 326 (quoting *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991)). The *Hatfield* court explained that in cases where the defendant "possessed a large quantity of money, and had no legitimate explanation for how he obtained it," the admission of lavish spending evidence "without any apparent legal source, 'may, when taken with proof of other facts, have a logical tendency to prove criminal misconduct.'" *Id.* (quoting *United States v. Jackskion*, 102 F.2d 683, 684 (2d Cir. 1939)). The court distinguished those cases from the one there before it, stating "[h]ere, there is no dispute concerning [the defendant's] 'participation' in profitable stock trades, nor his 'participation' in receiving sizeable compensation"; rather, "the relevant question is not how he acquired the money," but "whether the stock trades and compensation methods he used to acquire this money were legal." *Id.* The court

additionally noted "it is entirely speculative whether [the defendant's] funding for his 'lavish' personal spending came from the alleged scheme or from his sizable pre-existing fortune." *Id.* Recognizing the danger of improper bolstering by appealing to class prejudice, the court ultimately found that "to resolve this inquiry, it is irrelevant if [the defendant] spent his fortune on lavish parties, instead of donating it to starving Malawian orphans." *Id.*

The United States District Court for the Eastern District of New York recently applied these same principles in *United States v. James*, 607 F. Supp. 3d 246 (E.D.N.Y. 2022). There, the court applying *Hatfield*, highlighted that "there [was] no dispute that Defendant 'participated' in a profitable medical billing business and received commissions." *Id.* at 263. The court found that "[t]he evidence may show that Defendant's funding for his personal spending came . . . from his business through which he carried out the alleged scheme," and if it did, "then the wealth evidence is relevant to Defendant's motive to commit the alleged offenses." *Id.* at 264. But the court made clear that it "[would] not permit the Government to introduce such evidence carte blanche, and caution[ed] the Government to narrow down the 'wealth evidence' described in the parties' papers." *Id.* In doing so, the court singled out the inflammatory pieces of lavish-spending evidence, namely the "'hundreds' of photographs of Defendant's properties and assets." *Id.*

The recent, highly celebrated trial of Elizabeth Holmes also required the court to grapple with how to balance the Government's right to introduce evidence as to motive with a defendant's right to a fair trial. There, the court held "[t]he Government may introduce evidence that Holmes enjoyed a lifestyle as Theranos CEO that is comparable to those of other tech company CEOs," agreeing with the Government that such evidence was proper to support the Government's theory that "Holmes's desire to maintain her lifestyle as Theranos CEO and founder and all the accompanying celebrity and benefits (financial or otherwise) were motivating factors for her to

continue to engage in the fraudulent conduct alleged in the indictment." *United States v. Holmes*, No. 18-cr-258, 2021 WL 2044470, at *5 (N.D. Cal. May 22, 2021). Thus, the court allowed evidence of "salary, travel, celebrity, and other perks and benefits commensurate with the position." *Id.* The court, however, precluded "references to specific purchases or details reflecting branding of clothing, hotels, or other personal items," holding they were "not relevant, and the prejudicial effect of that evidence outweigh[ed] any probative value" under Rule 403, *id.*, a holding that was applied as well to one of Ms. Holmes's co-conspirators. *United States v. Balwani*, No. 18-cr-258, 2022 WL 597040, at *8 (N.D. Cal. Feb. 28, 2022) ("[T]he Court will apply the ruling on Holmes' motion to Balwani's trial. The Government is precluded from introducing evidence of Holmes' and Balwani's wealth, spending, and lifestyle that is outside the general nature of their positions at Theranos.").

These cases, and many others, *see supra* at 6-7, stand for the straightforward, but essential, principle that while evidence of a defendant's wealth may be relevant with regard to motive, inflammatory evidence of lavish spending and especially of particular purchases do not fulfill that purpose, and are not admissible unless the spending is otherwise inexplicable and thus tends to prove participation in the alleged conduct. Here, Mr. Hana does not dispute his involvement in IS EG Halal, or that he received sizeable compensation for his role in the company. As such, evidence concerning Mr. Hana's operation of IS EG Halal—and his earnings from that operation—suffice to provide the financial motive that appears to be at the center of the Government's case. Indeed, under the caselaw, this evidence will allow the Government to establish how much Mr. Hana earned and, of course, how he earned it (facts that will be fundamentally undisputed since there is no dispute Mr. Hana "participated" in IS EG Halal). But it does not allow the Government to

cherry-pick the most incendiary examples of conspicuous consumption—such as the purchase of expensive watches, jewelry and upscale meals—and put that on trial.

With these principles in mind, the Court should prohibit the Government from introducing evidence of Mr. Hana's finances, specifically his lavish desires and prior financial needs, as such evidence is the precise type of irrelevant lavish-spending evidence that courts have deemed improper. *See Hatfield*, 685 F. Supp. 2d at 326 (denying the government's motion seeking to admit evidence of defendant's "lavish" spending); *Stahl* 616 F.2d at 32 (reversing conviction where the prosecution repeatedly referred to the defendant's wealth, including characterizing the defendant as a "multi-millionaire businessman in real estate," purportedly to show that the defendant had a motive to pay a bribe in order to avoid an increase in estate taxes); *see also Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518-19 (S.D.N.Y. 2008) (excluding evidence of plaintiff's compensation as an unfairly prejudicial play "to the fact finder's potential economic sympathies or prejudices"). Indeed, beyond the prejudice that, under the caselaw, flows naturally from the class bias aspects of this evidence, it would also occasion an impermissible mini-trial on whether, for example, Mr. Hana had the same tastes even before IS EG Halal began to earn money for him, facts that are obviously outside the scope of this case.[4] *See generally United States v. Dupree*, 620 F. App'x 49, 54 (2d Cir. 2015) (finding that "the district court was entitled to preclude [evidence] under Federal Rule of Evidence 403" where such evidence "would have resembled a mini-trial regarding conduct unrelated to this case"); *United States v. Peters*, 543 F. App'x 5, 10 (2d Cir.

---

[4] As well, it should be noted that, aside from IS EG Halal, Mr. Hana had other sources of income during the relevant time-frame. In particular, Mr. Hana invested in several real estate projects and took part in other business ventures. The source of the monies that were used to fund his lifestyle—*i.e.*, whether they were from IS EG Halal or some other successful business venture—should not be what this trial is about, or occasion the kind of trial within a trial that the Government's proffer threatens.

2013) (evidence that was "likely to generate a mini-trial" was properly excluded under Rule 403 as its "probative value was substantially outweighed by the risk of confusion"); *United States v. Rossy*, No. 22-cr-550, 2023 WL 8039500, at *3 (S.D.N.Y. Nov. 20, 2023) (risk of "creating a multi-ringed sideshow of mini-trials on collateral issues . . . that may have only tangential bearing, if at all, to the issues and claims disputed in [the] case" indicates that the evidence should be excluded under Rule 403); *United States v. Potapova*, No. 17-cr-206, 2018 WL 10320584, at *6 (N.D.N.Y. July 3, 2018), *aff'd*, 800 F. App'x. 14 (2d Cir. 2020) (evidence was properly excluded under Rule 403 where potential for mini-trial over collateral issues "would confuse and mislead the jury, and divert the jury's attention from the critical issue in [the] case"). For this reason too, the Government's proposed evidence should be precluded and this already complex and lengthy trial limited to what is actually relevant to the allegations in the Third Superseding Indictment.

## II.    THE GOVERNMENT SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE OF UNCHARGED CONDUCT REGARDING MR. HANA AS AN ALLEGEDLY UNREGISTERED AGENT OF A FOREIGN PRINCIPAL.

The Government has not charged Mr. Hana with any substantive violation of FARA. Certainly, the Government has not alleged anywhere in the Indictment that Mr. Hana at any point was or acted as an "agent of a foreign principal" who was therefore required to register under FARA.[5]  Instead, in Counts 15 and 16 of the Indictment, the Government alleges that Senator Menendez acted as an agent of a foreign principal. Specifically, in Count 15 the Government alleges that Senator Menendez, Ms. Menendez, and Mr. Hana, "and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each

---

[5] To be sure, the Government does allege in the Indictment that Ms. Menendez and Mr. Hana "have never registered as foreign agents or lobbyists." Ind. ¶ 15.  But this gratuitous and highly prejudicial statement is not connected to an allegation that Mr. Hana was, in fact, required to register, let alone any factual allegation to support that position.  For that reason, Mr. Hana has moved to strike this language from the Indictment as surplusage.  *See* ECF No. 143 at 59-61.  That motion remains pending.

other to . . . have a public official, to wit, ROBERT MENENDEZ, act as an agent of a foreign principal, to wit, the Government of Egypt and Egyptian officials, required to register under FARA, [22 U.S.C. 611 *et seq.*]," in violation of 18 U.S.C. § 219.  Ind. ¶ 109.  And, in Count 16, the Government charges only Senator Menendez with a substantive violation of § 219, alleging that the Senator, "being a public official, was and acted as an agent of a foreign principal required to register under FARA."  *Id.* ¶ 112.

Whether or not Mr. Hana registered as a foreign agent under FARA is therefore irrelevant; and it certainly has no connection to either the conspiracy charged in Count 15 or the § 219 violation charged in Count 16, both of which relate to a putative scheme to have Senator Menendez—not Mr. Hana—act as an agent of a foreign principal, in violation of a distinct statute applicable only to public officials.  Nor does the Government at any point state or even suggest that Mr. Hana's failure to register—which is not alleged to have violated any statute—bears on the alleged conspiracy to have Senator Menendez act as an agent of a foreign principal.  And Mr. Hana's registration status has even less relevance to the remaining counts of the Indictment, which do not concern any alleged activities undertaken by Mr. Hana on behalf of a foreign principal.

Accordingly, the Government should not be permitted to introduce irrelevant, confusing, and prejudicial evidence suggesting that Mr. Hana violated FARA by not registering when, in fact, the Government is not alleging that he should have registered in the first place.  Mr. Hana thus respectfully moves to exclude from this case any evidence, or suggestion, that he was required to register with the Attorney General as an agent of a foreign principal and that he is not so registered for the following reasons, any of which is independently sufficient:  *first*, Mr. Hana's FARA registration status has no tendency to make any fact material to this case more or less probable, and is thus irrelevant under Rule 401; *second*, evidence of Mr. Hana's FARA registration status

will inevitably confuse and mislead the jury as to the issues in this case and require an entire, totally unnecessary, time-consuming mini-trial regarding this uncharged conduct, warranting exclusion under Rule 403; *third*, any probative value of evidence that Mr. Hana has not registered under FARA is otherwise substantially outweighed by the danger that it will unfairly prejudice Mr. Hana; and *fourth*, evidence that Mr. Hana acted as an unregistered agent is inadmissible under Rule 404(b) (and the Government has not even tried to notice it as such).

### A.  Mr. Hana's FARA Registration Status Is Irrelevant To The Conduct Charged.

As was stated above, *see supra* at 3-5, "[w]ith certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible."  *United States v. Malka*, 602 F. Supp. 3d 510, 527 (S.D.N.Y. 2022) (citing Fed. R. Evid. 402).  Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401(a)-(b). For the reasons that follow, the fact of Mr. Hana's FARA registration status, and any evidence that Mr. Hana was required to register with the Attorney General as an agent of a foreign principal, has absolutely no probative value with respect to any fact material to this case.  Accordingly, the Government should be prohibited from introducing any evidence that Mr. Hana has not registered under FARA.

Initially, Mr. Hana's FARA registration status has no impact on any element that the Government is required to prove at trial to sustain either the conspiracy alleged in Count 15, or the substantive § 219 violation set forth in Count 16.  Rather, the Government has charged Mr. Hana with conspiring to commit a violation of § 219, which penalizes "public officials"—and no one else—for acting as an "agent of a foreign principal."  Ind. ¶ 109.  To sustain that charge, the Government bears the burden of proving beyond a reasonable doubt the elements of that conspiracy:  (1) that Mr. Hana agreed to commit an offense under § 219—namely, to "have"

Senator Menendez act as an "agent of a foreign principal" as defined under FARA; (2) that Mr. Hana knowingly engaged in the conspiracy with the specific intent to commit an offense under § 219; and (3) the commission of an overt act in furtherance of the conspiracy. *See United States v. Jimenez*, 96 F.4th 317, 324 (2d Cir. 2024) ("To prove conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent," and that those persons "agreed to participate in what [they] knew to be a collective venture directed toward a common goal.").

To be sure, FARA is incorporated in the object offense underlying the Count 15 conspiracy—a § 219 violation—but, pursuant to the plain language of the statute, only to the extent that FARA defines the key term "agent of a foreign principal."  In other words, while § 219 incorporates by references FARA's definition of "agent of a foreign principal," *registering* as an "agent of a foreign principal" under FARA has no impact on the elements of a § 219 violation, or of a conspiracy to violate § 219.  Indeed, the FARA registration status of anyone charged under § 219, or with conspiring to violate that statute, does not in even the remotest way inform the proofs required—*i.e.*, the fundamental elements—of that violation.  For example, even if every co-defendant, "known and unknown co-conspirator," and every individual referenced in the Indictment *had* registered under FARA at any point, it would have no effect on whether the Government proved the elements necessary to sustain the Count 15 conspiracy, nor would it impact any co-defendant's potential liability under Count 15.[6]

---

[6] For further context, as Mr. Hana has previously discussed, *see* ECF No. 143 at 39-49, FARA is, at its core, a disclosure statute imposing a registration requirement on "agents" of "foreign principals."  *Att'y Gen. of United States v. Wynn*, 636 F. Supp. 3d 96, 98 (D.D.C. 2022). Specifically, the statute prohibits a person from "act[ing] as an agent of a foreign principal unless" registered with the Attorney General or unless "exempt from registration under the provisions of this subchapter."  22 U.S.C. § 612(a); *United States v. Michel*, No. 19-cr-148, 2022 WL 4182342, at *5 (D.D.C. Sept. 13, 2022); *United States v. Manafort*, 318 F. Supp. 3d 1, 4 (D.D.C. 2018).  The

The Government nevertheless asserts that it views Mr. Hana's FARA registration status as "relevant to his belief in the wrongfulness of his conduct," and "similarly relevant to the belief in the wrongfulness of the conduct of both his charged and uncharged co-conspirators." ECF No. 180 at 194. The Government's assertion thus presupposes that Mr. Hana, or any unregistered "charged and uncharged co-conspirators," are somehow in the wrong for not having registered under FARA, despite making no allegation that they were required to do so or charging anyone with a FARA violation.[7] Since there is no allegation that he was required to register, it is therefore entirely unclear how Mr. Hana's FARA registration status is at all indicative of his "belief in the wrongfulness" of any conduct charged in the Indictment.

Moreover, the Government cannot make any logical connection between the FARA registration status of anyone in this case, nor anyone's awareness of FARA's registration requirement, and the alleged agreement between Mr. Hana, Ms. Menendez, and Senator Menendez by which they pursued a scheme to have *the Senator* act as an agent of a foreign principal. As the Government has repeatedly emphasized, a "public official" is liable under § 219 whenever he acts as an agent of a foreign principal, whether or not he registered under FARA, and irrespective of

---

statute defines the term "agent of a foreign principal," 22 U.S.C. § 611(c)(1); delineates categories of people who, though they may act as an "agent of a foreign principal" as defined under FARA, are nevertheless exempt from registering, *id.* at § 613 (including, *inter alia*, "[d]iplomatic or consular officers," "[o]fficials of foreign government," or those engaged in certain "[p]rivate and nonpolitical activities"); and clarifies the procedure for registering with the Attorney General, *id.* at § 612. Section 219, by contrast, criminalizes conduct only for a specific category of individuals—"public officials," of which Mr. Hana is not one.

[7] As mentioned in Mr. Hana's prior briefing, ECF No. 186 at 34 n.14, the Government's suggestion that any "uncharged co-conspirators" should have registered under FARA is particularly bewildering to the extent that the Government is referencing the anonymized "Egyptian officials" referenced in the Indictment. Those officials purportedly worked for the Egyptian government, and at least twice met the Senator in his Senate office in Washington, D.C, *see* Ind. ¶¶ 19, 21; thus, under 22 U.S.C. § 613, they were explicitly exempted from FARA's registration requirement, which applies to certain broadly defined "[o]fficials of foreign government[s]," "[d]iplomatic or consular officers" and their "staff."

his knowledge of FARA's statutory scheme.[8]  The same can be said with respect to Mr. Hana:  his FARA registration status, and any hypothetical awareness he has of FARA's registration requirement, have no conceivable bearing on whether he in fact knowingly and willfully agreed with others to have Senator Menendez act as an agent of a foreign principal.

The irrelevance of Mr. Hana's registration status under FARA is underscored by considering the opposite situation—*i.e.*, if Mr. Hana had registered as a foreign agent under FARA, the Government would undoubtedly argue—and would be correct—that Mr. Hana's registration as a foreign agent does not mean that Mr. Hana believed it was proper to conspire to have a public official act as a foreign agent.  Again, this is because whatever obligations Mr. Hana had under FARA—and to be clear, he had none based upon the allegations in this case—do not make it more or less likely that he conspired with others to have Senator Menendez act as a foreign agent.

In sum, Mr. Hana's FARA registration status is wholly unrelated to any element that the Government must prove to sustain any count in the Indictment.  Nor does Mr. Hana's FARA registration status have any effect whatsoever as to whether he is guilty of Count 15, or for that matter of any other charged conduct.  *See contra* 18 U.S.C. § 951 (exempting "agent(s) of a foreign government" from liability under that statute if the "agent" had registered under FARA). Accordingly, the Court should exclude as irrelevant under Rule 401 any evidence that Mr. Hana was required to register with the Attorney General as an agent of a foreign principal or any evidence that he is not so registered.

---

[8] Indeed, the Government posits that "public officials" are essentially prohibited from *ever* acting as an "agent of a foreign principal," and precluded from registering under FARA altogether.  Ind. ¶ 14.  Moreover, § 219 makes no mention of scienter.

**B.    Introduction Of Evidence Regarding Mr. Hana's Registration Status Will Inevitably Confuse The Issues Before The Jury.**

Even if the Court were to disagree and find evidence of Mr. Hana's FARA registration status somehow relevant to this case, that evidence should still be excluded under Rule 403 because, among other reasons, "its probative value is substantially outweighed by a danger of . . . confusing the issues."  Fed. R. Evid. 403; *see Malka*, 602 F. Supp. 3d at 527 ("Applying Rule 403, courts have routinely excluded evidence that, even if relevant, might improperly confuse the jury or influence jurors by unduly distracting their attention from the charged crimes.").  Courts have thus excluded relevant evidence under Rule 403 where that evidence causes confusion because, for example, it could reasonably mislead the jury into believing such evidence was at issue in the case, *see, e.g.*, *United States v. Fallon*, 61 F.4th 95, 109 (3d Cir. 2023) (excluding a law professor's expert testimony as to a reasonable interpretation of contract terms consistent with the defendants' good faith defense in a fraud prosecution, because while such evidence was relevant, it could "cause the jury to believe that the contractual terms were at issue in the case"); or where it could result in a mini-trial on collateral issues, *see, e.g.*, *Ulbricht*, 79 F. Supp. 3d at 492 (excluding evidence where it could "mislead the jury and lead it to convict defendant for uncharged conduct . . . [and] may lead to a mini-trial on collateral issues"); *United States v. Jadusingh*, No. 18-cr-257, 2020 WL 207950, at *4 (E.D.N.Y. Jan. 14, 2020) (excluding evidence of defendant's prior uncharged conduct where it "risk[ed] . . . confusing the jury and leading to a mini-trial" on the circumstances of that separate and minimally related conduct); *White v. McKinley*, 605 F.3d 525, 537 (8th Cir. 2010) (affirming the trial court's exclusion of evidence under Rule 403 that "would have created a mini-trial on [plaintiff's] actual guilt, which [was] not the subject of" the action brought); *see generally United States Football League v. Nat. Football League*, 842 F.2d 1335, 1373 (2d Cir. 1988) (not error to exclude evidence that would have led to "mini-trial").  Certainly,

this Court has the responsibility and the authority "to exclude evidence [that] is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues and if it would unnecessarily delay the trial." *United States v. Bowe*, 360 F.2d 1, 15 (2d Cir. 1966).

Here, any probative value Mr. Hana's FARA registration status might have—if, as set forth above, there is any—is far exceeded by the confusion and delay that would inevitably result from its introduction. Again, Counts 15 and 16 are predicated on the notion that Senator Menendez, and Senator Menendez alone, acted as a foreign agent in violation of § 219. As repeatedly discussed throughout Mr. Hana's briefing, *see* ECF No. 143 at 39-47, 55-59; ECF No. 186 at 23-32, § 219 and FARA are fundamentally distinct statutes: § 219 criminalizes conduct by a public official—acting as a foreign agent—while FARA does not prohibit any conduct, other than the failure to register in advance of engaging in certain specified political activities. That said, FARA certainly has its intricacies, delving into which will necessarily divert attention from the "core of criminality" relevant to § 219, and thus this case: a "public official" —and *only* a "public official" —acting as an "agent of a foreign principal." Thus, admitting evidence that Mr. Hana has never registered under FARA would require a full exposition of whether Mr. Hana in fact violated FARA and was thus himself an unregistered foreign agent. And this, in turn, would necessitate the consideration—and thus a time-consuming explanation—of FARA's statutory framework, definitions, and exemptions, not only in order to distinguish FARA from the statute actually charged—§ 219—but also to dispel any notion that Mr. Hana in fact acted as an "agent of a foreign principal" such that he was required to register under FARA—none of which has been charged.

More specifically, in order to provide Mr. Hana with a fair trial, he would have to be permitted to show that he did not violate FARA and it would require a nuanced deep-dive into

several provisions of FARA, none of which relate to the actual charged offense under § 219. The Government's introduction of Mr. Hana's FARA registration status and any related evidence suggestive of an uncharged FARA violation would, for example, entitle Mr. Hana to argue he fell within FARA's registration exemptions. To that end, under 22 U.S.C. § 613(d), FARA provides, in relevant part, that the registration requirement "shall not apply to . . . agents of foreign principals" if such an agent "engag[es] or agree[s] to engage only (1) in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal; or (2) in other activities not serving predominantly a foreign interest." Allowing the Government to introduce evidence that Mr. Hana was an unregistered foreign agent, therefore, would necessarily result in significant additional evidence being introduced, extensive arguments by counsel on the issue, and further prolonging of an already lengthy trial, all on a collateral, irrelevant issue. *United States v. Ruggiero*, 726 F.2d 913, 924-25 (2d Cir. 1984), *abrogated on other grounds* (affirming the trial court's exclusion of evidence under Rule 403 where "the inquiry proposed would have focused on irrelevant issues, would have opened the door to collateral evidence, and would have further delayed a lengthy trial"). In this regard, and others, admitting evidence that Mr. Hana has not registered as a foreign agent, would be a confusing and wholly unnecessary distraction from the charges actually brought in this case; it should not be permitted under Rule 403.

C.    **Evidence Of Mr. Hana's FARA Registration Status Is Unduly Prejudicial.**

Furthermore, any conceivable probative value to evidence of Mr. Hana's FARA registration status is also "substantially outweighed by danger of unfair prejudice" to Mr. Hana, warranting its exclusion under Rule 403. Indeed, Mr. Hana's FARA registration status would be particularly prejudicial in light of the Government's indication, in its 404(b) Notice, that it may offer evidence that Mr. Hana offered to and did work with the Government of Egypt, including with respect to procuring military equipment. If the Government is permitted to admit evidence

20

of Mr. Hana's work with the Egyptian Government as part of its overall case—an issue that Mr. Hana cannot address now, given that the Government has not identified that evidence and indeed is continuing, only a month before trial, to produce vast quantities of discovery (some 162,905 pages over the course of the last week alone)—adding evidence that Mr. Hana has not registered under FARA would cast this conduct as criminal in ways far beyond what it alleged, and irrespective of whether it is, to use the Government's phrasing, "evidence that is inextricably intertwined with evidence regarding the charged offenses and/or is background to the charged offenses and relationships between relevant persons."  In essence, it would create the very real danger that Mr. Hana would be convicted for a charged offense based upon his putative guilt of another.  But this is the very definition of "unfair prejudice" under Rule 403.  *See Old Chief*, 519 U.S. at 180 ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant."); *United States v. Smothers*, 652 F. Supp. 3d 271, 285 (E.D.N.Y. 2023) ("To determine whether evidence is unfairly prejudicial, the court considers it in the context of the crime alleged."); *United States v. Sterritt*, No. 21-cr-193, 2023 WL 4140269, at *10 (E.D.N.Y. June 22, 2023) ("Courts assess the risk of unfair prejudice, under FRE 403, by conducting a 'probative – prejudice balancing test'" (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000))).

Moreover, the suggestion that Mr. Hana violated FARA as an unregistered agent of a foreign principal is particularly inflammatory given the specific allegations of the Indictment, gratuitous though they may be.  *See United States v. Graham*, 51 F.4th 67, 83 (2d Cir. 2022), *cert.*

21

*denied*, 143 S. Ct. 1754 (2023) (weighing under Rule 403 whether evidence "create[d] a risk of prejudice that substantially outweighed [its] probative value"); *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (requiring that evidence shall be excluded as unfairly prejudicial when it is "more inflammatory than the charged crime"). Thus, Paragraphs 10 through 12 of the Indictment, immediately preceding the Government's mention of Mr. Hana's registration status, describe "Relevant Statutory Background on FARA," and provide that the statute "requires any person agreeing to act or acting in the United States as 'an agent of a foreign principal' to register with the United States Attorney General," Ind. ¶ 10, and goes on to say that "[t]he purpose of FARA is to prevent covert influence by foreign principals," *id.* ¶ 11. Thus, by seeking to admit evidence of Mr. Hana's registration status, the Government clearly means to imply—without ever actually alleging—that Mr. Hana was an "agent of a foreign principal," and as such violated a statute, FARA, that threatens national security. This should not be allowed.

### D. Evidence Of Mr. Hana's FARA Registration Status Should Be Excluded Under Rule 404(b).

Finally, as previously stated, Rule 404(b)(3) provides, in relevant part, that when the Government intends to introduce evidence of prior crimes or bad acts in a criminal trial the Government must "provide reasonable notice of any such evidence"; that such notice must "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports that purpose"; and that such notice must be "in writing before trial." In its 404(b) Notice, the Government indicates that, while it does not believe that it falls within Rule 404(b), it may offer evidence that Mr. Hana previously offered to and did work with the Government of Egypt, including to seek to obtain goods for potential military use. Thus, far from providing notice under Rule 404(b), the Government has specifically declined to offer proof that Mr. Hana acted as an unregistered agent of a foreign principal under that Rule, let alone

offered a proper purpose under Rule 404(b)(2) for introducing it.  Fed. R. Evid. 404(b)(2) (other crimes, wrongs, or acts "may be admissible for another [non-propensity] purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."); *McCallum*, 584 F.3d at 474-75 ("Evidence of prior convictions may be admissible under Federal Rule of Evidence 404(b) to show 'intent, . . . knowledge, identity, or absence of mistake or accident,' but not to show character or propensity.") (citing Fed. R. Evid. 404(b)(2)). For this reason too, Mr. Hana's motion should be granted and any evidence of his violation of FARA—uncharged as it is—should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should prohibit the Government and Mr. Hana's co-defendants from introducing at trial alleged evidence regarding (1) Mr. Hana's lavish lifestyle pursuant to Rules 401, 403 and Rule 404(b) and (2) Mr. Hana's FARA registration status pursuant to Rules 401, 403, and 404(b).  Alternatively, in the event that the Court elects to postpone its ruling on the admissibility of any of this evidence until trial, the Court should instruct all parties not to introduce or reference such evidence before there is a ruling on the issue.

Mr. Hana reserves his right to object to other evidence that the Government seeks to introduce at trial.

23

Dated:  April 5, 2024

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg
Ricardo Solano, Jr.
Anne M. Collart
Andrew J. Marino
Christina M. LaBruno
Jessica L. Guarracino
Elena M. Cicognani
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
llustberg@gibbonslaw.com