UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                         :
   UNITED STATES OF AMERICA               :
                                                         :
              - v. -                                  :              S4 23 Cr. 490 (SHS)
                                                         :
   ROBERT MENENDEZ,                          :
   WAEL HANA                                        :
        a/k/a "Will Hana," and                  :
   FRED DAIBES,                                   :
                        Defendants.            :
                                                         :
------------------------------------------------------- x


**THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE IMROPER
ELICITATION OF FACTS AND IMPEACHMENT MATERIAL RELATED TO
A NON-TESTIFYING CONFIDENTIAL HUMAN SOURCE**


                                          DAMIAN WILLIAMS
                                          United States Attorney


Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine E. Ghosh
Assistant United States Attorneys
Christina A. Clark
Special Assistant United States Attorney

- Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND................................................................................................................... 2

ARGUMENT....................................................................................................................... 2

    I.   MENENDEZ IS NOT ENTITLED TO IMPEACHMENT MATERIAL RELATED TO THE CHS AND SHOULD BE PRECLUDED FROM SEEKING TO IMPEACH THE CREDIBILITY OF A NON-TESTIFYING WITNESS WHOSE STATEMENTS ARE NOT BEING OFFERED FOR THEIR TRUTH.............................................................................. 3

    II.  EVIDENCE OR ARGUMENT CONCERNING THE STATUS OF THE CHS SHOULD BE PRECLUDED............................................................................................................ 8

CONCLUSION ..................................................................................................................... 11

## PRELIMINARY STATEMENT

The Government respectfully seeks a ruling *in limine* on two matters about which counsel for defendant Robert Menendez has informed the Government they intend to offer evidence, including in the form of cross-examination, and/or argument. Neither is relevant or admissible.

Specifically, the Government seeks to preclude the following: (1) any evidence or argument regarding the credibility of a particular Confidential Human Source ("CHS") working with the Federal Bureau of Investigation ("FBI"), which CHS the Government does not intend to call at trial and none of whose statements the Government intends to offer for the truth of any matter asserted; and (2) any evidence or argument revealing that the pertinent individual was, unbeknownst to those with whom the CHS contemporaneously interacted, a CHS.[1] Evidence or argument on either matter is irrelevant, would be highly confusing and distracting, could endanger one or more people, and should be precluded.[2]

---

[1] While the Government does not herein use the CHS's name, it describes the CHS and his or her interactions in a manner that is likely to render the CHS identifiable, at least to knowledgeable persons, which risks physical danger to the CHS and/or his or her family. Accordingly, the Government has submitted this memorandum under seal in the first instance. *See, e.g.*, *United States v. Longueuil*, 567 F. App'x 13, 16 (2d Cir. 2014) (affirming protective order sealing documents containing sensitive information about the government's investigative methods and techniques); *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988) ("The purpose of [the law enforcement] privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."). Pursuant to the Court's order (Dkt. 169), the Government will confer with counsel for the defendants regarding the scope of redactions to a public filing.

[2] Prior to filing this motion, the Government conferred with Menendez's counsel regarding these issues. Counsel for the other defendants have not indicated that they agree with Menendez's counsel's position, but to the extent they also have not expressly disclaimed such agreement, the Government requests that the Court's ruling apply to all defendants.

## **BACKGROUND**

As the Court is aware from prior submissions by the Government (*see, e.g.*, Dkt. 190), the FBI lawfully utilized a CHS to further its investigation into certain of the conduct in this matter. During the course of that investigation, the CHS, among other things, made audio recordings of at least certain of the CHS's meetings with defendant Wael Hana and an individual ████████ ████, who was a █████ associate of Hana. The FBI generated reports of its meetings with the CHS, which were declassified (to the extent they had been classified) and produced to the defendants in unclassified discovery on or about January 12, 2024.

The Government intends to call █████ as a witness during its case-in-chief at trial. The Government does not intend: (i) to ask █████ on direct examination about the CHS; (ii) to offer any statements of the CHS ██████████████████ for the truth of any matter asserted; (iii) to offer the recordings made by the CHS; or (iv) to call the CHS as a witness at trial.

## **ARGUMENT**

As described above, the Government produced to the defendants all reports of or concerning the CHS's information related to or regarding the charged investigation, notwithstanding that the CHS is not a Government trial witness and that the Government does not intend to offer any hearsay statements or recordings of the CHS at trial. Menendez has taken the position that, notwithstanding these facts, he is entitled both (1) to all potential impeachment material regarding the CHS, and (2) to offer evidence that the CHS *was a CHS*. He is wrong on both counts.

I.   **MENENDEZ IS NOT ENTITLED TO IMPEACHMENT MATERIAL RELATED TO THE CHS AND SHOULD BE PRECLUDED FROM SEEKING TO IMPEACH THE CREDIBILITY OF A NON-TESTIFYING WITNESS WHOSE STATEMENTS ARE NOT BEING OFFERED FOR THEIR TRUTH**

Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the Government is obligated to disclose material that would have the "potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see also United States v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998). Of course, a witness, for these purposes, does not only mean a person literally testifying from the witness stand. Rather, with respect to a non-testifying hearsay declarant, impeachment is permitted because "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment . . . as though he had in fact testified." Fed. R. Evid. 806 Advisory Committee Note; *see also United States. v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) ("It is thus clear that *Brady* and its progeny may require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant.").

The opposite is equally true. Where a non-testifying individual is not "in effect a witness" because his or her out-of-court statements are *not* offered for the truth of a matter asserted, his or her credibility is not at issue. *See* Fed. R. Evid. 806 (permitting impeachment evidence for non-testifying witnesses only "[w]hen a hearsay statement . . . *has been admitted in evidence*" (emphasis added)); *see also, e.g.*, *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006) ("a statement not offered to prove the truth of the matter asserted may not be impeached under Rule 806"); *United States v. Wagner*, 103 F. Appx. 422, 429 (2d Cir. 2004) (where a government cooperator "did not testify at trial" and where his recorded statements were entered into evidence not for their truth, but for the context of other statements, the "[cooperator's] credibility was irrelevant"), *cert. granted and judgment vacated on other grounds*, 544 U.S. 958 (2005); *United*

*States v. Perez*, No. 05 Cr. 441 (PKL), 2005 WL 2709160, at *3 (S.D.N.Y. Oct. 20, 2005) ("Because the informant's statements are not hearsay, and because the government will not call the informant as a witness at trial, it follows that defendant may not impeach the credibility of the informant."); *United States v. Romano*, No. 12 Cr. 691 (JFK), 2014 WL 69794, at *1 (E.D.N.Y Jan. 8, 2014) ("[I]t is well settled in this Circuit that a district court may preclude the defense from impeaching an informant or cooperator who does not testify and whose recorded statements are not offered for their truth."); see generally *United States v. Shyne*, 617 F.3d 103, 107 (2d Cir. 2010) ("The defendants' argument that because a non-testifying declarant's statement comes into evidence against them somehow converts that declarant into the equivalent of a witness who has appeared and testified under oath is the proverbial comparison of apples to oranges.").

This is the case even where the non-testifying individual appears to have engaged in serious criminal conduct. *Cf., e.g.*, *United States v. Ulbricht*, 858 F.3d 71, 110 (2d Cir. 2017) ("Because [former DEA agent] did not testify at trial, information related to his corruption would not have been relevant to attack the credibility of any testimony he would have given."). It is also the case regardless of the degree to which the non-testifying individual was engaged in pertinent conduct or conversations because such involvement does not turn that individual into a witness or declarant within the meaning of Rule 806 (or otherwise). *See, e.g.*, *United States v. McGowan*, 58 F.3d 8, 15-16 (2d Cir. 1995) ("[Government informant] was not a witness at trial, and his out-of-court statements were not admitted for their truth. We do not agree with the argument that '[d]efense counsel should have been permitted free rein in challenging the credibility of [the informant] because [government informant] was a central figure in this trial.' Because [the informant's] credibility was irrelevant, the district court was well within its discretion in denying impeachment."). And it is the case even where the non-testifying individual's information led to

4

the very investigation that resulted in the defendant being charged, and the jury is presented with that same information. *See, e.g.*, *United States v. Regan*, 103 F.3d 1072, 1082-83 (2d Cir. 1997) (affirming preclusion of impeachment of two non-testifying brothers whose information was presented at trial as background "of the events that led to the investigation"; explaining that "[t]he district court correctly deemed the credibility of the brothers irrelevant to the issues before the jury and properly excluded evidence impeaching them"; and noting that a "district court need not allow impeachment of even a 'central figure' whose out-of-court statements were not admitted for their truth"). In short, the rule is simple: "Unless the witness about whom impeachment material is sought actually testifies (or his statements are admitted under circumstances making him subject to impeachment pursuant to Rule 806), the evidence is not admissible." *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018).

It necessarily follows that the Government has no obligation to produce any impeachment material for a non-testifying individual whose out-of-court statements are not offered for the truth of any matter asserted. *See, e.g.*, *United States v. Whitehead*, No. 22 Cr. 692 (LGS), Dkt. 58, at 5 (S.D.N.Y. Feb. 22, 2023) ("Defendant's January 20, 2023, motion for pretrial production of evidence admissible to attack the credibility of Brandon Belmonte is DENIED as moot based on the Government's representation that it does not intend to call Belmonte as a witness or offer any of his statements for the truth of the matter asserted." (citing cases)); *Perez*, 2005 WL 2709160, at *4 ("[W]hen a declarant's credibility has not been put into issue, it cannot be attacked with impeachment material, and the *Giglio* disclosure obligation therefore is not met."); *United States v. Madori*, No. S2 02 Cr. 274 (GEL), 2004 WL 2274756, at *12 (S.D.N.Y. Oct. 7, 2004) ("While *Giglio* material must be provided as to an out-of-court declarant whose statements are admitted against a defendant as co-conspirator hearsay," it does not have to be provided where the

statements in question are not offered to prove the truth of the matter asserted and the witness's credibility is thus not put into issue.), *aff'd in part, rev'd in part on other grounds*, 419 F.3d 159 (2d Cir. 2005).[3]

In conferring with the Government, Menendez's counsel suggested that the Government must produce impeachment material, if any, concerning the CHS, because ███ interacted with the CHS, and those interactions may have informed ███████████ or because they are otherwise background to or context for ██ testimony. The proposition that he appears to have advanced has no support in the law. As discussed above, the Government (i) does not intend to call the CHS at trial; (ii) does not intend to offer any statements of the CHS for their truth; (iii) does not intend to introduce recordings made by the CHS, and indeed, (iv) does not even intend to ask questions ██████ that would elicit *anything* in direct examination about the CHS at all. To be sure, ████ might, in response to a question on direct examination, ██████████████, despite that not being necessary to answer the question, and without reference to the fact the CHS was a CHS. ████ also might reference matters about ██████ spoke with the CHS. But those

---

[3] In conferring with the Government, Menendez's counsel suggested that Menendez might seek to call the CHS, whose identity he knows, as a witness. Irrespective of whether Menendez could properly do so, such a hypothetical, non-committal, and future decision would not provide a ground to demand that the Government provide impeachment material with respect to the CHS—who would then be a defense witness, *not* a Government witness—much less to demand that the Government do so now. *See, e.g.*, *United States v. Alorwornu*, No. 23 Cr. 00013 (SVN), 2024 WL 1050326, at *7 (D. Conn. Mar. 11, 2024) ("Defendant has pointed to no cases holding that the Government's disclosure obligations extend to defense witnesses writ large; to the contrary, the Government and Court have identified cases counseling otherwise.") (citing, *inter alia*, *United States v. Rodriguez*, 496 F.3d 221, 222 (2d Cir. 2007) (obligation to disclose material information in the government's possession "that impeaches *its* witnesses or exculpates the defendant") (emphasis added)); *see also United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014) (describing evidence as favorable to the accused if it "is useful to impeach the credibility of a government witness") (emphasis added)).

references would not put at issue the CHS's *credibility*.[4]  On the contrary, under settled law, the Government could introduce recorded statements of the CHS and a defendant himself, introduce information obtained and presented by the CHS that led to the investigation resulting in charges against a defendant, and/or introduce extensive non-hearsay statements of the CHS, and that *still* would not put at issue the CHS's credibility.  *See, e.g.*, *McGowan*, 58 F.3d at 15-16; *Regan*, 103 F.3d at 1082-83; *Perez*, 2005 WL 2709160, at *3; *Paulino*, 445 F.3d at 217.

Here, the Government does not intend to do any those things, yet Menendez has persisted in his demand for all potential impeachment information.  Indeed, Menendez's counsel recently informed that Government that unless it produces such information, they may move to preclude ███████ from testifying at trial.  In taking this position, Menendez's counsel have repeatedly cited *United States v. Jackson*.  However, as noted above, *Jackson* merely affirmed that the Government's *Brady* and *Giglio* obligations may, in appropriate circumstances, extend to both actual witnesses and hearsay declarants.  *See Jackson*, 345 F.3d at 71 ("It is thus clear that *Brady* and its progeny may require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant.").  Here, to the extent that the CHS may have provided any potentially exculpatory information, such material was provided to the defendants months ago.  The question at present is whether Menendez is *also* entitled to potential *Giglio* information relating to the CHS—and the answer, under settled case law, is no.

In sum, there is no basis for Menendez to seek to impeach the CHS, absent the CHS testifying or the Government introducing a hearsay statement of the CHS for its truth, which the

---

[4] Similarly, in presenting summary charts concerning certain events or communications, the Government may include events or communications of which the CHS may have had knowledge or in which the CHS may have participated in some way, but provided that no communications of the CHS are offered for the truth of a matter asserted, such a summary chart does not put the CHS's *credibility* at issue.

Government does not intend to do. The Court should accordingly (1) preclude Menendez from eliciting or introducing impeachment evidence with respect to the CHS and (2) confirm that, to the extent any such evidence is in the Government's possession, it has no obligation to disclose it to the defendants in these circumstances.

## II.    EVIDENCE OR ARGUMENT CONCERNING THE STATUS OF THE CHS SHOULD BE PRECLUDED

In addition to precluding impeachment of the CHS, the Court should also preclude Menendez from seeking to introduce, through cross-examination ███████ or otherwise, evidence that would tend to reveal the fact that the individual in question was a CHS in the first instance. That fact, and the circumstances surrounding the CHS's role, are irrelevant, are likely to confuse or distract the jury, and would be highly and unfairly prejudicial.

In conferring with the Government, Menendez's counsel has suggested that the fact that the CHS was a CHS is somehow relevant to ██████ credibility. That suggestion does not make sense. Although, as described above, the CHS met with and recorded certain of the CHS's meetings ████████, at no time ████████—or, to the Government's knowledge, any other lay witness—aware that the CHS was a CHS. Consequently, any statements ████████ made to the CHS, or conduct ████████ undertook with the CHS, could not possibly be impeached by the fact that the CHS was a CHS. Nor has ██████ been informed by the Government that the CHS was a CHS. ███████████████████████████████████████████ which were in fact obtained by the CHS, but that alone would not necessarily confirm that the CHS was a CHS, since there are multiple lawful ways to obtain recordings. Asking ██████ to speculate on cross-examination as to the CHS's status has no bearing on any issue before the jury. Neither ██████ nor any other lay witness, should be asked to engage in *post hoc* speculation about matters to which they were, at the relevant time, oblivious.

8

Nor should any FBI agent or other FBI personnel be cross-examined on the same subject, because no such witness is going to testify about any of his or her actions that could possibly be impeached by the fact that the CHS was a CHS. Moreover, as the Court is expected to instruct the jury, law enforcement techniques are not their concern, and all evidence obtained in this case was obtained lawfully; thus, the only purpose of cross-examining an FBI witness about the fact that the CHS was a CHS would be to improperly suggest that something untoward occurred. *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that "the government is not on trial" is "appropriate" (internal quotation marks omitted)); *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) ("The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged.").

In any event, even assuming *arguendo* that there were some theoretical modicum of relevance to the fact that the CHS was a CHS, any such relevance is far outweighed by the substantial risk of unfair prejudice, jury confusion, and undue additional complexity and length of the trial. The FBI and the Government have gone to great lengths to protect the CHS's identity, including by not introducing at trial recordings or other evidence that the Government would have a right to introduce (and would not trigger a *Giglio* obligation, for the reasons described above). However, should Menendez be permitted to introduce the fact that an individual—who is peripheral to the evidence the Government will adduce at trial—cooperated with the FBI during the course of the investigation, such evidence would place the CHS ███████████████ ████████ at risk. *See, e.g.*, *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) ("The Government has a substantial interest in protecting sensitive sources and methods of gathering

information."); *United States v. Abdalla*, 346 F. Supp. 3d 420, 430 (S.D.N.Y. 2018) (granting motion "regarding the imposition of security measures at trial to protect the identities of the confidential sources"); *cf. CIA v. Sims*, 471 U.S. 159, 175 (1985) (stating, with respect to a CIA source, "Even a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to 'close up like a clam.' To induce some sources to cooperate, the Government must tender as absolute an assurance of confidentiality as it possibly can.").

Moreover, introduction of the CHS's cooperation, particularly where not otherwise relevant, would also require the Government to introduce additional testimony and evidence regarding the FBI's use of confidential sources more generally, and the FBI's relationship with the CHS specifically in this case. Such testimony would be necessary to place the CHS's role in context and to prevent the impression that there is something remarkable about the fact that a "secret informant" was used in this case, yet is not testifying. A trial about the defendants' guilt would thus devolve into a mini-trial about law enforcement techniques, and the CHS's situation in particular, including the FBI's concerns with respect to certain personnel in or connected to Egypt. Rule 403 exists precisely to prevent this type of confusing, and complex, distraction. *Cf. United States v. Alimehmeti*, 284 F. Supp. 3d 477, 492 (S.D.N.Y. 2018) ("[E]ven if the investigative means and methods had some scant probative value, the Court would exclude such evidence under Rule 403. An inquiry at trial into the details of law enforcement recording methods would invite the jury to pass judgment on the propriety of such investigative techniques.").

## **CONCLUSION**

For the foregoing reasons, the Government's motion *in limine* should be granted.

Dated: New York, New York
      May 14, 2024

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

By:    s/ Daniel C. Richenthal
                              Eli J. Mark
                              Daniel C. Richenthal
                              Paul M. Monteleoni
                              Lara Pomerantz
                              Catherine E. Ghosh
                              Assistant United States Attorneys
                              (212) 637-2431/2109/2219/2343/1114
                              Christina A. Clark
                              Special Assistant United States Attorney
                              (202) 307-5191