

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 16, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    ***United States v. Robert Menendez, et al.***,
       **S4 23 Cr. 490 (SHS)**

Dear Judge Stein:

The Government respectfully writes in the above-captioned matter, in light of the Speech or Debate Clause objection raised by defendant Robert Menendez at the end of the trial day yesterday to parts of the Government's opening statement, to (1) enclose a particular exhibit that the Government intends to offer through a witness who may be called to testify as soon as Monday, and (2) explain why that witness's testimony and the exhibit are not barred by the Speech or Debate Clause.[1]  Given the importance of this issue, and that it may reoccur subsequently at trial, the Government provides an overview of the applicable law, a detailed summary of the expected testimony and exhibit, and analysis.

I.    Applicable Law

The Government previously set forth, at some length, case law regarding the Speech or Debate Clause (the "Clause").  (Dkt. 139, at 20-29.)  As is relevant to both Menendez's objection yesterday, and the Government's intention going forward (absent a waiver by Menendez), there are two particularly pertinent limitations to the coverage of the Clause.

*First*, only a legislative act *itself*—if it has occurred—is protected, not a promise to perform such an act.  "Promises by a Member [of Congress] to perform an act in the future are not legislative acts."  *United States v. Helstoski*, 442 U.S. 477, 489 (1979); *see also id.* at 490 ("A promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate.'").  In short, the Clause is not implicated when "the Government need not show any act of [the defendant] subsequent to the corrupt promise for payment," and it need not do so to prove

---

[1] Last night, May 15, 2024, the Government identified to all defendants this exhibit (and all other exhibits that the Government intends to introduce through the pertinent witness) and asked for any objections, as it has for exhibits with prior witnesses.  The Government has not, as of yet, received any objections.

Honorable Sidney H. Stein
May 16, 2024
Page 2

bribery, "for it is taking the bribe, not performance of the illicit compact, that is a criminal act."
*United States v. Brewster*, 408 U.S. 501, 526 (1972).  As this Court explained with respect to the
Egypt-related portion of the charged scheme:

> [W]hile Menendez's *performance* of the above-described
> legislative acts concerning the Egyptian Aid Scheme is protected by
> the Speech or Debate Clause, his *promise* to do the same is not.  The
> Supreme Court has consistently found that "[p]romises by a
> Member to perform an act in the future are not legislative acts."
> *United States v. Helstoski*, 442 U.S. 477, 489 [] (1979); *see also*
> *Brewster*, 408 U.S. at 526 [].  Therefore, to the extent that the
> indictment alleges that a corrupt agreement was formed in which
> Menendez agreed—or promised—to use his power to influence
> foreign military sales or foreign military financing to Egypt, or to
> the extent Menendez says he will place a hold or sign off on foreign
> military sales or foreign military financing, the Speech or Debate
> Clause does not apply.

*United States v. Menendez*, No. 23 Cr. 490 (SHS), --- F. Supp. 3d ----, 2024 WL 1120182, at *6
(S.D.N.Y. Mar. 14, 2024) (emphases in original); *see also id.* at *7 ("Nor can the Speech or Debate
Clause be construed to protect information that Menendez, Nadine, or Hana provided Egyptian
officials.").

For these reasons, as discussed in court, the Government's reference in its opening
statement to Menendez telling Nadine Menendez, via text message, to tell Wael Hana that
Menendez was going to sign off on a sale to Egypt was not a reference to a protected legislative
act.  This text message is quoted—in full—in the Indictment (at ¶ 20), and several images or
extractions of it were marked as Government exhibits before trial, one of which (GX B201-10) is
enclosed for the record as Exhibit A.  Menendez did not, until *after* the Government opened, object
to this text message or a description thereof.  The Court was manifestly correct in denying
Menendez's objection (even assuming *arguendo* that the objection was timely).

*Second*, and similarly, that an official is empowered to make certain decisions or to take
certain actions, or that a particular matter or type of matter is, may, or will be pending before that
official, is not a protected legislative act, because it is not an *act* at all.  It thus is admissible to
provide background or context for non-protected conduct, such as the types of statements
described in court.  *See, e.g.*, *United States v. Myers*, 635 F.2d 932, 937 (2d Cir. 1980) ("Legislative
actions are referred to in the indictment only for the entirely permissible purpose of detailing the
nature of the corrupt promise allegedly made.").  This Court recognized this principle in its
opinion, insofar as it explained that the S2 Indictment alleged that, by virtue of his position,
Menendez had "influence over, among other things, the Executive Branch's decisions to provide
foreign military sales, foreign military financing, and other aid or support to or for the benefit of
the Government of Egypt," *Menendez*, 2024 WL 1120182, at *1, and held "that none of the
allegations in the S2 Indictment regarding the Egyptian Aid Scheme are protected by the Speech
or Debate Clause," *id.* at *5.

Indeed, even a charge founded on the most core of legislative acts—voting on legislation—
may rest on specific, then-pending legislation, provided that the prosecution does not introduce

Honorable Sidney H. Stein
May 16, 2024
Page 3

evidence of the official's vote itself. *See, e.g.*, *Brewster*, 408 U.S. at 527 (bribery charge resting payment in exchange for the official's "action, vote and decision on postage rate legislation which had been pending before him in his official capacity").

II.    <u>Witness-1</u>

As soon as Monday, the Government expects to call Witness-1 to testify. Witness-1 is a former official with the U.S. Department of State, who is expected to provide background information on the military aid the U.S. provided to Egypt during the 2018 to September 2023 time period charged in the Indictment, and facts necessary to understand Menendez's ability to influence such aid as a result of his position. This background information is not expected to involve testimony regarding any action Menendez *in fact* took regarding such military aid, but rather is expected to explain the context giving rise to Menendez's ability to influence this process, as well as to introduce a document that will show that a particular arms sale was pending before Menendez at the time that—the Government will prove through other evidence—Menendez corruptly promised to approve it. In short, Witness-1's testimony will show that Menendez had the ability to approve arms sales, and that there was a request "pending before him," *Brewster*, 408 U.S. at 527, to help prove the meaning and significance of his subsequent corrupt promise to approve the sale. The Government will not, however, introduce any evidence (through Witness-1 or otherwise) that Menendez did *in fact* approve this sale (or any other specific sale), and thus will not introduce any evidence of a legislative act protected by the Speech or Debate Clause.[2]

In sum, Witness-1 is expected to testify regarding the approximate and relative amount of military aid the U.S. provided to Egypt during that time period, and in particular regarding that portion of the aid that took the form of foreign military financing ("FMF"), and foreign military sales ("FMS"). Witness-1 is expected to describe the procedures for extending this military aid, including (a) basic structural facts regarding the State Department and the Senate Foreign Relations Committee ("SFRC") and their relationship with one another concerning military aid; (b) the State Department's role in transferring grants of FMF to Egypt's bank account and the requirement to notify Congress before doing so; (c) the State Department's role in transacting sales of defense articles to Egypt under the FMS program and the requirement, for certain sales, to notify Congress before doing so; (d) the ability of members of SFRC leadership such as Menendez to impose, or to lift, holds on such FMF grants or on such sales through the FMS program; and (e) the powers that the SFRC has to respond if the State Department were to disregard holds placed by its Chairman or Ranking Member, and the rarity of the circumstances in which the State Department has done so. Witness-1 is also expected to explain basic facts about the historical and political context regarding such military aid, including (a) the fact that Egypt was the second-largest recipient of U.S. military aid during the 2018 to September 2023 time period; (b) that the provision of such aid was controversial during that time period as a result of, among other things, concerns Members of Congress had raised regarding Egypt's human rights; (c) the conditions that Congress had imposed on certain portions of U.S. military aid to Egypt relating to, among other things, such concerns; and (d) that such concerns led to Egypt, during the relevant time period, not always receiving the full amount of FMF funds appropriated by Congress or always being able to transact

---

[2] Of course, were Menendez to waive Speech or Debate Clause protection as to any such acts, the Government may put on such evidence, including in a rebuttal case if necessary.

Honorable Sidney H. Stein
May 16, 2024
Page 4

FMS. This testimony will not reference any act that Menendez took or caused his staff to take with respect to any specific grant of FMF funds or sale through the FMS program.

The foregoing testimony tracks the Indictment (*see* Indictment ¶¶ 17-18), the Court's summary of the pertinent portion of the then-operative S2 Indictment, *see Menendez*, 2024 WL 1120182, at *5, and the relevant parts of the Government's opening statement, to which no defendant objected contemporaneously or subsequently.

In connection with this testimony, the Government intends to offer an email from the U.S. State Department submitting the proposed sale of certain tank ammunition to Egypt to the Senate Foreign Relations Committee (and its counterpart House committee) for a period of committee review prior to the formal notification to Congress. This submission of the sale for review, marked as GX 8A-2, is enclosed as Exhibit B. This exhibit serves as an actual example of the FMS process that the jury can see and understand, and is expected to streamline and make far more comprehensible Witness-1's expected testimony. And importantly, this submission is for the same proposed sale that Menendez subsequently told Nadine Menendez to tell Hana that Menendez intended to approve. (Ex. A.) This submission accordingly demonstrates that when Menendez informed Hana of what Menendez intended to approve, Menendez was talking about an actual pending request of Egypt—and thus demonstrates that, as alleged, Menendez was providing information to Hana as part of "a corrupt agreement" in connection with "which Menendez agreed—or promised—to use his power to influence foreign military sales or foreign military financing to Egypt," and in connection with which said "he will place a hold or sign off on foreign military sales or foreign military financing," *Menendez*, 2024 WL 1120182, at *6.

III.    Discussion

None of the foregoing involves a protected legislative act. As described above, the Clause bars evidence of legislative acts, not *promises* of such acts, even if the promises are about actual legislation or other legislative acts. *See, e.g.*, *Brewster*, 408 U.S. at 527; *see generally Gravel v. United States*, 408 U.S. 606, 626 (1972) ("While the Speech or Debate Clause recognizes speech, voting, and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts."). As also described above, the Government does not intend to elicit from Witness-1 or otherwise to demonstrate whether Menendez in fact took the action he told Nadine Menendez to tell Hana he intended to take. Moreover, without this exhibit, or the equivalent testimony, the jury would not know that when Menendez said, "Tell Will I am going to sign off this sale to Egypt today" (Ex. A), he was talking about an actual matter "pending before him," *Brewster*, 408 U.S. at 527, which he believed Egypt wanted, not merely providing information on a fictitious sale or on a random sale of his own accord. That connection—between Menendez's knowledge and intent regarding Egypt and the non-protected communications he had with Nadine Menendez and Hana—completes the story of the charged crimes, and avoids the jury having a misimpression. And it does so without introducing a legislative act itself. The Supreme Court long ago held that "[i]t is clear from the language of the Clause that protection extends only to an act that has already been performed." *Helstoski*, 442 U.S. at 490. Nothing in Witness-1's testimony, or the exhibit described above, talks about such a completed act (and neither does Menendez's statement to Nadine Menendez to pass on to Hana). *Cf., e.g.*, *United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (rejecting argument that the Clause barred introduction of a video of a defendant's "discussion of a proposed immigration bill with the undercover agent"

Honorable Sidney H. Stein
May 16, 2024
Page 5

because "Clause protection does not extend to discussions of this sort, which involve only the possible future performance of legislative functions"). It is accordingly admissible.

<div style="margin-left: 40%;">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

</div>

By:    s/ Daniel C. Richenthal
       Eli J. Mark
       Daniel C. Richenthal
       Paul M. Monteleoni
       Lara Pomerantz
       Catherine E. Ghosh
       Assistant United States Attorneys
       (212) 637-2431/2109/2219/2343/1114
       Christina A. Clark
       Special Assistant United States Attorney
       (202) 307-5191

Enclosures

cc:    (by ECF)

       Counsel of Record