1

O4THMenC-R

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        23 Cr. 490 (SHS)

 5   ROBERT MENENDEZ, WAEL HANA,
     and FRED DAIBES,
 6
                Defendants.              Redacted
 7
     ------------------------------x
 8                                       New York, N.Y.
                                         April 29, 2014
 9                                       3:05 p.m.

10
     Before:
11
                     HON. SIDNEY H. STEIN,
12
                                         District Judge
13

14                        APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     ELI MARK
17   DANIEL C. RICHENTHAL
     CHRISTINA A. CLARK
18        Assistant United States Attorneys

19   PAUL HASTINGS
          Attorneys for Defendant Robert Menendez
20   ADAM FEE

21   GIBBONS, P.C. (NJ)
          Attorneys for Defendant Hana
22   LAWRENCE S. LUSTBERG
     CHRISTINA LaBRUNO
23   ANNE M. COLLART

24   THE LAW FIRM OF CESAR DE CASTRO, P.C.
          Attorney for the Defendant Daibes
25   CESAR DE CASTRO
```

O4THMenC-R

1          (Case called)

2          MR. MARK:  Good afternoon, your Honor.  Eli Mark on

3    behalf of the government.  With me at counsel table is

4    Christina Clark from the National Security Division and Daniel

5    Richenthal from the U.S. Attorney's Office.

6          THE COURT:  Good afternoon.

7          MR. FEE:  Good afternoon, your Honor.  Adam Fee for

8    Senator Menendez.

9          THE COURT:  Good afternoon.

10          MR. LUSTBERG:  Good afternoon.

11          THE COURT:  Let's see if we can get the microphone on.

12    I don't know.  Maybe we don't know how.

13          Go ahead.

14          MR. LUSTBERG:  Lawrence S. Lustberg from Gibbons P.C.

15    With me are Anne M. Collart and Christina LaBruno.

16          MR. FEE:  She ran out to get the book.

17          MR. LUSTBERG:  On behalf of Mr. Hana.

18          THE COURT:  Good afternoon.

19          MR. DE CASTRO:  For Mr. Daibes, Cesar De Castro.  Good

20    afternoon, Judge.

21          THE COURT:  Good afternoon.  Good afternoon.  Please

22    be seated.

23          When am I going to get the government's response to

24    the Rule 15 deposition request?

25          MR. RICHENTHAL:  I thought the Court might ask that

O4THMenC-R

1    question.  Given other work and filings, if we could have till

2    early next week, we would appreciate it.

3            THE COURT:  No.  No.

4            MR. RICHENTHAL:  OK.  I always try my second best if I

5    can't get my first best.  How about Friday?  I will candidly

6    tell the Court earlier would be substantially difficult given,

7    among other things, the expert preclusion motion that we're

8    working on.

9            I can see the Court is still not thrilled.  Can I get

10   Thursday?

11           THE COURT:  Basically, do you know what the response

12   is going to be?

13           MR. RICHENTHAL:  It's not written.  The response is

14   going to be opposition.  I'm happy to explain in sum and

15   substance why, if the Court would like.

16           THE COURT:  Go ahead.

17           MR. RICHENTHAL:  So the issue here I would frame as

18   follows:  Irrespective of whether the pertinent fund, that is,

19   Heritage, either was or was not connected to the government of

20   Qatar, there's no evidence whatsoever -- I'm not aware that the

21   defense is even taking a contrary position -- that either

22   Mr. Menendez or Mr. Daibes were aware of the connection or lack

23   thereof.

24           To put a finer point on it, the issue for trial as to

25   this piece of the scheme is whether, at the time Mr. Daibes

1    provided certain things of value to Mr. Menendez, Mr. Daibes

2    expected Mr. Menendez to take official action to benefit the

3    government of Qatar and Mr. Menendez knew he had that

4    expectation.  Whether in fact the fund was connected or not

5    connected, or how connected it was, was not, to our knowledge,

6    contemporaneously known to either man, and therefore, it's

7    missing an important link to the events of this case.  For that

8    reason, we don't think it meets the very high standard for a

9    Rule 15 deposition.

10          THE COURT:  Get that to me as soon as you can.

11   Thursday at the latest.

12          MR. RICHENTHAL:  OK.

13          THE COURT:  All right.

14          In the submission, Mr. Fee, you said the three

15   deponents are unwilling to appear voluntarily.  Did that mean

16   that what they want is a letter rogatory and will appear, or

17   does that mean that they don't want to appear?

18          MR. FEE:  The latter, your Honor.

19          THE COURT:  That they would fight any appearance?

20          MR. FEE:  That's right, your Honor.

21          THE COURT:  All right.  Thank you.

22          The government's -- I'm sorry, the defense's request

23   in regard to exhibits, the government submission, which I just

24   read this morning, says they told you what was for ID, that is,

25   the AFs were for identification.  They told you what parts of

1    the exhibits they intend to introduce as opposed to what

2    exhibits were solely for identification.  You said otherwise.

3             MR. FEE:  That's right, your Honor.  It's not accurate

4    that they've told us.  What they have --

5             THE COURT:  The government's lying to you?

6             MR. FEE:  Well, I think they're saying two things in

7    that letter, your Honor.  What they say later on is it's a

8    rolling process.

9             THE COURT:  No, I --

10            MR. FEE:  That is true.  But, first, that they told us

11   is not true.

12            MR. RICHENTHAL:  I don't have my phone with me, for

13   obvious reasons, and I want to go back and look at the

14   correspondence to get granular, but to my knowledge, and I

15   haven't been the lead on this, we did tell the defense that,

16   and that letter was vetted by the whole team before it was

17   filed.

18            THE COURT:  I can't decide that, as to who

19   misrepresented to whom.  I don't like preemptive motions by the

20   defense because that depends upon whether or not you were told.

21   Let's make sure that it's clear, government, that you've let

22   them know what's for identification and what's going to be

23   introduced as exhibits.

24            I understand there's a lot of time pressure on

25   everybody's part here, including the Court.  The Court feels

O4THMenC-R

1    the time pressure.  Get those summary charts to the defense as

2    quickly as you can.  It's not unusual that things will be done

3    on a rolling basis, but let's get them out.

4            All right.  Understood?

5            MR. RICHENTHAL:  Understood.  And, in fact, multiple

6    were sent over the weekend.

7            THE COURT:  I saw you that.  That's in the submission.

8    That's why I thought it made sense for me to talk to the group,

9    because it looks like the speed's picking up and things came

10   through over the weekend.

11           I take it, Mr. Fee, to that extent you'll agree with

12   the government?

13           MR. FEE:  Absolutely, your Honor.  We're happy with

14   the pace since our filing.

15           THE COURT:  Well, fine.  Glad to hear that.

16           Now, let's turn to the matter at hand.  The question

17   is why the five documents at issue are relevant and admissible.

18   It's an evidentiary determination by me.  The defendant has the

19   burden on these evidentiary issues.

20           The parties know by now that I'm always looking

21   forward to the parties working together and agreeing to what

22   they can and stipulating to what they can.  So my first

23   question is there was much talk about stipulations.  What, if

24   anything, has been arrived at?

25           MR. MARK:  So --

O4THMenC-R

1        THE COURT:  Also, just like I want cooperation and I
2    understand a certain amount of contretemps is understandable.
3    I don't want unnecessary contention, and I also don't want to
4    decide things that don't need deciding.  So if there are
5    stipulations here that obviate evidentiary rulings, I'm taking
6    it.
7        Sir.
8        MR. MARK:  Your Honor, we've taken all of your
9    comments previously in the case to heart.
10       THE COURT:  Everybody does.  It doesn't lead to any
11   results.  Go ahead.
12       MR. MARK:  Well, in this case --
13       THE COURT:  Sometimes it does.
14       MR. MARK:  In this case, I'm pleased to say I do think
15   it's leading to results.  There are five items that are the
16   subject of the defendants' notice.  The government has been
17   engaging on two particular items, stipulations that would
18   obviate the Court needing to rule on summary substitution 2 and
19   5.  We've received draft stipulations for both 2 and 5 from the
20   defense.  We have given feedback and comments to the first one
21   we received, which was summary substitution two.  And we
22   understand from the defense that we're very close to an
23   agreement, which I hope that we can reach very soon.
24       So I think, given the nature of those discussions,
25   both parties believe that it's unnecessary for the Court to

O4THMenC-R

1   rule on summary substitution 2 to begin with.

2       THE COURT:  And 5?

3       MR. MARK:  And as to 5, we've received a draft

4   stipulation.  We have reviewed that.  We think, based on the

5   ability for us to negotiate summary substitution 2, that also

6   we do not think the Court needs to rule on summary substitution

7   5, and we anticipate the parties are going to be able to reach

8   agreement and will be able to reach agreement soon on those.

9       So for today's purposes, we believe that we can take

10  off, from what the Court needs to decide, summary substitution

11  2 and summary substitution 5, and we would just ask the Court

12  to rule on the other three items that the defendant has

13  noticed, which are ███████████████████████████████████.

14      THE COURT:  I appreciate that.  Right now I'm not

15  going to do summary substitution 2, summary substitution 5.

16  I'm going to assume they will be dealt with by stipulation.  If

17  they're not, let me know sooner rather than later.

18      I gather, Mr. Richenthal, from what you started out

19  with that I'll be getting a motion to preclude certain of the

20  noticed experts from the defense?

21      MR. RICHENTHAL:  Yes, three of them, your Honor.

22      THE COURT:  When will that be?

23      MR. RICHENTHAL:  If I could have till Wednesday, I'd

24  appreciate it, but --

25      THE COURT:  Of this week?

O4THMenC-R

1          MR. RICHENTHAL:  Yes.

2          THE COURT:  Yes.

3          MR. RICHENTHAL:  Great.

4          THE COURT:  Yes.  Obviously, I haven't seen -- I don't

5     believe I've seen the expert notice itself, so make sure that's

6     included.

7          MR. RICHENTHAL:  We would be sure to include that.

8          Can I flag something on that just because the Court

9     said it?

10         THE COURT:  Sure.

11         MR. RICHENTHAL:  And it actually may be more

12    efficient.  The defense, in providing us those notices -- and

13    I'm referring to Mr. Menendez, not Mr. Hana -- indicated it

14    believes they're subject to the protective order in this case

15    and therefore cannot be filed publicly.  We don't think --

16         THE COURT:  What cannot be filed publicly?

17         MR. RICHENTHAL:  I don't want to speak for the

18    defense, but Mr. Menendez's defense team advised us it is

19    taking the position that the expert notices it provided to us

20    are covered by the protective order and, accordingly, cannot be

21    publicly filed.  We don't think that's accurate, and we think

22    they're going to become judicial documents subject to the First

23    Amendment and common law rights of access.

24         So we propose to file them publicly.  Obviously, we

25    would redact any personal information, the expert's phone

1    number, for example.  But otherwise we could, of course,

2    provide the notices to the Court, and we think they should be

3    provided publicly, that is, ECF filed along with our document.

4         MR. FEE:  Your Honor, it's terribly sensitive

5    information relating to mental examinations of a public figure.

6    Whether it's covered by the protective order, I would think --

7    I would submit there is ample ground for it to be not filed

8    publicly for that reason.  If we're redacting phone numbers --

9         THE COURT:  I don't see that.  That's going to be part

10   of your defense.  Is that going to be part of your defense?

11        MR. FEE:  It may be part of the defense, your Honor.

12   The idea here is they're trying to keep it out of the case.  I

13   don't think we need to file this publicly and expose that

14   information if the Court may end up saying, I'm not going to

15   permit this testimony.

16        It's a matter of privacy, your Honor.  If we are

17   compelled and permitted to put this on, of course it will all

18   be public, but if this is an exercise that ends -- and,

19   obviously, we don't want it to -- ends with the Court saying

20   this is not going to be presented to a jury, then I don't think

21   there's any reason to, today, expose that information to the

22   public, given that he is a public figure.

23        THE COURT:  What's your response?

24        MR. RICHENTHAL:  My understanding of the case law and

25   the First Amendment common law rights of access to judicial

O4THMenC-R

1    documents is it does not matter whether the motion is to
2    preclude or to admit.  If the court's being asked to decide a
3    matter in a criminal case, it must be public absent very
4    targeted redactions for specific things.  I'm not aware of any
5    motion to preclude an expert that could be litigated entirely
6    under seal.  We do not think that's appropriate.
7                MR. FEE:  Well, that's not true, your Honor.  You can
8    certainly redact from the public record particular items
9    appended to motions that reveal confidential mental health
10   information.  We're not saying the entire matter should be
11   submitted under seal.  The notice itself references the
12   findings of a psychiatrist with regard to the defendant.  I
13   think it's perfectly reasonable, if the application by the
14   government is that this should never be put in a public
15   courtroom, to redact certain aspects of the notice.
16               THE COURT:  Well, I would understand -- is there a
17   diagnosis that you're presenting in court in these papers?
18               MR. FEE:  Yes, that is exactly what is referenced in
19   the papers.
20               THE COURT:  All right.  You can redact the diagnosis
21   itself.  Everything else is publicly filed.
22               MR. RICHENTHAL:  I'm sorry, your Honor.  This may be
23   difficult to do without the document in front of you.  There's
24   no diagnosis.  It asserts a purported --
25               THE COURT:  Do you have the document?

O4THMenC-R

1          MR. FEE:  I don't have it with me, your Honor.  I

2     apologize.  I was not prepared to argue this today.

3          May I suggest that we have a back and forth with the

4     government, and then if we need to, as a last-ditch effort, we

5     could come to the Court with a letter?

6          THE COURT:  All right.  If need be.  But by the same

7     token, it seems to me that what we're doing here, at least up

8     until the next sentence or two, is not part of the Section 6

9     CIPA hearing.

10          MR. FEE:  I agree, your Honor.

11          THE COURT:  So what we're doing up to now should be

12     part of the public record.

13          MR. FEE:  I agree, your Honor.

14          MR. RICHENTHAL:  We also agree.

15          THE COURT:  It presents a problem in and of itself

16     because the press did not have notice of this discussion.  But

17     I take it, just as happened last week, the purpose of the

18     hearing was a CIPA hearing, which would be sealed.  So I'm

19     going to direct that up until this moment the transcript be --

20     a transcript be made and filed on the public record.

21          Does the reporter understand?

22          From now on it will be part of the CIPA Section 6

23     sealed hearing.

24          MR. MARK:  So, your Honor, if I just may, with one

25     caveat, I believe in our prior discussion we referenced by name

O4THMenC-R

1    the different items that were noticed in the Section 5.  So we

2    would ask that, just to the extent that there's references to

3    particular items that were referenced, ████████████

4    ████████████, in particular, that those be redacted but

5    only that.

6              THE COURT:  Yes, that makes sense.

7              Pass the transcript by the government and the defense,

8    but that's correct, to the extent we're talking about ████

9    ████████████, the summary substitutions, that's sealed.

10   But the government will and the defense will direct you as to

11   what has to be redacted.

12             Government, that includes my beginning when I'm

13   talking about information that is relevant and admissible.

14             MR. MARK:  And we'll endeavor to review that as

15   quickly as possible, just like last time.

16             THE COURT:  OK.

17                               oOo

18

19

20

21

22

23

24

25