

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: +1 973-639-6285
llustberg@gibbonslaw.com

May 26, 2024

**VIA ECF**

Honorable Sidney H. Stein
United Stated District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

    Re:    Re:    **United States of America v. Menendez, et al.,
Dkt. No. 23-cr-490-SHS**

Dear Judge Stein:

    Please accept this letter in lieu of a more formal filing on behalf of defendant Wael Hana and in response to the Government having elicited, during its redirect examination of Joshua Paul, testimony regarding the registration requirement under the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611, *et seq*. *See* May 21, 2024 Tr. at 946:15-947:2.

    As this Court is aware, Mr. Hana moved *in limine* to prohibit the Government from introducing evidence of uncharged conduct suggesting that Mr. Hana was required to register with the Attorney General as an agent of a foreign principal, and that he is not so registered. ECF No. 289 ("Hana Br.") at 12-23. During the Final Pretrial Conference, the Court heard the parties' arguments on this issue[1] and granted, in part, Mr. Hana's motion, precluding the Government from introducing evidence that Mr. Hana should have registered as a foreign agent under FARA. *See* May 6, 2024 Tr. at 26:18-29:22. After questioning the relevance of "evidence that Hana was not registered as an agent of a foreign principal," as Mr. Hana is "not charged with not being registered," *id*. at 26:20-22, the Court ordered *only* that "the government should be able to produce lists of registered agents, and if Hana isn't on it, Hana isn't on it." *Id.* at p. 29:8-10. In other words, the Court rejected the Government's attempt to show that Mr. Hana was under any legal obligation to register and instead allowed only antiseptic evidence that he had not done so.

---

[1] During argument, counsel for Mr. Hana explained that "the key . . . is that [the Government] can't argue that [Mr. Hana] should have registered[,]" while merely "point[ing] out that he did not register" would be "much less prejudicial." May 6, 2024 Tr. at 29:11-14. The Government agreed, noting that Mr. Hana is "not charged with that offense[,]" and thus that they would not "argue he committed that offense," concluding the discussion. *Id.* at 29:17-19.

GIBBONS P.C.

May 26, 2024
Page 2

      Despite the Court's ruling, and the Government's own acknowledgement that it was "not going to argue [Mr. Hana] committed that [FARA] offense," *id.* at 30:18-19, on May 21, 2024, the seventh day of trial, and only the third day of witness testimony, the Government elicited evidence from Mr. Paul of just that. *See* May 21, 2024 Tr. at 946:15-947:2. Following counsel for Senator Menendez's cross-examination regarding foreign military sales, and more specifically whether foreign governments use "lobbyists or private agents or consultants to reach out on their behalf," and the information the State Department will give these lobbyists in response to their inquiries, *see id.* at 917:5-7, the Government, on redirect, asked Mr. Paul whether "private individuals *have to register in connection with*" representing Egypt in inquiring about the status of a foreign military sales case, *id.* at 946:15-16 ("Q. What, if any, requirements do those private individuals have to register in connection with that work?"). Though counsel for Mr. Hana objected to the Government's question, noting that "[t]he Court ruled on this issue pretrial," *id.* at 946:17-18, the Court allowed Mr. Paul to testify that "a lobbying company or person who is representing a foreign government's interest to any branch of the United States government must register with the United States government as a foreign agent under the Foreign Agents Registration Act," *id.* at 946:23-947:2.

      The Government's questioning of Mr. Paul makes apparent its intent to infuse these proceedings with the highly prejudicial, and wholly irrelevant, implication that Mr. Hana acted as an unregistered foreign agent in violation of FARA, though he was not charged with such an offense.[2] Having elicited the testimony it did, the otherwise innocuous documentation that the Government proposes to admit that Mr. Hana is not so registered, as the Court previously permitted in its ruling on Mr. Hana's motion *in limine*, will serve precisely the purpose that the Court prohibited—demonstrating that Mr. Hana violated the law, in a manner that is not charged.[3] Indeed, the Government's question along with Mr. Paul's sweeping response, essentially suggests that a "person" "representing a foreign government's interest" before any U.S. government official must register under FARA in order to lawfully do so. May 21, 2024 Tr. at 946:23-947:2. This testimony, however, fails to clarify that only certain persons and specified political activities trigger the registration requirement under the FARA statute, as is described further below.

---

[2] This is particularly true in light of the Government's allegations that Mr. Hana represented the interests of Egypt. *See*, *e.g.*, Ind. ¶ 19 ("HANA . . . Continue[s] to Seek Action from MENENDEZ for Egypt"); May 15, 2024 Tr. at 51:18-19 ("The scheme started with the plan for Menendez to corruptly assist Hana and the government of Egypt.").

[3] In addition to the documentary evidence, *i.e.*, the FARA database, the Government has notified defense counsel of its intent to call Jeffrey J. Gilday, a Program Analyst with the FARA Unit of the U.S. Department of Justice. The Government's § 3500 material indicates that Mr. Gilday conducted a search on the FARA registrant database for Mr. Hana and IS EG Halal Certified, Inc., and found neither on that database.

GIBBONS P.C.

May 26, 2024
Page 3

      Nor was Mr. Paul's testimony necessary to respond to the cross-examination by Senator Menendez's counsel, which as mentioned above, concerned the propriety of lobbyists and hired "private agents" of foreign governments receiving foreign military sales status updates from the State Department.  *See* May 21, 2024 Tr. at 917:5-7.  Senator Menendez's cross-examination of Mr. Paul did not, in any way, elicit testimony regarding or even suggesting advocacy on behalf of a foreign country.  To the contrary, Mr. Paul's testimony was limited to information requested specifically by agents and lobbyists hired by foreign countries for the purpose of making such requests of U.S. government officials*, see id.* at 917:10-13 ("A: So foreign countries may hire American companies or individuals to contact Congress on their behalf to lobby them, to pressure them, on issues of interest to that foreign country."), and further by the kind of information sought by such hired lobbyists and agents, namely updates on the status of specific foreign government-requested military sales, *see id.* at 917:19-22.  Notwithstanding these limitations, Mr. Paul's testimony during the Government's redirect suggests that any person who advocates or "represents a foreign government's interest" before any U.S. government official violates FARA by not registering before engaging in such activities, without clarifying that only certain persons and specified political activities trigger a FARA registration requirement.  *See id*. at 946:23-947:2.

      Moreover, rebutting the impression that Mr. Hana acted as an unlawfully unregistered foreign agent, as he is now forced to do, will require a time-consuming mini-trial on whether or not he in fact should have registered, though, of course, Mr. Hana has *not* been charged with acting as an unregistered agent of a foreign principal as defined under 22 U.S.C.A. § 611.  Indeed, the evidence elicited by the Government's redirect impermissibly places the onus on Mr. Hana to now adduce evidence and clarify that he was not in fact required to register under FARA.  This precise issue was of prime concern when Mr. Hana moved, *in limine*, to circumscribe evidence of his FARA registration status, in the first instance.[4]  As Mr. Hana has previously argued, clarifying that he was never under an obligation to register under FARA certainly risks necessitating a mini-trial, or at least additional questioning and witnesses, in order to provide the jury with an understanding of FARA's intricate statutory framework.[5]  That is, Mr. Hana will be entitled, and indeed even

---

[4] As Mr. Hana has previously argued in his motion *in limine*, courts have repeatedly excluded even relevant evidence under Rule 403 where such evidence could confuse the jury and mislead it into believing that such evidence was at issue in the case, or could result in a mini-trial on collateral issues, *see* Hana Br. at p.18 (citing *United States v. Fallon*, 61 F.4th 95, 109 (3d Cir. 2023); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492 (S.D.N.Y. 2015); *United States v. Jadusingh*, No. 18-cr-257, 2020 WL 207950, at *4 (E.D.N.Y. Jan. 14, 2020); *White v. McKinley*, 605 F.3d 525, 537 (8th Cir. 2010); *United States Football League v. Nat. Football League*, 842 F.2d 1335, 1373 (2d Cir. 1988)).

[5] Mr. Hana discussed the fundamental distinctions between FARA and § 219 at length in his motion to dismiss, ECF No. 143 at pp. 38-47, 55-59; his reply to the Government's opposition to Mr. Hana's motion to dismiss, ECF No. 186 at 23-32; and in his motion *in limine*, Hana Br. at 19.  As a brief reminder, § 219 criminalizes conduct by a public official—acting as a foreign agent—

GIBBONS P.C.

May 26, 2024
Page 4

required, to make clear why he is not registered, including, for instance, calling an expert well-versed in FARA to explain why he fell within FARA's exemptions, including that set forth in 22 U.S.C. § 613(d), which explicitly provides that the registration requirement "shall not apply to . . . agents of foreign principals" if such an agent "engag[es] or agree[s] to engage only … in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal."

In sum, Mr. Paul's testimony on redirect, which unnecessarily exceeded the scope of Senator Menendez's cross, paired with evidence that the Court's May 6, 2024 order has permitted the Government to introduce regarding Mr. Hana's FARA registration status, necessarily results in significant additional evidence being introduced, extensive arguments by counsel on the issue, and the further prolonging of an already lengthy trial, all with respect to uncharged conduct. Nor is it the only example of the Government's effort to seek convictions on the charged offenses by proving other, uncharged ones. For example, in its opening statement, the Government argued that Mr. Hana had no relevant experience in halal certification and stated that a "lucrative monopoly" was "dropped . . . into [Mr.] Hana's lap." May 15, 2024 Tr. at 54:14-17. And, indeed, the Government has since spent considerable time eliciting evidence suggestive of an uncharged fraud, including that Mr. Hana somehow misrepresented the legitimacy of his halal certification business. *See, e.g.*, May 17, 2024 Tr. at 430:7-14 ("Q. Apart from IS EG Halal, did the other certifiers provide the info on their halal certification processes? A. Yes. Q. And experience that was requested? A. Yes. Of the eight halal certifiers we met, seven provided all the documents as requested. Q. Which company did not provide information as requested? A. IS EG Halal did not provide any documentation."); May 20, 2024 Tr. at 726:9-13 ("Q: From working at IS EG Halal, did you have an understanding of how Mr. Hana obtained the right to certify meat for Egypt? A: No."). Likewise, the Government has, as its opening warned it would, repeatedly criticized the monopoly character of Mr. Halal's business, at least implying a violation of U.S. antitrust law. Here, it seeks to do the same, though it promised not to and the Court precluded it from doing so, by seeking to impugn Mr. Hana—rather than adducing guilt of the bribery charges alleged, by specifically alleging that he should have but did not register under FARA—a distinct statute that carries its own criminal penalty.

Mr. Hana accordingly, and most respectfully requests, the following relief, arising from this course of conduct: (1) bar the Government from introducing any testimony and/or documentary evidence regarding the FARA database that the Court initially ordered permissible, but now would lead to the very inference that the Government said it would not seek and the Court

---

while FARA does not prohibit any conduct, other than the failure to register in advance of engaging in certain specified political activities. Moreover, under FARA, certain subsets of people are exempt from registering in advance of such activities altogether. *See* 22 U.S.C. § 613 (providing exemptions for, *inter alia*, "diplomatic or consular officers," "officials of foreign government," and "religious, scholastic, or scientific pursuits").

GIBBONS P.C.

May 26, 2024
Page 5

said, on May 6, 2024, it would not allow; (2) strike Mr. Paul's testimony regarding the FARA registration requirement (May 21, 2024 Tr. at 946:23-947:2); and (3) order a limiting instruction making clear (i) that Mr. Hana has not been charged with violating FARA, and (ii) that the Government has not alleged that Mr. Hana acted as an agent of a foreign principal, as defined under FARA.[6] Such a proposed limiting instruction is attached hereto, as Exhibit A.

Thank you for your consideration of this matter.

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg

---

[6] *See, e.g.*, *Hemphill v. New York*, 595 U.S. 140, 155 (2022) ("If a court admits evidence before its misleading or unfairly prejudicial nature becomes apparent, it generally retains the authority to withdraw it, strike it, or issue a limiting instruction as appropriate."); *United States v. Hill*, 658 F. App'x 600, 604 (2d Cir. 2016) (finding that the trial court "took adequate measures to mitigate any concern" after a Government witness referenced the defendant's nickname, which tended to prejudicially suggest defendant's violent nature, as the court "struck the statement from the record and directed the Government to instruct the witness to refrain from using the nickname[,]" agreed to have "the Government lead the witness so as to avoid the nickname's use[,]" and instructed the jury to disregard the statement); *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008) ("Admission of a prejudicial statement is normally cured by striking the testimony and instructing the jury to disregard the remark.").

GIBBONS P.C.

May 26, 2024
Page 6

### EXHIBIT A

Proposed Limiting Instruction

Ladies and gentlemen of the jury, there has been testimony regarding the registration requirements for private individuals who represent a foreign government, as well as testimony regarding whether Mr. Hana or his company were found on a government database listing these registrations. I want to remind you that Mr. Hana is not charged in the Indictment with having acted as an unregistered agent of a foreign government. Accordingly, you should not consider whether he did or did not register or whether he should have done so in determining whether he committed any of the offenses actually charged in the Indictment beyond a reasonable doubt.

*[If testimony is stricken]*

You are also to disregard any testimony when I have ordered it to be stricken.