

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 29, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter in response to defendant Wael Hana's letter filed on May 26, 2024 (Dkt. 424 ("Hana Ltr.")), which seeks (1) reconsideration of the Court's pretrial ruling on the admissibility of testimony and evidence regarding the fact that Hana does not appear in the Department of Justice's public Foreign Agents Registration Act ("FARA") database; (2) to strike certain testimony of former State Department witness Joshua Paul on redirect examination, which testimony was given more than a week ago and the Court expressly ruled was admissible; and (3) a limiting instruction regarding the fact that Hana has not been charged with violating FARA.

      Hana's request for the Court to reverse its prior ruling and to strike testimony that the Court ruled is admissible is untimely, misreads the testimony that the Government properly elicited from Mr. Paul and intends to elicit from a forthcoming FARA witness, and is meritless. Indeed, were the Court to reverse its prior ruling and strike this testimony, the jury would be left with a material misimpression, particularly given arguments in Hana's opening statement. Hana's motion should accordingly be denied, except to the extent that he seeks a limiting instruction, which should be granted in substance but not in the form he seeks, because his proposed instruction is legally flawed.

Honorable Sidney H. Stein
May 29, 2024
Page 2

### A. Background

*1) Hana's Motion to Strike*

Along with other pretrial motions, Hana moved to strike the paragraph of the Indictment that alleged that he had not registered under FARA, arguing that it was irrelevant and unfair. (Dkt. 143, at 59-61; Dkt. 186, at 32-35.) The Court denied that motion, stating:

> Here, the Court finds the allegation that Hana has failed to register as a foreign agent or lobbyist is indeed relevant to Hana's belief in the wrongfulness of his alleged conduct—conspiring to violate Section 219—and that of his alleged co-conspirators. I am not striking [that paragraph].

(Apr. 11, 2024 Tr. at 49.)

*2) Hana's Motion in Limine*

Subsequently, Hana filed a motion *in limine* that was substantively the same as his motion to strike, seeking to preclude the Government from offering evidence that Hana did not register under FARA. (Dkt. 289, at 12-22.) The Government opposed. (Dkt. 315, at 21-22.)

At the final pretrial conference held approximately three weeks ago, and one week prior to trial, on May 6, 2024, the Court heard argument regarding Hana's motion *in limine*. (May 6, 2024 Tr. 26-29 (enclosed as Exhibit A).) The Government explained, as it had previously, that Hana's lack of registration is relevant for two reasons: (1) it is evidence of his desire to conceal his actions on behalf of the Government of Egypt; and (2) it is important so that the jury is not under the misimpression that Hana was a publicly-registered, official representative of, or advocate for the Government of Egypt, which is probative of the knowledge and intent of defendant Robert Menendez and others. Accordingly, the Government argued that it should be permitted to introduce testimony about the basics of FARA registration, the fact that "Mr. Hana does not appear" in the public FARA database, and the fact that Hana was also "not a registered lobbyist." (*Id.* 28:3-5; 28:11-13, 15.) The Court ruled that such testimony and evidence is admissible. (*Id.* 28:14 ("You can adduce that."); 28:16-17 ("You can adduce, I mean, whatever those forms show."); 29:8-10 ("It seems to me the government should be able to produce lists of registered agents, and if Hana isn't on it, Hana isn't on it.").)

As Hana appears to acknowledge (Hana Ltr. 1 n.1), in responding to this back-and-forth at the pretrial conference, Hana's counsel only objected to an argument that Hana *should* have registered, but otherwise said, "If they want to point out that [Hana] did not register, that's much less prejudicial." (*Id.* 29:11-14; s*ee also id.* 29:21.)[1]

---

[1] Contrary to Hana's assertion (Hana Ltr. 1), for which he does not cite the record, the Government did not argue that it should be permitted "to show that Mr. Hana was under any legal obligation to register."

### 3) Joshua Paul's Testimony

The Government did not elicit on direct examination of Joshua Paul anything about FARA or lobbyist registration. On cross-examination, Menendez's counsel elicited that foreign governments use lobbyists and private agents to advocate on their behalf with the U.S. government. (*See* Trial Tr. 917:5-8 (Q: "Do they ever use, do foreign countries ever use something called lobbyists or private agents or consultants to reach out on their behalf?" A: "Yes, they do.").) Menendez's counsel then asked, "Can you tell me about that in your experience?", to which Mr. Paul responded, "So foreign countries may hire . . . individuals to contact Congress on their behalf to lobby them, to pressure them, on issues of interest to that foreign country." (*Id.* 917:9-13.)

On redirect, to avoid a misimpression, and consistent with the Court's pretrial ruling, the Government asked a single, high-level, non-leading question. Specifically, referring to "private lobbyists or representatives who might be representing Egypt in connection with the status of a foreign military sales case"—and without referencing Hana, any other specific individual, or the pertinent allegations in this case—the Government asked, "What, if any, requirements do those private individuals have to register in connection with that work?" (*Id.* 946:11-16.) Hana's counsel objected, the Court overruled the objection, and the witness responded, "So, a lobbying company or person who is representing a foreign government's interest to any branch of the United States government must register with the United States government as a foreign agent under the Foreign Agents Registration Act." (*Id.* 946:23-947:2.) Hana did not move to strike this answer or revisit the matter until five days later, when he filed the instant motion.

### 4) Witness-1's Expected Testimony

As soon as this Friday, the Government expects to call a non-lawyer employee of the Department of Justice's FARA Registration Unit based in Washington, D.C. (the "FARA Witness"). The FARA Witness, as previewed in response to the Hana's motion *in limine*, and described in 18 U.S.C. § 3500 material provided to the defendants (*see* Hana Ltr. 2 n.3), is expected, in sum, to (a) provide an overview of the FARA registration regime, including its purpose and what the form that a registrant must fill out contains; (b) explain how the FARA public database works; (c) testify that he performed a search for whether certain relevant individuals and/or entities are registered (specifically, Hana, IS EG Halal, Nadine Menendez, Strategic International Business Consultants, Fred Daibes, and Daibes Enterprises), and that they are not so registered; and (d) testify that a particular lobbying company retained by Egypt, and a particular individual retained by Qatar, are so registered. The exhibits offered through the FARA Witness on direct examination in support of this testimony are expected to be limited to the screenshots from the FARA Registration Unit's public website, showing how the database looks and operates, and that Hana and the relevant other individuals and entities are not registered. The FARA Witness will not be asked on direct examination to opine as to whether Hana—or anyone else—*should* have registered. Nor will Witness-1 be asked on direct examination to opine as to whether the alleged conduct in this case would have required registration.

To assist in showing that Menendez was aware of the FARA registration requirement—including because that requirement is an element of the Section 219 charges (Dkt. 354, at 100-07)—the Government also expects to offer during the FARA Witness's direct examination two letters that Menendez sent to the Department of Justice asking for a former Member of Congress to be investigated for potentially violating FARA. All of the exhibits presently expected to be offered during the FARA Witness's examination are enclosed herewith, as Exhibit B.

B. Discussion

*1) Hana's Motion for Reconsideration is Meritless*

To the extent that Hana asks the Court to reconsider and reverse its prior decision, his motion should be denied. For the same reasons that Government already explained—reasons with which the Court agreed—the fact that Hana and certain others did not register is highly relevant, not unfairly prejudicial, and may properly be considered by the jury.

*2) Hana's Motion to Strike is Meritless*

To the extent that Hana asks the Court to strike Mr. Paul's single answer on redirect examination, that motion, too, should be denied. As an initial matter, it is untimely. Hana did not make this motion until long after Mr. Paul left the stand—and therefore at a time when Mr. Paul could have been asked a different question, to the extent necessary (although it was not). Hana is not entitled to the windfall of a belated motion to strike.

Hana's motion to strike also rests on a misreading of what Mr. Paul actually said. Hana suggests that there was no need for the Government ask Mr. Paul on redirect about registration because Menendez's cross-examination of "Mr. Paul did not, in any way, elicit testimony regarding or even suggesting advocacy on behalf of a foreign country," because it was allegedly "limited to information requested specifically by agents and lobbyists hired by foreign countries for the purpose of making . . . requests" related to foreign military sales. (Hana Ltr. 3.) Not so. As explained above, in response to Menendez's counsel asking Mr. Paul to elaborate, Mr. Paul stated that "foreign countries may hire American companies or individuals to contact *Congress* on their behalf to *lobby* them, to *pressure* them, on issues of interest to that foreign country." (Trial Tr. 917:10-13 (emphases added).) Without the Government asking Mr. Paul about registration, the jury would have been left with the very misimpression about which the Government has long been concerned. The Government's single question on redirect, which the Court ruled was permissible, clarified the record on that limited—but important—point.

In any event, even assuming *arguendo* that it was unnecessary for the Government to have asked Mr. Paul the single question it asked, by no means did his answer "infuse" trial with the implication that "Mr. Hana violated the law, in a manner that is not charged" (Hana Ltr. 2). As described above, Mr. Paul's reference to registration requirements was not specific to any individual, much less Hana in particular. Nor was it specific to the allegations in this case. Hana's suggestion that he nevertheless now might need to "call[] an expert to explain why he fell within FARA's exemptions" (*id.* 4) should be rejected out of hand. Any expert notice now would be

highly belated. Hana calling an expert to testify as to why he purportedly did not have to register would also inject into this case the very thing that Hana says should be avoided—the question of whether he *should* have registered. Moreover, no expert can properly opine as to whether a defendant's conduct complied with the law or whether the defendant believed the conduct did. *See, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissable."); *cf. United States v. Banki*, No. S1 10 Cr. 08 (JFK), 2010 WL 1875690, at *2 (S.D.N.Y. May 10, 2010) ("absent Defendant's own testimony or other direct evidence that he believed his conduct to be lawful, there is no basis on which the jury could properly infer anything about Defendant's state of mind from the opinion of this third party expert witness").

In any event, that there are registration requirements will be known to the jury before it deliberates because it will be instructed with respect to the Section 219 charges, which rest on certain of those registration requirements. (Dkt. 354, at 100-07.) Hana does not even attempt to explain how he could be unfairly prejudiced by the jury learning during trial what it would indisputably learn following the presentation of evidence. On the contrary, it would be unfair to the Government for the jury to be under a misimpression for weeks, which is what Hana appears to seek.

Indeed, the unfair prejudice to the Government from striking Mr. Paul's pertinent testimony or the expected testimony of the FARA Witness would be palpable, given multiple arguments in Hana's opening statement suggesting that Hana was merely acting as an open advocate for his native country. (*See* Trial Tr. 150:17-18 (it is not "a crime to advocate for another country with your elected representatives"); *id.* 150:21-22 (all Hana was doing was "advocat[ing] for his native land through his elected representatives"); *id.* 152:18-20 (the activities Hana engaged in were "classic advocacy on behalf of . . . one's native country").) Even if Hana's lack of registration were not otherwise relevant, these sweeping assertions squarely put Hana's so-called advocacy at issue. The jury should be permitted to consider the proper context for these kinds of arguments.

### 3) Hana's Motion to Preclude the FARA Witness is Meritless

To the extent that Hana seeks to preclude the FARA Witness, his motion fails for the same reasons. It is a belated attempt at reconsideration, and even if considered anew, it has no merit for the same reasons the Court already stated in denying Hana's prior motion to preclude.[2]

---

[2] In support of his motion, Hana also asserts that the Government is seeking "convictions on the charged offenses by proving other, uncharged ones," such as fraud and violations of antitrust law. (Hana Ltr. 4.) To the extent this assertion is a linguistic repackaging of Hana's prior arguments, it fails for the same reasons. The Government has offered, generally without objection, evidence that Hana had no experience in halal certification, was given the halal monopoly based on his close relationship with Egyptian government officials, and that the process of setting up IS EG Halal and its business operations were highly irregular, all of which is relevant to Hana's relationship

    *4) The Government Has No Objection to a Limiting Instruction, but Hana's Proposed Instruction Is Legally Inaccurate*

As the Government has previously indicated (Dkt. 180, at 176), it has no objection to an appropriate limiting instruction. However, Hana's proposed instruction is far from appropriate. On the contrary, he proposes that the jury be told: "you should not consider whether he did or did not register or whether he should have done so in determining whether he committed any of the offenses actually charged in the Indictment beyond a reasonable doubt." (Hana Ltr., Ex. A.) For the reasons explained above, such an instruction is wrong. The jury *can* consider that Hana was not registered in weighing his guilt of the jury charged offenses—that is precisely why that fact is relevant and admissible. Hana's proposed instruction should accordingly be rejected. The Government proposes that, if the Court otherwise denies his motion, the parties confer regarding an appropriate instruction.

    \*\*\*

For the foregoing reasons, Hana's motion should be denied, except to the extent that he seeks a limiting instruction, which should be granted in substance but not in the form he seeks.

---

with Egypt, as well as Hana's knowledge, intent, and motivation to bribe Menendez. The Government has never argued—and does not intend to argue—that his evidence shows that Hana also committed uncharged violations, much less that the jury should convict him for that reason.

Honorable Sidney H. Stein
May 29, 2024
Page 7

           Respectfully submitted,

           DAMIAN WILLIAMS
           United States Attorney

By:    s/ Daniel C. Richenthal
           Eli J. Mark
           Daniel C. Richenthal
           Paul M. Monteleoni
           Lara Pomerantz
           Catherine E. Ghosh
           Assistant United States Attorneys
           (212) 637-2431/2109/2219/2343/1114
           Christina A. Clark
           Special Assistant United States Attorney
           (202) 307-5191

Enclosures

cc:    (by ECF)

       Counsel of Record