

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 22, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
               S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to identify for the Court and seek the resolution of objections raised by defendant Robert Menendez to certain summary charts the Government intends to present in connection with the testimony of its anticipated last case-in-chief witness, Megan Rafferty, a forensic accountant with the Federal Bureau of Investigation ("FBI").[1]  As set forth below, the proposed summary charts that the Government intends to offer in connection with Ms. Rafferty's testimony are admissible and supported by a long line of precedent holding that such charts are useful to the jury, save time, and are permitted by Federal Rule of Evidence 1006.

      I.      **Ms. Rafferty's Expected Testimony and Charts**

      Ms. Rafferty is a forensic accountant who has reviewed portions of several financial accounts related to Robert Menendez and Nadine Menendez, prepared summaries of those accounts, and also performed certain calculations related to some of the pecuniary evidence in this case (*i.e.*, cash and gold).  Her summary testimony will explain those financial analyses and calculations, and in connection with this testimony she will also present and explain approximately five brief summary charts that are each approximately one to two pages long, as well as an eight-page demonstrative chart.  The charts include the results of her financial analysis and calculations, and also summarize and compile various sources of evidence.

      The defendants have not raised or maintained objections to three of the charts, which involve (1) the results of Ms. Rafferty's analysis of cash withdrawals from Menendez's Senate Financial Credit Union account over certain years (Government Exhibit 1336); (2) a compilation

---

[1] The Government presently expects to call Ms. Rafferty to testify as soon as the afternoon on this Tuesday, June 25, 2024.

Honorable Sidney H. Stein
June 22, 2024
Page 2

of calculations and analyses showing (a) cash and check deposits into a separate bank account used by Menendez and (b) income from a rental property as reported in Menendez's federal tax returns, demonstrating that the amounts are the same (Government Exhibit 1342); and (3) summaries and value calculations of gold seized from 41 Jane Drive and found in photographs on Nadine Menendez's cellphone (Government Exhibit 1339).[2]

Menendez has objected to the other three summary charts (attached as Exhibits A through C to this letter), which summarize the following information:

- **Government Exhibit 1338** includes a calculation of the amount of money in, and latest "payout date" from, cash in envelopes that were forensically linked to Fred Daibes through prior witnesses and exhibits.[3] This calculation includes Ms. Rafferty's review of certain other exhibits in evidence, such as Government Exhibit 1301 (which lists the value of some of the envelopes) and Government Exhibit 1334 (which identifies which envelopes have Daibes' prints), and also includes her own review of certain of the photographs of cash in envelopes linked to Daibes to establish the payout date and value of envelopes for which, as described below, there is no other easily accessible information for the jury's consideration. This chart also includes Ms. Rafferty's calculations of a total value of all of the contents of the envelopes forensically linked to Daibes.

- **Government Exhibit 1340** is a simple bar graph that shows Ms. Rafferty's calculations of the amount of cash in certain subsets of evidence and the amount of cash withdrawals over the same time period based on Ms. Rafferty's review and analysis of Menendez's financial records.

- **Government Exhibit 1341** is a summary of Ms. Rafferty's analysis of a particular bank account used by Nadine Menendez, including account opening and closing date, total cash withdrawals, and total and average disbursements of any kind.

The Government expects Ms. Rafferty principally to explain the methods by which she performed financial analyses and verified each of the charts, and to read from or summarize portions of the charts; she will not be providing her opinions, but will merely be providing the jury

---

[2] Daibes initially objected to this chart being introduced as a summary chart pursuant to Rule 1006, and, after meeting and conferring, the Government agreed, without conceding it is necessary, to introduce the chart as a demonstrative pursuant to Rule 611(a), which has resolved Daibes' objection. No other defendant has raised any objections to Government Exhibit 1339.

[3] As a witness from the Federal Reserve Bank of New York is expected to testify, the "payout" date of a particular bill is essentially the date that bill first entered circulation, meaning that, although a bill could come into someone's possession at any point *after* it enters circulation, a person cannot possess a bill *before* the bill's payout date.

with useful summaries and calculations of assorted evidence that the jury could not easily do on its own.[4] Her testimony on direct examination is estimated to be approximately one hour.

The Government provided the defense with drafts of the charts and received certain objections, described below, from Menendez and Daibes. The Government met and conferred with counsel for Daibes and offered to meet and confer with counsel for Menendez. As noted above, after meeting and conferring, the Government agreed to offer one of the charts (Government Exhibit 1339) as a demonstrative rather than summary chart, which resolved Daibes' objections. For the reasons set forth below, the remaining objections to the charts are all without merit.

### II. Menendez's Objections to the Summary Charts

Menendez has objected to three of the charts as being appropriate for summation but not a summary witness. Specifically, Menendez raised a generalized objection to Government Exhibits 1338, 1340, and 1341 as "not demonstrative charts" but "summation slides for argument." Contrary to these objections, charts of this type are routinely admitted in this circuit to summarize evidence from and provide calculations and analyses based on multiple sources of evidence.

### A. Applicable Law

As described in prior letters related to summary charts in this case, the use of summary charts to organize and present various types of materials in evidence has repeatedly been recognized by the Second Circuit and other courts as useful to the jury and permitted by Rule 1006. (*See* Dkt. 409, 433.) This includes when the amount of data is voluminous yet more modest than the thousands of pages summarized in the summary timeline charts of Special Agents Coughlin, Graves, and Van Wie. *See, e.g.*, *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (affirming admission of "government's summary charts set[ting] forth detailed information concerning well over 100 telephone calls spanning three days between four individuals" that "otherwise would have been difficult for the jury to synthesize and evaluate," and which "were helpful to the jury in its evaluation of the evidence because they showed the pattern and timing of telephone calls among the co-conspirators on the three crucial days of the charged conspiracy"); *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020) (rejecting argument that eight pages of phone records were insufficiently voluminous because "this information would have been difficult for the jury to synthesize and evaluate without the aid of a summary"); *United States v. Costanzo*, No. 22 Cr. 281 (JPO) (S.D.N.Y. Nov. 1, 2023) (Tr. 930-34) (rejecting argument that specific portions of records summarized in chart were not themselves voluminous; "[t]he point is this is relevant, and it's relevant because it relates to other voluminous records, and when you put them together, it's a voluminous record under Rule 1006"); *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008) ("To be admissible [under Rule 1006], a chart must summarize documents so voluminous 'as to make comprehension difficult and . . . inconvenient,' although not necessarily 'literally impossible.'" (internal citations omitted)); *see also United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003) (stating that the Second Circuit has "regularly affirmed" the use of summary

---

[4] Although the charts are themselves not lengthy, the Government does not plan to ask Ms. Rafferty to read each line on each chart. Rather, the Government expects to go through several examples from the charts (after Ms. Rafferty explains the process by which the charts were verified and how to read the charts) and discuss the totals or overall information in the charts.

Honorable Sidney H. Stein
June 22, 2024
Page 4

charts "to draw the jurors' attention to particular evidence culled from a voluminous set of records").[5]

It is also permissible for a summary witness to include some non-voluminous materials in the chart or to refer to such materials. *See Miller*, 954 F.3d at 565 (upholding admission of chart summarizing phone calls notwithstanding that "the summary included some information that was not on the phone bills," such as names and photographs of the individuals associated with the phone numbers, because "this additional information was already admitted into evidence through other sources, and the defense counsel was free to cross-examine the FBI agent who made the summary chart"); *United States v. Gentile*, No. 21 Cr. 54 (RPK), 2024 WL 3046193 (E.D.N.Y. June 18, 2024) ("[I]t is permissible for a summary witness to also read admissible non-summary evidence into the record. Assuming that these exhibits have been admitted into evidence before the summary witness testifies, the summary witness is free to show them to the jury when he testifies." (internal quotation marks and citations omitted)).

### B. The Charts Are Admissible Pursuant to Rule 1006

Ms. Rafferty's summary charts generally fall into two categories: those that include the results of her review of financial records (Government Exhibit 1336, 1341, and 1342), of which only one (Government Exhibit 1341) has been objected to, and those that summarize and provide certain calculations related to multiple sources of evidence (Government Exhibit 1338, 1339, 1340), of which two (Government Exhibits 1338 and 1340) are the subject of unresolved objections. Both categories are admissible as summary charts pursuant to Rule 1006.

With regard to the financial record summary charts (Government Exhibit 1336, 1341, and 1342), Ms. Rafferty reviewed years' worth of bank records from multiple accounts – voluminous records that would be difficult for the jury to synthesize without the aid of a summary chart – and compiled the results into simple one- to two-page summaries. In the particular chart to which Menendez has objected (Government Exhibit 1341), Ms. Rafferty summarized the total, maximum, and average disbursements over an approximately six-year span from one of Nadine Menendez's bank accounts. These types of summary charts compiling the results of voluminous bank records are commonplace, and Menendez has not raised with the Government any specific reasons he believes this chart is inappropriate or would not aid the jury.

Likewise, the charts that summarize and provide calculations related to other types of admitted evidence – described in more detail below – are appropriate. As an initial matter, there is no dispute that the material in the charts is either currently in evidence or will be by the time of

---

[5] As the Government stated with regard to the summary charts of Special Agents Coughlin, Graves, and Van Wie, although not required by the text of Rule 1006, the Government has no objection to a limiting instruction, as was given and affirmed in *United States v. Ho*, that "the charts themselves d[o] not constitute independent evidence and that it [i]s the jury's duty to first determine that they accurately reflected the evidence on which they [a]re based." 984 F.3d 191, 210 (2d Cir. 2020); *see also id.* ("This court has long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations, so long as the judge properly instructs the jury, as the judge did here, that it is not to consider the charts as evidence." (internal quotation marks omitted)); *see also Yousef*, 327 F.3d at 158 ("any possible prejudice was cured" by similar instruction).

Honorable Sidney H. Stein
June 22, 2024
Page 5

Ms. Rafferty's testimony. Nor have the defendants raised any objections, other than the general objection regarding Government Exhibit 1340 described below, to particular language in the charts being argumentative or inaccurate. Of course, the mere fact that a summary of evidence is persuasive is not a reason to exclude a summary chart. *See, e.g.*, *Oregon v. Kennedy*, 456 U.S. 667, 674 (1982) ("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt"); *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." (emphasis in original)).

To the extent there is any suggestion that these summary charts do not compile voluminous enough records, each draws from multiple disparate sources, and without the summary charts the jury would otherwise need to piece together and analyze multiple pieces of evidence contained in multiple Government Exhibits, including voluminous sets of data and photographs, as described further below.

### 1. Government Exhibit 1338 (envelopes forensically linked to Daibes)

Menendez has objected to Government Exhibit 1338, which consists of ten rows related to the ten envelopes that have been forensically linked to Daibes. Most of the ten rows are sourced from a subset of the 33 rows in Government Exhibit 1301 (the summary chart of items seized during the search) and 19 rows in 1334 (the fingerprint chart), and also include photographs of the envelopes and contents of the envelopes from among hundreds of search photos.[6] The chart also includes the total value of the cash in each particular envelope, which in some instances requires manually counting the cash visible in the photographs, subtracting the amount of cash from other envelopes in the photographs, or referencing prior testimony. Without Government Exhibit 1338, the jury would not be able to easily ascertain how much cash was in the envelopes forensically linked to Daibes.

More critically, the chart identifies the latest identified date that a bill from one of the envelopes first entered circulation,[7] which is a key source of evidence given Menendez's arguments about his alleged cash withdrawal habits. (*See, e.g.*, Trial Tr. 86:13-17 (Menendez opening statement).). This requires reference to either a chart containing over 900 rows (Government Exhibit 1335) or a chart containing nearly 5,000 rows (Government Exhibit 5G-300). For some of the envelopes – in which the envelope with Daibes's prints was the only envelope in a particular 1B – this is the only step required, but others require additional effort. For example, to identify the latest payout date from the TD Bank envelope with Daibes's prints in

---

[6] As the Court is aware from the testimony of the fingerprint expert Kira Glass, understanding where the envelopes were found and what they contained otherwise requires switching among multiple charts and photographs. (*See, e.g.*, Trial Tr. 2851-53).

[7] For the three envelopes from the safe deposit box which had Daibes's prints, no payout date is provided because the cash from all ten envelopes was commingled upon evidence processing and it is not possible to identify which of the approximately 138 bills that entered circulation in 2018 or later were in those three particular envelopes.

Government Exhibit 73 (an exhibit which also, based on the way evidence was originally seized and processed during the search, contains a manila envelope), the jury would need to:

(1) identify the photograph (Government Exhibit 1F-1276) that shows the splayed-out cash from the TD Bank envelope in Government Exhibit 73;

(2) closely examine the visible serial numbers on bills in that photograph, including identifying the last three digits of a particular serial number ("97C") on a bill that is partially hidden behind other bills in the photo;

(3) identify from Government Exhibit 1301 that the cash previously contained in Government Exhibit 73 is in Government Exhibit 28 (from 1B28);

(4) filter Government Exhibit 1335 for entries from only 1B28 and search for each serial number and partial serial number observed in the photograph Government Exhibit 1F-1276;

(5) identify that the payout date of a bill with serial number PF1846359**7C** is later than those of the other bills with visible serial numbers in the photograph; and

(6) *locate the nine photographs taken of all the cash in Government Exhibit 73 and review the serial numbers of hundreds of bills* to confirm that only a single $100 bill has a serial number ending in 97C, thereby confirming that the bill with serial number PF18463597C is in fact the bill visible in Government Exhibit 1F-1276 and therefore contained in the specific envelope with Daibes's prints.

Or, alternatively, after Ms. Rafferty's description of this process, the jury can simply look at the last cell in the first row of the chart to learn that the envelope with Daibes's prints contained that bill, which did not enter circulation until October 2020. This is plainly more efficient.

In sum, the effort required for the jury itself to recreate the information contained in Government Exhibit 1338 is unmanageable and unnecessary, and precisely why Rule 1006 allows the use of summary charts such as Government Exhibit 1338.

### 2. Government Exhibit 1340 (bills which entered circulation in 2018 or later)

Menendez also objects to Government Exhibit 1340, a bar graph that includes Ms. Rafferty's calculations of the amount of cash that first entered circulation in 2018 or later and the amount of cash withdrawn by Menendez over that time period. This chart too compiles voluminous data that is not practical for the jury to assess without the aid of the chart.

As indicated in the chart's descriptions and footnotes, this chart summarizes, in the first bar, the value of the cash from twenty-one FBI 1Bs (which total was obtained by adding up the value of those twenty-one 1Bs from Government Exhibit 1335, a summary chart which will be presented through a different witness[8]); in the second bar, the value of the cash from eleven

---

[8] That witness, a FBI staff operations specialist, personally matched over 2,000 serial numbers of bills for which either payout dates (from the Federal Reserve Bank of New York) or dates which

particular 1Bs; in the third bar, the value of just the specific bills themselves which were released in 2018 or later (which is obtained by adding up over 2,100 rows of data); in the fourth bar, the value of just the bills themselves which were released in 2018 or later from eleven particular 1Bs (obtained by filtering Government Exhibit 1335 for those 1Bs and adding up the resulting nearly 1,800 rows of data); and in the last bar, the amount of cash withdrawn by Menendez between 2018 and June 2022 (obtained by adding up the amounts for those five years in Government Exhibit 1336, one of Ms. Rafferty's financial summary charts).

Thus, Government Exhibit 1340 summarizes the value of over twenty 1Bs comprising thousands of rows in two tabs of a voluminous spreadsheet (Government Exhibit 1335), and requires conducting analyses and calculations using that spreadsheet, in order to ascertain the four cash totals set forth in the chart's first four bars. Again, the jury is not required to undertake this time-consuming effort; Rule 1006 permits charts like Government Exhibit 1340 for the jury's convenience.

Menendez also raised one objection to the specific contents of this chart, claiming that the chart is "misleading in substance and plainly designed to fool the jury into thinking there was more seized money post 2018 than is supported by the evidence (e.g., referring the total amount of cash from 1Bs 'containing post-2018 bills')."

This claim is baseless, as the face of the bar graph makes clear what data it is summarizing: in the first two bars, the *total* value of cash in certain "1Bs" (which are specifically identified in footnotes) that contained at least one bill put into circulation in 2018 or later, and then, in two other bars, the amount of cash that *itself* was put into circulation in 2018 or later. That is, if an envelope of $10,000 cash contained five $100 bills that were put into circulation in 2018 or later, the first two bars on the graph would include $10,000 (the value of all the cash in that envelope), and the next two bars on the graph would include $500 (the value of just those particular bills).[9] This is also what Ms. Rafferty will explain on direct examination, and if the defense believes it has not been sufficiently explained they can ask more questions on cross-examination to ensure the jury understands the meaning of the chart. There is nothing misleading or confusing in the chart itself, and the labels and footnotes describe where the data comes from and what it encompasses. Any criticisms Menendez has of the information selected to be included in the chart may be made to the jury through cross-examination or in summation, but these go to the weight, not the admissibility, of the chart.

\* \* \*

---

otherwise indicate the earliest date the bills were put into circulation (from the Bureau of Engraving and Printing) were obtained, to confirm that those are in fact the serial numbers of cash seized as evidence in this case.

[9] Although the jury may reasonably infer that, for the collections of cash found here, in light of the manner of their packaging and the circumstances in which they were found, if an envelope containing a stack of cash includes at least some bills put into circulation in 2018 or later, all of the cash was put into that envelope in 2018 or later, Ms. Rafferty will not be asked to draw any such inference; she will simply explain the calculations to the jury.

Honorable Sidney H. Stein
June 22, 2024
Page 8

      For the reasons above, all of the charts planned to be introduced through Ms. Rafferty are permissible, not time-consuming, and will aid the jury's efficient comprehension of voluminous evidence in the case, and Menendez's objections should accordingly be overruled.

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

By:    <u>s/ Catherine Ghosh</u>
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosures

cc:    (by ECF)

       Counsel of Record