

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 28, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
                S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter in opposition to the letter motion of defendant Wael Hana, dated June 22, 2024 (Dkt. 486 ("Hana Ltr.")) seeking to have a prior out-of-court statement of cooperator Jose Uribe admitted into evidence on the ground that the statement is allegedly inconsistent with a single sentence in Uribe's multiple days of testimony.[1] Because there is no inconsistency, Hana's motion fails. And even if there were an inconsistency, his motion should still be denied for multiple other reasons, including under Federal Rule of Evidence 403.

    **I.**    **Background**

        A.  <u>The Proffer Session</u>

      On December 22, 2023, months before he testified at trial, Uribe, accompanied by counsel, participated in a lengthy proffer session with the Government and the Federal Bureau of Investigation ("FBI"). (Hana Ltr., Ex. A.) Towards the end of the proffer session, Uribe was shown what is referred to as "Document 11," text messages that were later marked and admitted into evidence as part of GX 1319 (and a larger summary chart, GX 1302). (*Id.*)

---

[1] Hana's letter motion was originally submitted under seal, and was filed yesterday, with only redactions, with consent of the Government.

Honorable Sidney H. Stein
June 28, 2024
Page 2

In the pertinent text message, which was sent on June 15, 2019, Nadine Menendez, then known as Nadine Arslanian, wrote to Uribe, referring to Hana:

> Thank you Jose. I did not make up the figure it came straight from the mortgage company. They will not even take payments on it.
>
> I NEVER forget when someone is there for me in bad times. NEVER . and I end up paying them back 100 fold.
>
> I will show him the letter from the mortgage company. This is nothing to him it's everything to me plus I saved him $15,000 at least that he was willing to give Karyann And he would never seen that money back
>
> When I feel comfortable and plan the trip to Egypt he will be more powerful than the president of Egypt.
>
> I have never asked for anything in the last two years . What I have done as priceless I would never have asked if I wasn't in the situation I am now.
>
> I will pay him back .
>
> Just finished with the family making the funeral arrangements. I can't believe he still has not called me once to ask or left me a message knowing she was going into surgery on Wednesday. He and Andy know what she meant to me. Maybe that's why he's not calling it's too late now and he realizes
>
> God for bid his mom passes away I would do everything and be there every hour of the day for him.
>
> Thank you

(GX 1319 at 3; GX 1302 at 63.)

According to the FBI report (known as a "302") of the proffer, Uribe indicated during the proffer that he "understood the message 'I will pay him back' to mean that [Nadine] was going to pay back the $18k." (Hana Ltr., Ex. A.) Uribe was not asked to review the FBI report or whether he agreed with what was written in the report, and the report does not put quotation marks around what it attributes to Uribe. Hana accordingly is incorrect in his assertion that the FBI report demonstrates that Uribe "expressly stated" that this was his understanding (Hana Ltr. 2). But, for the reasons explained below, Hana's motion fails even if he were correct.

Honorable Sidney H. Stein
June 28, 2024
Page 3

### B. Uribe's Direct Examination

On June 10, 2024, over five-and-a-half months after the proffer, Uribe was shown the above-described text message in his direct examination, and the Government read the pertinent portion into the record. (Trial Tr. 3060:13-3061:1.) Uribe was then asked, "did Nadine ever tell you that she was paying Will back for mortgage payments?" (*Id.* at 3061:2-3.) He answered, "No, she never did." (*Id.* at 3061:4.)

### C. Uribe's Cross-Examination

The next day, June 11, 2024, Uribe was asked about the same text message on cross-examination. He agreed that the text message said, "I will pay him back." (*Id.* at 3314:21.) Defense counsel then asked Uribe: "Do you remember meeting with the government and telling them that when Nadine told you I will pay him back, you understood that Nadine was saying that she was going to pay Will back the $18,000 that he let her borrow?" (*Id.* at 3314:22-25.) Uribe responded that he did not recall making such a statement. (*Id.* at 3315:1.) He was then shown the pertinent portion of the FBI report, which did not refresh his recollection. (*Id.* at 3315:3-25.)

## II. Applicable Law

Prior inconsistent statements are generally admissible for impeachment purposes only, *see* Fed. R. Evid. 613, and are inadmissible hearsay for substantive purposes unless they were made at "a trial, hearing, or other proceeding, or in a deposition." Fed. R. Evid. 801(d)(1)(A); *see Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001). In determining whether a party may impeach a testifying witness through extrinsic evidence of a prior inconsistent statement, the Court should consider the following four factors:

*First*, whether the proffered statement in fact is inconsistent with the testimony sought to be impeached, *i.e.*, whether there is a variance between the statement and the testimony that has a reasonable bearing on credibility. *United States v. Ghailani*, 761 F. Supp. 2d 114, 117–18 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). While "two statements . . . need not be diametrically opposed" to be inconsistent, *United States v. Trzaska*, 111 F.3d 1109, 1024 (2d Cir. 1997) (citation omitted), a witness's failure to recall a collateral matter does not generally subject that witness's testimony to impeachment by extrinsic evidence, *see United States v. Ashburn*, No. 11 Cr. 303 (NGG), 2015 WL 5098607, at *27 (E.D.N.Y. Aug. 31, 2015) ("What these cases do not stand for, however, is the proposition that a witness's multiple failures to recall prior statements regarding collateral matters may establish a "pattern" that in the aggregate becomes an "inconsistency," thereby subjecting that witness's testimony to impeachment by extrinsic evidence.").

*Second*, whether the party offering the prior statement has laid a proper foundation by affording (a) the witness an opportunity to explain or deny the prior allegedly inconsistent statement and (b) the opposite party an opportunity to question the witness about it. *Ghailani*, 761 F. Supp. 2d at 117–18.

*Third*, whether the extrinsic evidence is competent and otherwise admissible. *Ghailani*, 761 F. Supp. 2d at 117–18. Here, the Second Circuit has held that "a 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *United States v. Almonte,* 956 F.2d 27, 29 (2d Cir. 1992) (per curiam); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (FBI notes offered to impeach not attributable to witness because "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them"). Accordingly, in the absence of an endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words. *See Almonte*, 956 F.2d at 29. The burden is on the proponent of the notes of an alleged prior inconsistent statement to prove that the "notes reflect the witness's own words rather than the note-taker's characterization." *Id.*; *see also United States v. Schoenborn*, 4 F.3d 1424, 1428 n.3 (7th Cir. 1993) (quoting *Almonte* and noting that "[o]ur finding that [the] report did not constitute a statement made by [the witness] precludes admission of the report pursuant to Rules 607 and 613(b)."); *United States v. Benson*, 961 F.2d 707, 709 (8th Cir. 1992) (reports of interviews of witness that were not adopted by witness were "inadmissible double hearsay" and not admissible to prove prior inconsistent statement); *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own.").

*Fourth*, whether the impeachment relates to a material rather than a collateral matter. *Ghailani*, 761 F. Supp. 2d at 117–18. Here, the Second Circuit has explained that "collateral" matters are "those [] which are relevant to the issues in the case and could be independently proven." *United States v. Rivera*, 273 F. App'x 55, 58 (2d Cir. 2008) (quoting *United States v. Blackwood*, 456 F.2d 526, 531 (2d Cir. 1972))).

*Finally*, even if all of these requirements have been satisfied, the Court nevertheless may exclude the extrinsic evidence under Rule 403. *Ghailani*, 761 F. Supp. 2d at 117–18.

### III. Discussion

Hana's motion fails for four reasons.

*First*, Hana fails to show that the prior statement that he seeks to offer is inconsistent. The Second Circuit has applied "'two tests to determine inconsistency.'" *United States v. Stewart*, 907 F.3d 677, 687 (2d Cir. 2018) (quoting *United States v. Ebbers*, 458 F.3d 110, 123 (2d Cir. 2006). First, "asking whether there is 'any variance between' the impeachment material and the hearsay statement 'that has a reasonable bearing on credibility'" and second "whether a jury could 'reasonably find that a witness who believed the truth of the facts' asserted in the hearsay statement 'would have been unlikely to make a statement' of the impeachment material's 'tenor.'" *Id.* (quoting *Ebbers*, 458 F.3d at 123). Neither test is met here.

The sole statement in Uribe's multiple days of testimony to which Hana points as allegedly inconsistent with Uribe's pertinent proffer statement is the following answer:

> Q: [Di]d Nadine ever tell you that she was paying Will back for mortgage payments? (Trial Tr. 3061:2-3.)
>
> A: No, she never did. (*Id.* at 3061:4.)

(Hana Lr. 3.) According to Hana, the foregoing answer was inconsistent with Uribe allegedly stating, months earlier, that when Nadine stated, "I will pay him back," Uribe understood that to mean that she would do so. (*Id.*)

There is no inconsistency here, much less, as is required, such a real inconsistency that it bears on Uribe's *credibility*. Uribe's alleged prior statement referred to Nadine stating what she "will" do, *i.e.*, in the future. Uribe's testimony at trial was self-evidently about what Nadine "was" in fact doing, *i.e.*, in the then-present. Not only is this literally what Uribe said at trial, but the reading of his testimony that Hana pushes is utterly illogical. If Hana were correct, Uribe, having been shown a text message stating what Nadine said she will do, immediately denied that Nadine said *that very thing*.

That no one in the courtroom interpreted what Uribe testified to in the manner now asserted by Hana, weeks later, is demonstrated by the fact that, on cross-examination, defense counsel did not suggest otherwise. Rather, defense counsel asked Uribe a different question, namely, whether he had previously said that he understood Nadine's forward-looking statement to mean what it said. Uribe responding that he did not recall previously saying that Nadine's forward-looking statement meant what it said does not entitle Hana to admit Uribe's prior statement.

To be sure, one can imagine a scenario in which Uribe's prior statement might be admissible, namely, where (1) Uribe was asked, during his trial testimony, whether, at the time Nadine made her forward-looking statement, Uribe understood Nadine's forward-looking statement to mean what it said, (2) Uribe denied that he so understood at the time, and (3) Uribe was given an opportunity to explain whether he previously stated that he so understood. But the first and second of these requirements are missing here.

*Second*, Hana fails to show that the allegedly prior inconsistent statement was made in the manner that Hana asserts. As stated above, the Second Circuit has held that "a 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *Almonte,* 956 F.2d at 29. That has not occurred here. And the far more natural reading of the FBI report is not that Uribe was saying that—at the time he received the message in 2019—he understood Nadine to be sincere when she said she "will" pay Hana back, but that when asked, years later, during his 2023 proffer, Uribe was simply giving his after-the-fact reading of what the words in the text message literally said. Indeed, the FBI agent's notes of the proffer relating to this same text message state, "interpretation is that she would pay back the $18k," strongly supporting this common sense reading of what Uribe indicated, not Hana's strained version. The pertinent portion of those notes, which were provided to the defendants before trial, is enclosed herewith.

*Third*, Hana fails to show that the matter at issue is not collateral. There is no dispute that Nadine texted Uribe that she would pay Will back. Whether, in that moment, Uribe understood Nadine to be saying what she said that is not material, particularly when Uribe explained that the same message contained falsehoods (Trial Tr. 3061), and when Uribe was clear and consistent that Nadine did *not* treat the payments as a loan, notwithstanding what she said. In short, the text message speaks for itself.

*Finally*, even assuming *arguendo* that Hana otherwise had met the requirements for admission of Uribe's prior allegedly inconsistent statement, Hana's motion should still be denied under Rule 403. Uribe testified—and was cross-examined—for days. And the proffer to which Hana points was over five-and-a-half months prior, and covered many subjects. Any theoretical modicum of impeachment value in the single allegedly inconsistent statement, which Uribe credibly did not recall making, is far outweighed by the risk that the jury will be confused or believe that this particular statement is being provided to it because it is powerful evidence of a lack of credibility—when in fact, as demonstrated by the extremely limited scope of Hana's motion, Uribe's numerous proffers were fully consistent with his trial testimony, yet the jury does not know that. Moreover, as the Court is aware, Hana, and his co-defendants, already have more than ample bases to attack Uribe's credibility, should they wish to do so, in summation. And the forward-looking statement of Nadine, to which Hana points, is in evidence, so Hana can direct the jury's attention to it.

For all of these reasons, Hana's motion should be denied under Rule 403 regardless of whether Hana has met the other requirements set forth above, including demonstrating a material inconsistency (and he has not).

Honorable Sidney H. Stein
June 28, 2024
Page 7

                    Respectfully submitted,

                    DAMIAN WILLIAMS
                    United States Attorney

By:    <u>s/ Daniel C. Richenthal</u>
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosure

cc:    (by ECF)

        Counsel of Record