

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: +1 973-639-6285
llustberg@gibbonslaw.com

June 30, 2024

**VIA ECF**

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

          **Re:** **United States of America v. Menendez, et al.,
Dkt. No. 23-cr-490-SHS**

Dear Judge Stein:

      Please accept this letter brief on behalf of defendant Wael Hana in response to the Government's June 29, 2024 Letter (ECF No. 488). The Government has, after a productive process of meeting and conferring with counsel for Mr. Hana that limited the number of objections discussed herein, raised a number of objections to four defense summary charts and, in particular, to the defense exhibits cited therein and their corresponding line entries on the charts. We write to address those objections that relate to the exhibits and corresponding line entries that Mr. Hana has proposed for DX 1302 and DX 1303. For the reasons set forth below, each of the Government's objections should be overruled.[1]

    I.    **Defense Exhibit 1302**

      ***Exhibits Regarding IS EG Employee-5 ("Employee-5").***

      As it did with respect to IS EG Employee-5's testimony, the Government is seeking to prevent Mr. Hana from presenting evidence regarding a specific, and particularly critical, issue in

---

[1] The Government claims that it did not receive Defense Exhibits 1302 and 1303 until June 24, 2024, but that is not accurate. On June 15, 2024, consistent with the parties agreement that defendants produce exhibits ten days prior to the start of the defense case, ECF No. 341, Mr. Hana produced an initial draft of both of these summary charts as Hana-1302 and Hana-1303, as well as another chart, Hana-1300, for which all disputes have been resolved. To be sure, as was the case with the Government's own summary charts, which it continued to edit until the very eve of their admission, the defendants have made changes since those initial drafts were provided. The fact remains, however, that all but a few of the exhibits and corresponding line items that are the subject of this response were included in Hana-1302 and Hana-1303, and we have endeavored to direct the Government to those changes in updated versions of the charts.

GIBBONS P.C.

June 30, 2024
Page 2

the case: the work that Nadine Menendez (then Arslanian) was expected to do and did for IS EG Halal, and the removal of Ms. Menendez's assignment by Mr. Hana. ECF No. 485 at 5; ECF No. 488 at 6-7. In particular, there are a series of lines and underlying exhibits that will be consistent with, and thus corroborate, Employee-5's testimony (DX 1302, lines 1104-1 through 1104-18, 1120-1 through 1120-2, 1121-2 through 1121-5, Hana-190, and Hana-192). Having previously moved to bar Employee-5's testimony—incorrectly claiming that it was not based upon her personal knowledge—the Government now seeks to hide from the jury a series of text messages that, among other things, prove that Employee-5 did, in fact, have such first-hand knowledge. This Court should not allow it.

Specifically, the Government claims, as it did with respect to Employee-5's testimony, that these text messages and corresponding line entries on DX 1302 consist of inadmissible hearsay. ECF No. 488 at 6-7. But, as Mr. Hana has shown in response to the Government's argument that these proofs should be excluded in their entirety, these communications are not being offered for the truth of the matter asserted—that is, they are not offered to prove that Ms. Menendez actually did the work suggested in these communications. Instead, as previously explained, these communications show that Employee-5, IS EG Halal, and Mr. Hana had an expectation that Ms. Menendez was, or was supposed to be, performing work for IS EG Halal. To that end, these communications consist of IS EG Halal employees' beliefs and expectations and, as such, are not hearsay. The Government's insistence that this evidence cannot be introduced because Mr. Hana cannot produce "any actual work product by Nadine," *id.* at 7, is, therefore, not a proper basis for preventing Mr. Hana from introducing this evidence in support of his defense, though it certainly goes to the weight of the proofs.

### *Lines 637-1, 1198-1 Hana-013, Hana-013-T, Hana-191, Hana-191-T*

Counsel continued to meet and confer with the Government following its filing yesterday, and we are pleased to report that the parties have now resolved the issues with regard to these exhibits. We understand that the Government withdraws its objections to these exhibits and corresponding line entries on the summary chart.

### II.   **Defense Exhibit 1303**

#### *Line 0*

The Government seeks to bar the admission, or reference to, Jose Uribe's sentencing transcript from his prior state felony conviction. It concedes, as it must, that the fact of his conviction was already admitted, but argues that this additional evidence would be cumulative and, without providing any explanation, claims that it would be confusing. *See* ECF No. 488 at 9. Neither is a proper basis for excluding this exhibit or the single, corresponding line entry.

GIBBONS P.C.

June 30, 2024
Page 3

      The transcript of Uribe's sentencing shows that Uribe was sentenced to a term probation and ordered to pay a fine after pleading guilty to insurance fraud—the same type of sentence given to Parra in connection with his own insurance fraud case. When asked about his sentence by Mr. Hana's counsel during cross examination, Uribe initially claim that he did not have a recollection of his sentence, then later stated that he was given some term of probation:

> Q. Do you remember that you were originally charged with a second degree theft by deception in insurance fraud?
> A. I don't have recollection of the original charges; no, sir.
> Q. Do you remember facing 5 to 10 years in jail as a result of it?
> …
> THE WITNESS: I don't remember the charges and I don't remember what was the sentencing penalty for those charges sitting here right now.
> Q. Do you remember that ultimately your lawyer negotiated a plea and you did not get jail time?
> A. I remember pleading guilty and getting probation, sir.

(June 11, 2024 Tr. 3268:23-3269:10). Although "the fact of Uribe's prior conviction is already in evidence," ECF No. 488 at 9, the sentence that Uribe ultimately received, and for what, is not as clear as it could or should be, given Uribe's centrality to this case. The sentencing transcript will only provide needed clarity on this issue without in any way prejudicing the Government. Furthermore, admitting a single exhibit and one line entry on a summary chart would not, under any circumstances, be unnecessarily cumulative or confusing.

### *Lines 36-1 and 74-1; Hana-111 and Hana-116.*

      After itself introducing evidence of an order denying Elvis Parra's motion to dismiss, asking its summary witness to point it out during her testimony, and thus squarely placing this issue before the jury (GX 1303, line 78, June 5, 2024 Tr. 2361:3-12), the Government now wants to bar Mr. Hana from introducing limited evidence of the motion that was the subject of that dismissal and a hearing on it. But, the two exhibits that are the subject of this objection—which we have redacted to only a few pages—simply show the fact that a motion to dismiss was filed and the bases for that motion. Mr. Hana does not intend to argue that the arguments set forth in the motion were true, but rather that they informed Parra's and Uribe's understanding of the weakness of case against Parra, just as the Government sought to establish that the denial of this motion was somehow relevant to their state of mind. The fact that these proofs undermine Uribe's credibility when he says that he had to take steps to head off Parra's case, and did so because of his was concern for Parra (as opposed to for himself) is, of course, not an appropriate basis for excluding it. With a proper limiting instructions, the few pages that Mr. Hana seeks to admit on this subject are highly relevant and not hearsay, and Mr. Hana seeks to introduce them because, in fact, the Government opened the door to their admission, making the current effort by the defense a simple matter of fairness.

GIBBONS P.C.

June 30, 2024
Page 4

### Lines 1142-1 to 1142-20, 1142-30 to 1142-46.

The text messages reflected in these line entries between Uribe and Toby Nassery relate to Uribe's search for, and ultimate purchase of, a home, and they are relevant to Mr. Hana's defense. As the Government recognizes, these text messages suggest that it was Uribe who received certain purported cash payments, and not Mr. Hana. ECF No. 488 at 10.

In its case in chief, the Government elicited testimony from Uribe that Elvis Parra and Bien Hernandez supposedly paid Mr. Hana a total of $150,000 in cash sometime after Parra's sentencing in late June 2019 and in the fall of 2019, and that these payments were made in exchange for Mr. Hana taking action to "stop and kill" the case against Elvis Parra and the investigation into Ana Peguero and Phoenix Risk Management. *See* June 7, 2024 Tr. 2968:8-18; June 10, 2024 Tr. 3075:9-3080:4, 3081:7-11. Despite the litany of text messages between all of these participants, there is not one message corroborating Uribe's story, and the Government has elected to not call either Parra or Hernandez to try to corroborate Uribe's tale, one that makes little sense given that, as Uribe showed, Mr. Hana was, in fact, cut out of this effort early in the going. *See* June 11, 2024 Tr. 3228:10-20.

The proposed evidence indicates that in the fall of 2019, Uribe began communicating with Nassery to purchase a home. During his home search process, Uribe informed Nassery: "I am at 500k. 150 down. See what you can do," Hana-085, and "Brother I. Really need a favor with a 500k loan. I don't want to get I. Trouble with IRS," Hana-086. The fact that Uribe communicated that he would put "150 down" to purchase a home—the precise amount he alleges that Mr. Hana received as a bribe payment—suggests that it was Uribe, not Mr. Hana, who received any purported cash payments from Parra and Hernandez.

The Government is also incorrect that these text messages "were not sought to be used on cross-examination of Uribe, where they could have been placed in context." ECF No. 488 at 10. Mr. Hana's counsel (and then the Court) specifically questioned Uribe on these exact text messages. *See* June 11, 2024 Tr. 3310:25-3313:13. Mr. Uribe failed to provide any explanation and instead testified that he had no recollection of these messages.[2] *See id.* The Government also asserts, without citation to specific lines, that "many of these messages are also inadmissible hearsay." ECF No. 488 at 10. Mr. Hana, however, is not offering these text messages for the truth of any assertion contained therein, but rather for the fact that these statement, setting forth a price and way forward to complete the transaction, were said and communicated between Uribe and Nassery. Accordingly, the few text messages and corresponding line numbers that relate to this episode should, again, as a matter of both evidence and fairness, be admitted

---

[2] *See, e.g.*, June 11, 2024 Tr. 3313:9-13 ("Q. So your testimony is that you have no recollection of trying to buy a house in the fall or spring -- in the fall of 2019 into the spring of 2020? A. No, sir. I don't have a recollection of that particular time in my life for buying a home.")

G<small>IBBONS</small> P.C.

June 30, 2024
Page 5

*    *    *

      For all of these reasons, the Government's motion should be denied and its objections to the proposed line entries on DX 1302 and DX 1303, including those described herein, as well as the underlying exhibits pertinent thereto, should be overruled. Thank you for Your Honor's kind consideration of these matters.

      Respectfully submitted,

      *s/ Lawrence S. Lustberg*

      Lawrence S. Lustberg