# THE LAW FIRM OF
# CÉSAR DE CASTRO, P.C.
### ATTORNEY AT LAW

The District
111 Fulton Street - 602
New York, New York 10038
631.460.3951 Office
646.285.2077 Mobile
646.839.2682 Fax
cdecastro@cdecastrolaw.com
cdecastrolaw.com

December 20, 2024

*Via* **ECF**

The Honorable Sidney H. Stein
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: *United States v. Menendez, et al.,* 23 Cr. 490 (SHS)
       Fred <u>Daibes's Letter Response Re: Additional Evidence Improperly</u>
       <u>Provided to the Jury</u>

Dear Judge Stein,

We write in response to the government's December 16, 2024 letter, in which it informed the Court of yet even more evidence improperly submitted to the jury during its deliberations. Of course, given the history of this issue and as the government continues to prepare for its trial against Nadine Menendez, we may, and perhaps should expect to receive, additional revelations in the future. In fact, just this morning the government notified the parties and the Court that it located another exhibit it believes was improperly provided to the jury and to clarify that one of the exhibits improperly provided to the jury that it had represented had not been cited in one its summary exhibits, was in fact cited. To date, the total of exhibits containing excluded information that was provided to the jury is sixteen.

The briefing on this issue thus far has been focused on: (1) the specifics of the exhibits currently believed to have been improperly before the jury; (2) acknowledgments of the errors by all parties but, nonetheless, attempting to cast blame; (3) the likelihood of the jury reviewing the improper materials; and (4) the prejudice to the defendants. Whether it was the government (who's exhibits are at issue), the defense (who also did not catch the improper files in the tens of thousands of pages of exhibits), or a combination of both, all parties can agree that the jury possessed, in the jury room, exhibits containing information that had been excluded by the Court and (in one instance) that the parties agreed should have been redacted due to its obvious overly prejudicial nature. The significance of that information to the jury's decision has primarily been the subject of the briefing thus far. However, we urge the Court to take a step back and first

examine a more fundamental issue – whether the government can even establish what files were actually on the jury's laptop computer versus what was supposed to be on the laptop computer. The process by which the evidence was compiled and provided to the jury was so fundamentally flawed that the Court cannot be certain, only a few months after the trial, what evidence was provided to the jury during deliberations. Without any certainty on that basic and fundamental issue, the Court cannot permit the convictions to stand and must order a new trial.

**I.    The Government Cannot Assure the Court What Files Were Actually On the Jury's Laptop Computer**

To understand and analyze the issue, the Court should examine the premise the government has suggested it accept when it analyzes the specific exhibits currently believed to have been improperly provided to the jury on a laptop computer during deliberations.

First, the laptop computer that was supposed to contain only the evidence admitted at trial has been erased and utilized in another matter. Therefore, the best evidence of what was contained on the jury's laptop computer is no longer available.

Second, to determine what files the government believes were contained on the laptop computer, it informed the defense that it was working off an electronic copy of what it believes were the set of exhibits loaded onto the jury's laptop computer. The government then shared that electronic file with the defense on November 15, 2024, in the form of a .zip file or compressed folder (given its size). When that file is expanded, the folder of files holding the exhibits is named "Admitted Exhibits Drive for Jury." The file name does not contain an "as of" date, meaning, the last date it was updated. Based on that naming convention, it is unclear whether the files it saved for copying to the jury's laptop computer were contained on the government's servers, a separate hard "drive", or somewhere else.[1] It is also unclear if or how many other copies of the folder were being worked with, after all it is clear from the government's filings that it was operating with multiple copies and versions of the exhibits.

Third, nothing in the current record establishes, with any degree of certainty, that the file the government has been working off of is, in fact, the folder of materials copied to the jury's laptop computer. Accordingly, other than the government's belief, the Court can have no more certainty or comfort that anyone knows precisely which files were contained on the jury's laptop computer. This is not a situation like those cited by the government in *United States v. Jefferys*, No. 20-3630, 2022 U.S. App. LEXIS 28661 (2d Cir. Oct. 17, 2022), *United States v. Hansen*, 369 F. App'x 215 (2d Cir. 2010), *United States v. Nkansah*, 699 F.3d 743 (2d Cir. 2012), or *United States v. Coney*, 76 F.4th 602 (7th Cir. 2023). In both *Jefferys* and *Hansen*, the respective courts polled the juries to inquire into whether or not they saw any of the extraneous material. No juror had. *See Jefferys,* 2022 U.S. App. LEXIS 2866, at *7-8; Transcript at 163-64, *United State*s v. *Hansen*, No. 07 Cr. 520 (KAM) (E.D.N.Y. Sept. 5, 2008) (ECF No. 73. In *Nkansah*, when the extraneous material was discovered by the parties during jury

---

[1] Prior to trial, we understand that the government requested that the Court permit it to hardwire the courtroom in order for the government to access its computer network to facilitate its presentation of evidence. We further understand that the Court denied that request. Accordingly, the government must have been saving files locally, that is, saving files to its computers and hard drives and other computer media. Those locally saved files may or may not have been synced with files on its network, further compounding the confusion regarding what files were actually loaded to the jury's laptop computer.

deliberations, the courtroom deputy removed the material from the vacant deliberation room, and, based on the fact that the material was still in its original manila folder inside the original Redweld, the court determined that the material was likely not reviewed. *See Nkansah*, 699 F.3d at 747. Finally, in *Coney,* when the parties discovered, three hours into deliberations, that extraneous material was loaded onto the jury laptop computer, the court removed the laptop computer from the jury room and gave the jury a curative instruction that they were only to consider properly admitted evidence. *See Coney*, 76 F.4th at 606.

Here, the Court does not have the evidence improperly provided to the jury, *i.e.* the laptop computer, like in *Coney*, nor does the Court have a *copy* of the file that all parties agree was the file loaded to the laptop computer. The government has provided the Court with very little information, including the when, how, and the details of the preparation of the jury's laptop computer. The process was so fundamentally flawed that the Court can have no comfort or certainty that the jury did not review excluded evidence in rendering its decision.

Furthermore, in its December 16, 2024, filing, the government repeats its arguments suggesting that the sheer volume of exhibits taken together with the time in which the jury was deliberating means that it is unlikely that the jury viewed the improper evidence. It suggests, without any proof, that the jury relied on only its summary charts despite the fact that the jury, in its first note, requested a computer cable to enable them to project the contents of the laptop computer onto the television contained in the jury room. The jury's note, the Court's instructions, and the time the jury was deliberating all suggest that the jury was satisfying its oath and reviewing the evidence. While arguing that the jury was not reviewing the evidence, the government does not suggest what it believes the jury *was* doing for close to three days. The government also argues that because it has taken the parties weeks to identify the improper evidence before the jury, it would not have viewed the evidence in the days it was deliberating. However, that fact is of no moment; the jury was engaged in an entirely different exercise than that of the parties. The parties are undertaking a review of not only the thousands of exhibits introduced, but two sets of those exhibits - comparing the two sets against one another. The parties' exercise is a much more labor intensive and time-consuming exercise.

Accordingly, this Court should conclude that the government's errors deprived Mr. Daibes of a fair trial, vacate his conviction, and grant him a new trial in which the jury will receive and review only the evidence properly admitted by the Court.

## II.     The Most Recent Discovered Exhibits Also Prejudiced Mr. Daibes

In its December 16, 2024, letter, the government disclosed additional exhibits, the Chat Exhibits, that were also improperly provided to the jury. Specifically, a portion of Chat Exhibit GX D207 related to Mr. Daibes. Government Exhibit D207 is a string of text communications between Messrs. Daibes and Hana in which Mr. Hana wrote to Mr. Daibes, "Director office of Egyptian affairs in state department "Kathryn Kiser" told our DCM today that senator Menendez put an [*sic*] hold on a billion $ of usaid to Egypt before the recess!!!!." GX D207 at page 10. This message should have been redacted, as per the Court's order, but instead was improperly presented to the jury. This exhibit, along with other messages improperly before the jury communicating the same regarding United States aid to Egypt (*see* Government Exhibit C207) not only violated Senator Menendez's Speech or Debate rights, but improperly prejudiced Mr. Daibes. The Court ordered that no references to Senator Menendez putting a hold on United

States aid could be elicited or presented to the jury. Certainly, if that evidence was admitted, Mr. Daibes would have addressed the issue in cross-examination and summation. There was little to no evidence presented about Mr. Daibes's knowledge of Mr. Helmy and/or of Senator Mendendez's decisions and involvement in United States aid to Egypt. The jury seeing that information, given our silence on the subject, would have concluded that we had conceded Mr. Daibes knowledge of his alleged co-conspirators discussions and dealings regarding Senator Menendez approving military aid to Egypt.

The government argues that the Chat Exhibits did not prejudice Mr. Daibes. *See* Government's December 16, 2024 Letter at 14. In support, it incredulously argues that the exhibits, without explanation or context, would have confused the jury, therefore, they must not have looked at them or understood them. Specifically, it wrote:

> Each of the Chat Exhibits are lengthy documents containing dozens to hundreds of pages and thousands of text messages on numerous disparate topics, including matters that were not cited in summary charts or the subject of testimony at trial. Indeed, not all of the Chat Exhibits render the times in the same time zone, and not all of them identify the senders and recipients in a readily comprehensible way, which would have required the jury to perform laborious and sometimes technical cross-referencing in order to even understand the sequences, senders, and recipients of the messages. *As a result, a jury would likely encounter significant difficulty fully comprehending lengthy chains of text messages between close associates and friends that spanned years in some cases, without the benefit of any guidance through summary testimony, contextualizing evidence, or argument or explanations.*

*Id.* (Emphasis Added). Essentially, the government suggested that because this particular evidence was difficult to comprehend and confusing, without explanation and/or argument, it could lead to the jury drawing improper conclusions from the evidence. That is precisely how the defendants have been prejudiced by all of the evidence improperly provided to the jury. Evidence that the government had argued was critical to its case, went unanswered. Nothing could be more prejudicial.

### III. Conclusion

For all the foregoing reasons in this and our prior submissions, this Court should vacate Mr. Daibes's convictions and order a new trial because the jury's receipt of evidence not admitted during trial deprived Mr. Daibes of due process and a fair trial.

Respectfully submitted,

/s/

César de Castro
Shannon McManus
Seth Agata
Valerie Gotlib

cc:     All Counsel (*via* ECF)