UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                     :

UNITED STATES OF AMERICA        :

                                     :

           -*v.*-                 :      S4 23 Cr. 490 (SHS)

                                     :

ROBERT MENENDEZ,             :
WAEL HANA, a/k/a "Will Hana," and  :
FRED DAIBES,                 :

                                     :

                  Defendants.     :

                                     :
-------------------------------------------------------------x

 

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANTS' MOTIONS FOR BAIL PENDING APPEAL

 

                           MATTHEW PODOLSKY
                           Acting United States Attorney

Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine Ghosh
Assistant United States Attorneys

Christina A. Clark
Special Assistant United States Attorney

- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

DISCUSSION ....................................................................................................... 2

I.     APPLICABLE LAW ........................................................................................ 2

II.    NONE OF THE DEFENDANTS' CLAIMS OF INSUFFICIENCY OF THE EVIDENCE
       OR UNCONSTITUTIONALITY RAISES A SUBSTANTIAL ISSUE OF LAW OR
       FACT ..................................................................................................... 4

       A.    Defendants Raise No Substantial Question of Law or Fact as to the Sufficiency of
             the Evidence Regarding Official Acts .................................................. 4

       B.    Defendants Raise No Substantial Question of Law or Fact as to the Sufficiency of
             the Evidence of a *Quid Pro Quo* ....................................................... 10

       C.    Defendants Raise No Substantial Question of Law or Fact as to the Sufficiency of
             the Evidence of Venue .................................................................... 12

       D.    Menendez Raises No Substantial Question of Law or Fact as to the
             Constitutionality of 18 U.S.C. § 219 .................................................. 14

III.   NONE OF THE DEFENDANTS' CLAIMS SEEKING A NEW TRIAL RAISES A
       SUBSTANTIAL ISSUE OF LAW OR FACT ............................................... 15

       A.    Defendants Raise No Substantial Question of Law or Fact Regarding the Potential
             Exposure of the Jury to Extra-Record Evidence .................................. 15

       B.    Menendez Raises No Substantial Question of Law or Fact Regarding the Speech
             or Debate Clause .......................................................................... 18

       C.    Hana Raises No Substantial Question of Law or Fact Regarding the
             Government's Presentation of Documentary Evidence .......................... 30

       D.    Hana Raises No Substantial Question of Law or Fact Regarding the Preclusion of
             Irrelevant Testimony Regarding his Business ...................................... 32

       E.    Daibes Raises No Substantial Question of Law or Fact Regarding the Preclusion
             of Irrelevant Specific Act Evidence Concerning His Propensity to Give Gifts.... 34

IV.    EVEN IF SOME—OR, IN MENENDEZ'S CASE, ALL—OF THE DEFENDANTS'
       CLAIMS RAISED A SUBSTANTIAL ISSUE OF LAW OR FACT, THE DEFENDANTS
       WOULD STILL NOT BE ENTITLED TO BAIL PENDING APPEAL ...................... 35

       A.    Menendez Would Not Be Entitled to Bail Pending Appeal Even if Each of His

Appellate Claims Was Meritorious ........................................................................ 35

B.    Hana and Daibes Would Need to Prevail on All or Nearly All of Their Arguments to Meet the Standard for Bail Pending Appeal ...................................................... 43

CONCLUSION ............................................................................................................... 46

PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motions of defendants Robert Menendez, Wael Hana, and Fred Daibes for bail pending appeal. Because none of the issues any defendant raises presents a substantial question of law or fact, let alone one likely to result in a new trial on all counts, the defendants do not and cannot meet the high standard for bail pending appeal. And in the case of Menendez, even if *every single one of his claims of error were meritorious*, he would still not be entitled to a new trial on at least the conspiracy and substantive counts related to the obstruction of the grand jury's investigation.[1]

Each defendant's motion must be denied because each defendant fails to demonstrate one or more substantial issues on appeal within the meaning of Section 3143(b), as they must to be entitled to what they seek. Indeed, although not all of the defendants' specific objections pressed now are even preserved, all but one of the underlying arguments the defendants rely upon in their motions were thoroughly considered and correctly rejected by this Court (sometimes more than once) in a series of exhaustive written opinions that demonstrate the absence of any substantial question of law or fact likely to lead to reversal of their convictions or a new trial on any count. The one exception is a new meritless challenge by Hana to this Court's preclusion of irrelevant and cumulative defense evidence regarding his business activity after the relevant time period, a challenge that Hana did not deem worthy of inclusion in the 169-page memorandum in support of

---

[1] Citations to "Dkt." refer to docket entries in this case. Citations to "Menendez Mem." refer to Menendez's memorandum of law in support of his motion for bail pending appeal, Dkt. 719. Citations to "Hana Mem." refer to Hana's memorandum of law in support of his motion for bail pending appeal, Dkt. 744. Citations to "Daibes Mem." refer to Daibes's memorandum in support of his motion for bail pending appeal, Dkt. 746. Citations to "Menendez Sent'g Tr." refer to the transcript of Menendez's January 29, 2025 sentencing. Citations to "Hana Sent'g Tr." refer to the transcript of Hana's January 29, 2025 sentencing. Citations to "Daibes Sent'g Tr." refer to the transcript of Daibes's January 29, 2025 sentencing.

his post-trial motions, and that in any event presents no substantial question of law or fact. And even if any issue by any defendant raised a substantial question of law or fact, none is likely to result in reversal or a new trial on *all* of the counts for which any defendant was sentenced to imprisonment, which itself compels the denial of bail pending appeal.

## DISCUSSION

### I.    APPLICABLE LAW

After a defendant has been convicted, the Bail Reform Act "establishes a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). The defendant bears the burden to "rebut this presumption with clear and convincing evidence." *Id*. That statutory presumption reflects Congress's view that "[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even to permit it in the absence of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) (internal quotation marks omitted).

Detention pending appeal is mandatory unless the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community if released," and "that the appeal . . . raises a substantial question of law or fact likely to result in" reversal, a new trial, a non-incarceratory sentence, or a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b).

A "substantial question" is "a close question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (internal quotation marks omitted). A substantial question must have "more substance than would be necessary to a finding that it was not frivolous." *Id.* (internal quotation marks omitted). "If a court does find that a

question raised on appeal is 'substantial,' it must then consider whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *Id.* (quoting *Miller*, 753 F.2d at 23). The defendant bears the burden of persuasion. *Id*.

Where there are multiple counts of conviction, it must be the case that if the substantial question were resolved in the defendant's favor it would be "likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *Id.*; *see also, e.g.*, *United States v. Silver*, 203 F. Supp. 3d 370, 377 (S.D.N.Y. 2016) ("the appeal must raise a substantial question that, if decided in defendant's favor, will likely result in a reversal or order for a new trial *as to all counts for which a defendant has been sentenced to prison*" (emphasis added)).

The Second Circuit gives great deference to a district court's bail decisions, reversing only upon "clear error"—meaning that "on the entire evidence" the Court of Appeals is "left with the definite and firm conviction that a mistake has been committed." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal quotation marks omitted). A district court's determination of whether an appeal raises a substantial question receives deference "[g]iven the trial judge's close familiarity" with the case. *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). Purely legal questions are, however, reviewed *de novo*. *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019).

II.    **NONE OF THE DEFENDANTS' CLAIMS OF INSUFFICIENCY OF THE EVIDENCE OR UNCONSTITUTIONALITY RAISES A SUBSTANTIAL ISSUE OF LAW OR FACT**

A.    **Defendants Raise No Substantial Question of Law or Fact as to the Sufficiency of the Evidence Regarding Official Acts**

Menendez and Hana both repeat meritless claims that the evidence was allegedly legally insufficient to allow the jury to find that Menendez agreed or performed or promised to perform, or that his conspirators requested or contemplated, even a single official act.  (Menendez Mem. 13-17; Hana Mem. 9-15.)  These claims, which this Court considered in great detail and rejected based on the overwhelming evidence, do not present any substantial question of law or fact.

The Court's rulings that the Government presented abundant evidence of official acts were correct and extensively supported by the trial record.  With respect to the portions of the scheme related to Egypt, the Court held that the Government presented sufficient evidence to enable a reasonable jury to find that (a) Menendez "promised to sign off on a foreign military sale to Egypt," *United States v. Menendez* ("*Menendez III*"), No. S4 23 Cr. 490 (SHS), --- F. Supp. 3d ----, 2024 WL 5103452, at *7 (S.D.N.Y. Dec. 13, 2024); (b) Menendez made promises of additional approvals of military assistance to Egypt, *id.* at *7 n.4; and (c) Menendez sought to pressure the U.S. Department of Agriculture ("USDA") to reverse its official position on Egypt's grant of a monopoly on halal certification to Hana's company, *id.* at *7-8.  Each of these findings is extensively supported by the record.  The promises with respect to military aid are obviously promises of official acts.  Indeed, Menendez does not challenge the sufficiency of the evidence that such promises are of official acts (Menendez Mem. 13-17), and Hana, too, does not dispute that such a promise, if made, would be an official act.  Hana's challenge, instead, is only the facially implausible claim that no reasonable jury could read the words "Tell Will I am going to

4

sign off this sale to Egypt today" (followed by specific details of the sale) as a promise that Menendez would sign off on that sale to Egypt that day.  (Hana Mem. 13.)  Hana's argument refutes itself.  It is not, remotely, a "close question" whether "Tell Will *I am going to sign off*" on a sale is a promise to sign off on the sale, let alone whether a reasonable jury could so find.  As a result, the promises of official acts of military assistance would alone be sufficient to sustain the relevant counts (Counts One through Three and Counts Five through Eight) against this challenge, *even if all of Menendez's and Hana's other challenges on official acts were meritorious*.[2]

There is likewise no substantial question of law or fact whether Menendez promised or attempted to pressure the USDA to alter its official position on Hana's halal monopoly.  The Court correctly—and indisputably—recognized that the "official position of the United States on this issue" was one "over which [Under Secretary Ted] McKinney and the USDA retained full control," *Menendez III*, 2024 WL 5103452, at *8, and that Menendez sought to use his own official position to attempt to influence McKinney's articulation of the official position of the United States, *id.*  Menendez's claim that he only used his "general influence" (Menendez Mem. 15-16), as if he were not a Senator, is belied by the record, which reflects ample evidence that Menendez attempted to "us[e] his official position to exert pressure on" McKinney, *McDonnell v. United States*, 579 U.S. 550, 572 (2016); *see Menendez III*, 2024 WL 5103452, at *8.  Menendez's secondary claim that the USDA's official position on a "focused and concrete" matter within "the specific duties" of the positions of Under Secretary McKinney and other USDA officials and the

---

[2] Similarly, neither Menendez nor Hana challenges the sufficiency of the evidence of official acts regarding the conduct directed at the U.S. Attorney's Office for the District of New Jersey and Qatar, thus preventing any challenge based on official acts to Counts Eleven through Fourteen, or to aspects of Counts One through Three.

"function[s] conferred by the authority of [their] office[s]," *McDonnell*, 579 U.S. at 570, could not be an official act is plainly incorrect. (*Compare* Menendez Mem. 16 *with McDonnell*, 579 U.S. at 570-71; *see also, e.g.*, Tr. 1769-70 (McKinney testifying that attempts to influence foreign governments were within duties of his position); Tr. 373 (USDA foreign service officer Bret Tate testifying similarly); Tr. 496 (Tate testifying that preparation of GAIN reports was within duties of his position).) Likewise, Hana's claim that Menendez's promised and undertaken conduct amounted only to a discussion of "broad policy objectives" (Hana Mem. 12) is squarely contradicted by the record, which reflected that the USDA (and other agencies of the United States) articulated a position on the specific and focused question of whether four existing certifiers—specific, identified United States businesses—should retain their official recognition by the Government of Egypt or whether Hana's company should alone enjoy that recognition. (*See, e.g.*, *Menendez III*, 2024 WL 5103452, at *7-8; *see also* Dkt. 611 at 12-13.)

Hana's claim that the evidence was insufficient to allow the jury to find an official act because Menendez sought to apply this pressure in a phone call (rather than in person) does not remotely present a "close question." (Hana Mem. 12.) Indeed, it is frivolous. While obviously no party disputed that a phone call *as an end in itself and without more* does not amount to an official act, a phone call to pressure another official may be "evidence of an agreement to take an official act," *McDonnell*, 579 U.S. at 573. This is not a "close question." It is the text of *McDonnell*. (*Compare* Hana Mem. 12 (arguing phone call was insufficient evidence of agreement to take official act) *with McDonnell*, 579 U.S. at 573 ("If an official . . . *makes a phone call* on a question or matter that is or could be pending before another official, *that could serve as evidence of an agreement to take an official act.*" (emphasis added)).

Menendez's and Hana's other challenges to official acts fare no better. Menendez and Hana both repeat their claims that there was insufficient evidence of an attempt to pressure then-New Jersey Attorney General Gurbir Grewal (Menendez Mem. 14-15; Hana Mem. 13-15), but this Court rightly rejected those claims based on the truly overwhelming evidence and clear law. *See Menendez III*, 2024 WL 5103452, at *13-14. Hana's claim resorts to all but ignoring the Second Circuit's binding holding in *United States v. Biaggi*, 853 F.2d 89, 99 (2d Cir. 1988), that Menendez could pressure a state official by using his official position. (*See* Hana Mem. 14-15 (claiming it is a "novel" question whether *Biaggi* applies).) But contrary to Hana's invented distinction for cases "demonstrating Congressional interest" (*id.* at 15), the conduct of the defendant in that case is directly analogous to that of Menendez, who similarly "demonstrate[ed] Congressional interest," *Biaggi*, 853 F.2d at 98, through *his own corrupt attempts to apply pressure. Compare Biaggi*, 853 F.2d at 98 (describing ways in which Biaggi used his office) *with Menendez III*, 2024 WL 5103452, at *13 (describing ways in which Menendez used his office). Indeed, even Menendez acknowledges *Biaggi*'s binding application (Menendez Mem. at 15 ("[N]obody is saying" that Menendez could not be guilty of pressuring state official); *but see* Hana Mem. 14-15 (saying Menendez could not be guilty of pressuring state official).). There is thus no substantial question of law whether Menendez could be guilty of promising or attempting to pressure a state official, and no substantial question of fact whether the jury could find Menendez agreed and attempted to do just that, based on the detailed and granular timeline of his corrupt acts and promises and the testimony of, among others, both Grewal and Menendez's co-conspirator Jose Uribe. *See Menendez III*, 2024 WL 5103452, at *13; *see also, e.g.*, *United States v. Reichberg*, 5 F.4th 233,

248-50 (2d Cir. 2021) (affirming sufficiency of evidence of corruptly promised official acts based upon cooperator testimony and circumstantial evidence of timing).

Indeed, since this Court's opinion, the Second Circuit has decided *United States v. Mangano*, rejecting just the sort of argument relied on by Menendez and Hana here, and reaffirming—in a published and precedential opinion—that one official can take an official act by advising or pressuring another official in a different unit of government without any formal or official relationship between the two.  *See United States v. Mangano*, Nos. 22-861(L), 22-937(Con), --- F.4th ----, 2025 WL 479623, at *21-22 (2d Cir. Feb. 13, 2025).  *Mangano* not only is fatal to Hana's attempt to distinguish *Biaggi*, but it also squarely rejected an argument virtually identical to Menendez's claim that his actions were analogous to those of a purely private party. (*Compare* Menendez Mem. 14-16 (arguing that Menendez's conduct was "no different" than if "Bruce Springsteen" had sought to contact Grewal) *with Mangano*, 2025 WL 479623, at *21 (explicitly rejecting defense argument that "if one public official has no formal or official relationship with another, he essentially acts as a private party in advising or seeking to pressure the other official" (internal quotation marks omitted)).)

Finally, Menendez seeks to use an outlier out-of-circuit district court case finding evidence against a different defendant insufficient in very different circumstances (Menendez Mem. 16-17 (citing *United States v. Jefferson*, 289 F. Supp. 3d 717 (E.D. Va. 2017))) to somehow upset the overwhelming evidence that *this* defendant promised and attempted to perform official acts.  This is a non sequitur.  The Eastern District of Virginia case Menendez cites, *United States v. Jefferson*, did not purport to, and of course could not, change the law of the Supreme Court that whether to infer an agreement to perform an official act is a question for the jury.  *See, e.g.*, *McDonnell*, 579

8

U.S. at 572-73 ("*It is up to the jury*, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*.  The jury may consider a *broad range of pertinent evidence*, including the nature of the transaction, to answer that question." (emphasis added)); *id.* at 573 ("If an official . . . makes a phone call on a question or matter that is or could be pending before another official, that could serve as evidence of an agreement to take an official act.  *A jury could conclude*, for example, that the official was *attempting to pressure or advise* another official on a pending matter." (emphasis added)).  Nor, of course, in analyzing the evidence before it, did the district court in *Jefferson* confront anything close to the evidence in this case, which this Court explained at length was more than sufficient to show official acts.  *See Menendez III*, 2024 WL 5103452, at *7-8, *13-14; *see also, e.g.*, *United States v. Menendez* ("*Menendez IV*"), No. S4 23 Cr. 490 (SHS), --- F. Supp. 3d ----, 2025 WL 268892, at *7 (S.D.N.Y. Jan. 22, 2025) (ruling there was "'abundant properly admitted evidence'" on counts related to Egypt, quoting *United States v. Hillard*, 701 F.2d 1052, 1064 (2d Cir. 1983)). (*See also, e.g.*, Menendez Sent'g Tr. 44 ("The jury reached a considered opinion, verdict, based on substantial or overwhelming evidence, however you characterize it, that you had committed 15 different crimes, 15 counts."); Hana Sent'g Tr. 37 ("Mr. Hana, the evidence was very, very substantial, supporting the jury's verdict that you had committed bribery, fraud, conspiracy to commit bribery, conspiracy to commit honest services fraud.  The evidence belies the statement here that you don't understand why you've been convicted of these crimes . . . The evidence is, as I say, significant, and the jury reached a result well-grounded in the facts."); Daibes Sent'g Tr. 18 ("I think the evidence was very substantial supporting the jury verdict[.]").)  And to the extent that

9

the *Jefferson* opinion could be read in support of any broader principle than its own facts, any such argument has been rejected by the Second Circuit in *Mangano*. *See* 2025 WL 479623, at *21-22.

### B.    Defendants Raise No Substantial Question of Law or Fact as to the Sufficiency of the Evidence of a *Quid Pro Quo*

Hana's and Daibes's claims that the evidence of a *quid pro quo* was insufficient (Hana Mem. 15-21; Daibes Mem. 13-15) raise no substantial question of law or fact, as this Court is well aware from its review and analysis of the overwhelming evidence.[3]    The Court repeatedly remarked that the evidence of a *quid pro quo* was more than just sufficient to sustain the verdict, but instead at least ample, even "overwhelming" (Menendez Sent'g Tr. 44). *See, e.g.*, *Menendez III*, 2024 WL 5103452, at *7 (the Government introduced "*more than sufficient* evidence upon which a reasonable jury was entitled to conclude that Menendez promised to perform these acts in exchange for items of value" (emphasis added)); *id.* at *9 ("The jury was similarly presented with ample evidence to conclude that Menendez promised to perform official acts to benefit Egypt and Hana in exchange for things of value[.]"); *id.* ("This series of events provided the jury with ample evidence to conclude that long before Menendez informed Hana of this official act—or received any payment—he *agreed* to do so in exchange for things of value."); *id.* at *10 ("In sum, this circumstantial evidence provides a more than sufficient foundation for the jury to reasonably infer that Menendez agreed to take official action in exchange for items of value for Nadine—including the mortgage payment and the checks from IS EG—before he took or attempted to take any official act."); *id.* at *12 ("[T]here was more than ample evidence from which the jury was entitled to

---

[3] Menendez, rightly, does not even claim that there is any substantial question of law or fact presented by the sufficiency of the evidence of a *quid pro quo*, confining his sufficiency challenges to official acts and venue.  (*See* Menendez Mem. 13-17.)

conclude that Nadine's 'employment' by IS EG was simply a means of funneling bribe payments to her for her and Menendez's benefit."); *id.* at *14 ("The government presented ample evidence for the jury to conclude that Uribe, with assistance from Hana, paid for a new Mercedes-Benz for Nadine in exchange for Menendez's official acts (or promises to take official acts) to 'stop and kill' the NJAG's prosecution of Parra and investigation into Peguero."); *id.* at *20 ("This series of events—supported by ample record evidence—supports the jury's finding of a corrupt quid pro quo [with respect to attempt to interfere with Daibes's federal prosecution].").

The particular alleged insufficiencies Hana and Daibes raise were each considered and correctly rejected by the Court based on the overwhelming evidence.  (*Compare* Hana Mem. 16-19 (arguing insufficiency of evidence of *quid pro quo* based on payments postdating Menendez's promises on military aid and attempts to pressure McKinney) *with Menendez III*, 2024 WL 5103452, at *9-12 (cataloguing evidence that the later payments fulfilled promises preceding the official acts)); *compare* Daibes Mem. 13-14 (arguing insufficiency of evidence of Daibes involvement with *quid pro quo* related to Egypt) *with Menendez III*, 2024 WL 5103452, at *12 (cataloguing evidence of Daibes's involvement in this *quid pro quo*); *compare* Daibes Mem. 14-15 (arguing insufficiency of evidence of *quid pro quo* related to Daibes's federal prosecution and Qatar) *with Menendez III*, 2024 WL 5103452, at *18-20 (cataloguing evidence of *quid pro quo*).)

Moreover, since this Court's opinion, the Second Circuit in *Mangano*, which affirmed the sufficiency of the evidence of a corrupt *quid pro quo* based in part on evidence of the timing of key acts, has further undermined the arguments made by Hana and Daibes.  *See Mangano*, 2025 WL 479623, at *21.

11

### C.    Defendants Raise No Substantial Question of Law or Fact as to the Sufficiency of the Evidence of Venue

Menendez's and Daibes's claims that the evidence was insufficient to permit a rational jury to find venue proper (Menendez Mem. 21-24; Daibes Mem. 9-10) also do not raise a substantial question or law or fact.[4]

Menendez's and Daibes's disagreements with the Court's thorough analysis finding sufficient evidence of venue on each count (Menendez Mem. 21-24; Daibes Mem. 9-10) do nothing to raise a substantial question, and indeed it is not uncommon to deny bail pending appeal where the asserted appellate issues concern venue, given that venue is not an element and need only be proven by a preponderance of the evidence. *See, e.g.*, *United States v. Buyer*, No. 22 Cr. 397 (RMB), 2023 WL 6805821, at *5 (S.D.N.Y. Oct. 16, 2023) (denying bail pending appeal for venue challenge); *bail pending appeal denied*, No. 23-7202 (2d Cir. Nov. 21, 2023).  To take just a few examples, which are alone sufficient to deny bail pending appeal, there is no substantial question under Second Circuit law whether an in-person meeting in which one bribe-payor provided a thing of value worth several hundred dollars and the bribe-recipient communicated his intent to meet and hear a request for an official act is "part and parcel," *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990), of bribery and related offenses.  *See Menendez III*, 2024 WL 5103452, at *35.  There is no substantial question whether the sale of kilogram gold bars, received as a bribe, in order to pay down a mortgage as part of the purchase of a new house, which the bribe-payor was assisting the bribe-recipient in purchasing and which had not been purchased at the time of the sale, is part and parcel of the bribe scheme.  *See Menendez III*, 2024 WL 5103452,

---

[4] Hana does not claim that any challenge to the sufficiency of the evidence of venue presents a substantial question of law or fact.

at *36.  There is no substantial question whether the receipt of things of even modest value in the district, such as transportation and a meal, is essential conduct for bribery offenses, *see id.* at *35; *see also id.* at *37 (citing *United States v. Calk*, 87 F.4th 164, 183 (2d Cir. 2023)), nor whether the payment of thousands of dollars in bribes in the district or transport of thousands of dollars in bribes through the district is essential, *see Menendez III*, 2024 WL 5103452, at *38 (citing, *e.g.*, *United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987)).  There is, similarly, no substantial question on the essential conduct elements of the other offenses such as wire fraud or extortion, each of which the Court carefully analyzed.  *See Menendez III*, 2024 WL 5103452, at *33-40.

Even if there were any substantial question as to venue on the *substantive* offenses—and, as explained above, there is not—the *conspiracy* offenses would still, standing alone, require the denial of bail pending appeal.  *See Menendez III*, 2024 WL 5103452, at *39-40.  Unlike for the substantive offenses, mere preparatory acts—such as traveling through a district on the way to committing the crime—*are* sufficient for venue for conspiracy counts.  (*Compare, e.g.*, *United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011) (holding evidence of solely preparatory acts insufficient for venue for substantive offense) *and* Menendez Mem. 24 (citing *id.*) *with Tzolov*, 642 F.3d at 320 (holding evidence of preparatory acts sufficient for venue for conspiracy offense) *and Menendez III*, 2024 WL 5103452, at *39 (citing *id.*).)[5]  Given that the sentences imposed on each of the conspiracy offenses would far exceed the duration of any expected appeals, the Court

---

[5] Daibes's claim that the only venue for his charge for obstructing his own federal prosecution was the District of New Jersey (Daibes Mem. 9-10) simply confuses "sufficient" with "necessary," as the Government has previously explained (*see* Dkt. 271 at 15), and in any event fails to grapple with the fact that he was only charged with *conspiracy* to commit this offense, which can be satisfied by any overt act in furtherance of the conspiracy in the Southern District of New York.

can easily deny bail pending appeal based solely on the conspiracy counts, which were properly venued based on, at a minimum, preparatory acts, without even reaching whether any of Menendez's or Daibes's challenges to venue for the substantive counts had any merit.[6]

Finally, Menendez concedes that venue on Counts Seventeen and Eighteen, arising out of his obstruction of a grand jury investigation in this district, was proper (Menendez Mem. 28), which as explained in Section IV, below, compels denial of his motion for bail pending appeal, even assuming that he were to prevail on his venue and all other challenges to all of the other counts.

### D.    Menendez Raises No Substantial Question of Law or Fact as to the Constitutionality of 18 U.S.C. § 219

Menendez's constitutional challenge to Title 18, United States Code, Section 219 (Menendez Mem. 17-21) does not present any substantial question that could possibly entitle him to bail pending appeal.

The mere bringing of a constitutional challenge to a federal statute does not, of course, automatically render the issue "substantial" for purposes of bail pending appeal.  *See, e.g.*, *United States v. Hilliard*, No. 19 Cr. 358 (PKC), 2023 WL 3391016, at *2 (E.D.N.Y. May 11, 2023) (denying bail pending appeal of ruling that statute was facially unconstitutional, reasoning, "The Court finds no reason to believe that the Second Circuit will conclude that the Court erred in its

---

[6] Menendez was sentenced to concurrent sentences of 60 months on Counts One and Four and 132-month sentences on Counts Two and Three.  Daibes was sentenced to concurrent sentences of 84 months on Count One (including a consecutive 24-month sentence for committing that offense while on pretrial release), 84 months on Count Two, and 60 months on Count Four.  Even the least of these sentences far exceeds the expected duration of the appeal.  *See, e.g.*, *United States v. Handler*, No. 23 Cr. 4 (JHR), 2024 WL 5004536, at *9 & n.5 (S.D.N.Y. Dec. 5, 2024) ("The duration of the average criminal appeal in the Second Circuit, from notice of the appeal to resolution, is sixteen months.").

prior decision rejecting many of the same contentions Defendant now resurrects in her post-sentencing motion.").  Instead, that status is reserved for "close" questions that "very well could be decided the other way."  *Randell*, 761 F.2d at 125 (internal quotation marks omitted).  The Court's careful opinion rejecting Menendez's constitutional challenge followed ineluctably from this circuit's precedent, as well as the precedent of the D.C. Circuit and the Third Circuit.  *See United States v. Menendez* ("*Menendez I*"), 720 F. Supp. 3d 301, 314-19 (S.D.N.Y. 2024) (discussing and relying on *United States v. Myers*, 635 F.2d 932 (2d Cir. 1980), *United States v. Rose*, 28 F.3d 181 (D.C. Cir. 1994), and *United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016)).

But even if Menendez's claims that this duly enacted criminal statute was unconstitutional were substantial, or even *meritorious*, they would not entitle him to bail pending appeal.  Only one count upon which the Court imposed sentence (Count Sixteen) relies in any way on Section 219, and that count carried a 24-month concurrent sentence.  Indeed, Menendez does not even argue that convincing the Court of Appeals that Section 219 was unconstitutional would affect the other counts, upon which the Court imposed sentences far longer than the expected duration of the appeals process, in any way.  (*See* Menendez Mem. 25-28.)

## III.    NONE OF THE DEFENDANTS' CLAIMS SEEKING A NEW TRIAL RAISES A SUBSTANTIAL ISSUE OF LAW OR FACT

### A.    Defendants Raise No Substantial Question of Law or Fact Regarding the Potential Exposure of the Jury to Extra-Record Evidence

The defendants each claim, wrongly, that the presence of unredacted matter consisting of "a few phrases buried in thousands of exhibits and many thousands of pages of evidence," *Menendez IV*, 2025 WL 268892, at *6, on the jury's laptop entitles each of them to a new trial. (Menendez Mem. 11-13; Hana Mem. 34-37; Daibes Mem. 15-17.)  But these attempts to relitigate

anew issues exhaustively examined by this Court do not raise any substantial question of law or fact.

As the Court correctly determined, consistent with the published and precedential law of the Second Circuit, the extraordinary unlikelihood that any juror saw any of the improperly redacted phrases rebuts the presumption of prejudice. *See Menendez IV*, 2025 WL 268892, at *6 ("[T]he Court concludes it is extraordinarily unlikely that the jury even became aware of the presence of the extra-record material on the jury laptop. That point bears repeating: it is extraordinarily unlikely that the jury was even aware of the miniscule amount of extra-record material on the laptop." (quotation marks and internal citations omitted)). This fact-bound ruling, to which a reviewing court owes great deference, alone suffices to reject any appeal arguments based on the extra-record evidence. *See, e.g.*, *United States v. Nkansah*, 699 F.3d 743, 751 (2d Cir. 2012) (affirming district court's conclusion, based on circumstantial evidence and without hearing, that no new trial was warranted where "it was highly likely the jury did not view" extra-record evidence and that its contents were harmless), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351, 366 & n.9 (2014); *see also, e.g.*, *United States v. Weiss*, 752 F.2d 777, 783 (2d Cir. 1985) ("[T]he trial court has broad discretion in reviewing the issue of the prejudicial effect of the infiltration of extra-record evidence into the deliberations of the jury."); *see also id.* at 783 n.2 (quoting with approval Ninth Circuit's observation that the trial judge "is uniquely qualified" to assess factors bearing on jury misconduct allegation, and the judge's "conclusions about the effect of the alleged juror misconduct deserves substantial weight." (internal quotation marks omitted)). Even if the defendants were right to dispute the clear law of the Second Circuit regarding the waiver of objections to presenting the jury with known inadmissible portions of

documents (which they are not, *see, e.g.*, *Menendez IV*, 2025 WL 268892, at *4-5), and even if the improperly redacted portions were otherwise prejudicial (which they were not, *see, e.g.*, *Menendez IV*, 2025 WL 268892, at *7-8), a new trial would still not be warranted based on documents the jury almost certainly *never even saw*. *See, e.g.*, *Nkansah*, 699 F.3d at 751; *see also, e.g.*, *United States v. Jefferys*, No. 20-3630, 2022 WL 9627085, at *3 (2d Cir. Oct. 17, 2022) ("Here, such a presumption is rebutted because there was no indication that the jurors considered the evidence."); *United States v. Hansen*, 369 F. App'x 215, 216 (2d Cir. 2010) ("Here, the introduction of extra-record evidence was not prejudicial because there was no indication that the jury actually considered it.").

Even leaving aside the Court's finding that the jury likely never saw the extra-record evidence, however, the defendants' challenges based on its inclusion on the laptop raise no substantial issue of law or fact.  The evidence was, as the Court found, confusing at best without any explanation, and in any event cumulative with abundant properly admitted evidence.  *See Menendez IV*, 2025 WL 268892, at *7-8.  This is shown not only by the trial record, with which the Court is familiar, but also by the actions of the defendants, who did not bother to check these exhibits for the "known inadmissible" material in them, which shows not only that they waived such claims, but also that they were well aware these documents were far from critical to the case. *See id.* at *7.

Indeed, in the case of Hana and Daibes—who cannot invoke the Speech or Debate Clause on Menendez's behalf—there is no cogent argument for how these phrases could have conceivably prejudiced them even if fully read and understood.  Contrary to Hana's argument that he was lulled into not rebutting the extra-record material (Hana Mem. 36), those phrases were entirely

cumulative with properly admitted evidence he chose not to respond to, as the Court correctly ruled. *See Menendez IV*, 2025 WL 268892, at *8. Daibes, for his part, does not so much as hint at what evidence he believes could have prejudiced him, let alone establish that the Court was wrong in its contrary assessment. (*See* Daibes Mem. 15-16.) Instead, Daibes speculates that perhaps other, entirely unknown, extra-record material of an unidentified nature may have been somehow included on the laptop for an unknown reason. (*See id.*) But without a shred of support for that proposition, Daibes no more raises a substantial issue of law or fact than does any defendant who hypothesizes, in any case, that perhaps in some unknown way some extra-record material was made available to the jury. Contrary to Daibes's position (*see id.*), a district court is not required or even permitted to overturn a jury's verdict on the basis of such ungrounded speculation. *See, e.g.*, *United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018) (post-verdict inquiry "is only required when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant" (internal quotation marks and ellipses omitted)); *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) ("A hearing is not held to afford a convicted defendant the opportunity to conduct a fishing expedition." (internal quotation marks omitted)); *United States v. Dunnigan*, No. 23-6353, 2025 WL 4703000, at *4 n.9 (2d Cir. Feb. 12, 2025) ("[The defendant's] claims of juror misconduct are speculative, and thus the district court did not abuse its discretion in dismissing them.").

### B. Menendez Raises No Substantial Question of Law or Fact Regarding the Speech or Debate Clause

Menendez's contention that the Government "transgressed the [Speech or Debate] Clause" (Menendez Mem. 5) so repeatedly and seriously that a new trial is warranted does not raise a

substantial question of law or fact, for multiple reasons.[7]  On the contrary, to the extent preserved, his arguments—which are largely conclusory—are no more than a rehash of certain of the same claims that the Court previously considered and rejected, including in writing, often more than once, and often on multiple grounds.  *See Menendez I*, 720 F. Supp. 3d at 306-14; *United States v. Menendez* ("*Menendez II*"), No. S4 23 Cr. 490 (SHS), 2024 WL 3014205, at *1-2 (S.D.N.Y. June 14, 2024); *Menendez III*, 2024 WL 5103452, at *45-49.  (*See also, e.g.*, Tr. 564 ("I couldn't have been clearer, I believe, in my decision on speech or debate and in the decision denying the motion for a mistrial."); Tr. 4476 ("You just can't press speech or debate as far as you want.  I am receptive to the argument of speech and debate and protections the constitution gives it but not when you go this far."); Tr. 4487 ("[T]he defense has been sandbagging the government consistently in waiting until beyond the last minute to raise these issues. . . . I think I've laid down the guidelines.").)  Repeating certain of the same claims yet again does not entitle Menendez, who bore the burden to establish the coverage of the Speech or Debate Clause at trial, *see, e.g.*, *United States v. Rostenkowski*, 59 F.3d 1291, 1302-03 (D.C. Cir. 1995), chose not to seek reconsideration or an interlocutory appeal of the Court's rulings, and bears the burden on his motion, to bail pending appeal.  That is true for all the reasons the Government previously set forth at some length (*see, e.g.*, Dkt. 611 (Gov't Opp. to Defs. Post-Trial Mots.); Dkt. 180 (Gov't Opp. to Defs. Mots. to Dismiss) at 34-52), and for all of the reasons the Court explained in denying these claims.  Indeed,

---

[7] Daibes's suggestion that he will "likely" purport to join in Menendez's arguments based on the Speech or Debate Clause (Daibes Mem. 8 n.1) is unavailing.  Being convicted of conspiring with and bribing a Senator does not make Daibes into a Senator himself (or a member of Senate staff), and accordingly Daibes cannot invoke the protections of the Speech or Debate Clause.  *See, e.g.*, *Gravel v. United States*, 408 U.S. 606, 622 (1972) (the Speech or Debate Clause is "invocable only by the Senator or by the aide on the Senator's behalf").

in repeating certain of his same claims again, Menendez barely acknowledges this Court's reasoning, much less demonstrates why it should be called into question. The Government accordingly does not repeat in full the same responses it set forth previously, which it incorporates by reference, but briefly describes three reasons why the specific arguments Menendez presses in seeking bail pending appeal do not come close to meeting his burden.

*First*, evidentiary challenges under the Speech or Debate Clause are subject on appeal— like any other evidentiary claim—both to (a) abuse of discretion review and (b) review to determine whether the challenged evidence, even if its admission was an abuse of discretion, was harmless. *See, e.g.*, *United States v. Brewster*, 408 U.S. 501, 512 (1972) ("A member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts."); *United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (declining to dismiss where evidence of legislative acts was presented to the grand jury but was an "insignificant portion of the evidence" and "was not a factor in the issuance of the indictment"); *see Menendez IV*, 2025 WL 268892, at *9 (citing *Brewster* and *Williams*); *see also, e.g.*, *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021) ("We review a district court's evidentiary rulings for abuse of discretion, and such rulings will only be overturned if they are arbitrary and irrational. Even if a decision was manifestly erroneous, we will affirm if the error was harmless." (citation and internal quotation marks omitted)). (*See generally* Dkt. 648 at 47-55; Dkt. 655 at 9-11 (explaining that procedural rules for preserving evidentiary rulings apply to Speech or Debate Clause objections).) It is accordingly not enough for Menendez merely to assert that "the Second Circuit could see [a ruling of this Court] differently." (Menendez Mem. 8.) As an initial matter, merely "could see it differently" is *not* the correct legal standard. But even if it

were the correct legal standard, Menendez would not be entitled to bail pending appeal with respect to any of his Speech or Debate Clause claims unless he demonstrated a substantial question *both* as to the Court's rulings *and* as to the alleged non-harmlessness of those rulings, grounded in the trial record. He does not do so; he barely attempts the latter.

*Second*, while Menendez states, without elaboration, that he "intends to raise [on appeal] the full range of Speech or Debate Clause claims presented at trial" (Menendez Mem. 13)—which plainly does not discharge his burden—he brings only three claims before this Court in making his motion: (1) his recommendation for the U.S. Attorney for the District of New Jersey (*id.* at 5-8); (2) his meetings with Egyptian officials (*id.* 8-10); and (3) his text to his wife, "Tell Will I am going to sign off on this" (*id.* at 10-11). None entitles him to bail pending appeal.[8]

The last of these is frivolous. It concerns, plainly, a statement of a future action, as this Court explained (repeatedly). *See, e.g.*, *Menendez III*, 2024 WL 5103452, at *46 and n.30; (*see also* Tr. 566 (Court: "Promises by a member to perform an act in the future are not legislative acts. Tell Will I am going to sign off this sale to Egypt today is a promise." (internal quotation marks omitted)).) Menendez does not appear to disagree. Instead, he appears to argue that because he actually did what he said he would do, the evidence falls within the Speech or Debate Clause. (*See* Menendez Mem. 10.) That proposition flies in the face of decades of precedent, and if

---

[8] These three claims, even if meritorious, do not affect in any way multiple of his counts of conviction, specifically, Counts Nine, Ten, Seventeen, and Eighteen, and Menendez would therefore not be entitled to bail pending appeal even if these claims had merit, which they do not. Indeed, even if the Court were to assume that *every* Speech or Debate Clause claim Menendez raised during trial had merit (and they do not, nor does Menendez raise all such claims in his motion), Counts Nine and Ten, concerning the New Jersey Attorney General's Office, and Counts Seventeen and Eighteen, for conspiracy to obstruct justice and obstruction of justice, would remain unaffected.

21

accepted, would result in the very thing that the Supreme Court has cautioned against, *i.e.*, turn "Members of Congress" into "super-citizens, immune from criminal responsibility." *Brewster*, 408 U.S. at 516; *see also, e.g.*, *United States v. Renzi*, 769 F.3d 731, 736 (9th Cir. 2014) ("Congressmen may write the law, but they are not above the law."), *cert. denied*, 576 U.S. 1054 (2015). Indeed, were the proposition for which Menendez advocates adopted, a legislator could insulate himself against prosecution simply by following through on a corrupt agreement or promise. In short, the *more* successful the bribery scheme, the *less* the corrupt legislator could be held accountable. For very good reason, that absurd proposition is not the law. *Cf., e.g.*, *Williams*, 644 F.2d at 952 (rejecting argument that the Speech or Debate Clause barred introduction of a video of a defendant's "discussion of a proposed immigration bill with the undercover agent"); *United States v Renzi*, 651 F.3d 1012, 1022, 1025 (9th Cir. 2011) (rejecting defendant Representative's argument "that the district court drew too fine a line between present and future conduct" and "that his prosecution must be barred to avoid impugning later 'legislative acts'"; "If [the defendant's] unprotected negotiations are sufficiently cloaked under a broader category of protected legislative activity, i.e., an investigation, then the Clause would fall like an iron curtain to preclude prosecution for the otherwise unprotected activity as well."), *cert. denied*, 565 U.S. 1157 (2012).[9]

As to Menendez's other two claims, to the extent they mirror his prior challenges, each is without merit, and to the extent they rest on particular evidence introduced at trial, each is also at

___

[9] The Government also respectfully maintains that Menendez's claim concerning this text message fails because holds are not legislative acts, for the reasons set forth in its memorandum in opposition to the defendants' motions to dismiss (Dkt. 180 at 37-40). This Court disagreed, *see Menendez I*, 720 F. Supp. 3d at 312, and it need not revisit that decision to deny Menendez's motion.

least partially unpreserved.  The Court correctly held, based on the text of the Constitution and the language of Supreme Court precedent, that Menendez's activities before Philip Sellinger's nomination as U.S. Attorney (as distinct from Menendez's vote once Sellinger was nominated, which was not presented to the jury) were not part of his "Advice and Consent" under the Constitution and thus not protected legislative acts.  *See Menendez I*, 720 F. Supp. 3d at 309-10 (citing *United States v. Le Baron*, 60 U.S. 73, 78 (1856)).

Moreover, while Menendez appears to suggest that the Government introduced into evidence his actual recommendation to the President as to whom should be nominated for the position of U.S. Attorney (Menendez Mem. 10-11), the Government did no such thing.  Rather, the Government introduced evidence concerning certain meetings and communications Menendez had regarding whom to recommend for the position of U.S. Attorney, before the nomination was made, including what Menendez calls his pre-recommendation "vetting" of Sellinger for that position.  (Menendez Mem. 8 n.2.)  However, as the Government noted in its opposition to Menendez's motion for acquittal or a new trial (Dkt. 611 at 99 n.23), Menendez did not object to all such relevant evidence, including at least meaningful portions of Michael Soliman's testimony.  Any claim that now rests on that testimony accordingly is unpreserved, and subject to review on appeal for plain error alone.

This is no mere technicality.  Rather, to succeed in such a claim, Menendez will have to show: "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United State v. Marcus*, 560 U.S. 258, 262

(2010) (internal quotation marks omitted).  In short, Menendez must show far more than that this Court abused its discretion (although it did not).  Indeed, the second of these requirements— without more—renders any unpreserved Speech or Debate Clause claim an insufficient basis for bail pending appeal, because "[a]n error is 'plain' if it is so egregious and obvious that a trial judge and prosecutor would be derelict in permitting it in a trial held today."  *United States v. Bastian*, 770 F.3d 212, 220 (2d Cir. 2014) (internal quotation marks omitted).  "[T]he defendant has the burden of establishing each of the four requirements for plain-error relief."  *Greer v. United States*, 593 U.S. 503, 508 (2021); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009) ("Meeting all four prongs" of the plain error standard "is difficult, as it should be.").  Yet as Menendez appears to acknowledge, this Court's rulings under the Speech or Debate Clause were anything but "egregious" or "obvious" errors, even if one assumes that they were errors.  (*See, e.g.*, Menendez Mem. 5 ("these are close questions over which courts and scholars have differed"); *id.* at 8 ("the Second Circuit could see it differently"); *id.* at 9 (the Court's "reasoning is at least reasonably debatable"); *id.* at 10 ("The Second Circuit may well . . . hold that Senator Menendez's meetings are protected."); *id.* ("reasonable jurists could disagree about where this Court drew the line").) Evidence introduced consistent with and following those rulings, to which Menendez did not timely object, therefore cannot possibly have been "obvious[ly]" inadmissible.

To be sure, as the Government noted at trial (*see* Tr. 4479, 4480), to the extent that Menendez timely raised a particular claim or objection, he was not required to do so repeatedly. *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").  But that principle did not relieve Menendez of the obligation to object timely and

properly to evidence not encompassed within a prior claim or objection. *See* Fed. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context[.]"); *United States v. Williams*, 930 F.3d 44, 64 (2d Cir. 2019) ("This Court ordinarily applies Rule 103(a) strictly, and where a party made no objection that clearly stated the specific ground now asserted on appeal, a claim of error is unavailing." (internal quotation marks omitted; alteration incorporated)).

Similarly, Menendez's challenge to the limited evidence put forward regarding meetings with Egyptian officials is both without merit and, to the extent it rests on particular evidence, also at least in part unpreserved. The Court correctly, based on Second Circuit and Supreme Court precedent, allowed the Government to present evidence of meetings that were not legislative factfinding but the implementation of a corrupt bargain. *See Menendez I*, 720 F. Supp. 3d at 312-313 (citing, *e.g.*, *Gravel*, 408 U.S. at 626, *Myers*, 692 F.2d 823, 860 (2d Cir. 1982)).

Moreover, as the Government explained in its opposition to Menendez's motion for acquittal or a new trial (Dkt. 611 at 94-95 n.19; *id.* at 97 n.20), Menendez did not object to at least substantial portions of evidence concerning his Egypt-related conduct. On the contrary, his counsel expressly agreed with the Court that "the fact of the matter is all discussions that this staffer [Sarah Arkin] had concerning Egypt are not, do not implicate speech or debate." (Tr. 4475.) That concession is unsurprising, since Menendez himself argued in his opening statement in that he had a "consistent position" with respect to Egypt, claiming that he took "Egypt to task" and was "telling them they need to do better on human rights" (Tr. 94-95; *see also* Tr. 96-97). And this

25

assertion was plainly not merely about Menendez's public statements.  (*See* Tr. 95 ("[H]e's having face-to-face meetings in Egypt with President El-Sisi . . . And what does he do?  He takes President El-Sisi, the military dictator, to task and he tells him you need to do better on human rights.").  Menendez, in short, brought before the jury the very subject that he now appears to claim should have been kept out of the trial.

Menendez did the same thing in cross-examination of Arkin, repeatedly.  (*See, e.g.*, Tr. 4684 (Defense counsel: "To the contrary, he raised -- when Egypt, General Shawky mentioned that, Senator Menendez raised in that meeting human rights concerns with General Shawky, right?"  Arkin: "In that meeting he did raise human rights concerns."); *see also* Tr. 4678-79, 4685-91 (defense counsel repeatedly asking about meetings).)  In short, Menendez's sweeping claim now that all evidence, in any form, concerning his "meetings with Egyptian officials" (Menendez Mem. 8) was introduced in violation of his rights is at the very least unpreserved (if not fully waived under the "invited error" doctrine, *see, e.g.*, *Bastian*, 770 F.3d at 218, given his arguments in opening statement, concession at trial, and cross-examination).  Nor is the fact that Menendez chose himself to offer such argument or evidence a violation of Speech or Debate Clause.  *See, e.g.*, *Myers*, 635 F.2d at 942 ("The protection against being 'questioned' outside of Congress prevents the use of legislative acts against a Member.  It does not prevent him from offering such acts in his own defense, even though he thereby subjects himself to cross-examination."); *see generally United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) ("[I]t is fairly obvious that on this appeal [the defendant] is attempting to evade the consequences of an unsuccessful tactical decision.  Under these circumstances, we have no difficulty concluding that [he] has waived appellate review of this evidentiary claim.").

*Third*, and in any event, even to the extent that Menendez's evidentiary claims were deemed to be both fully preserved and had facial legal appeal (notwithstanding the Court's thorough decisions), they fail on the record at trial. Indeed, they rest on serious distortions of or material omissions concerning the record—but the record is what will control on appeal, not Menendez's conclusory characterizations of it. Among other things, Menendez's suggestion that the Government introduced evidence of his official "vetting" of Sellinger (Menendez Mem. 8 n.2) omits that Soliman was not a member Menendez's Senate staff, or a public official at all, but rather was an outside political consultant employed by a private firm. (Tr. 3860-62.) As the Government explained in its opposition to Menendez's motion for acquittal or a new trial (Dkt. 611 at 100-01), Menendez cites no case, and the Government is unaware of any, in support of the proposition that a Senator may choose to act not through legislative staff—who, among other things, are subject to Senate ethics rules and discipline, as described in the Senate Ethics Manual, *see* Select Comm. On Ethics, U.S. Senate, Senate Ethics Manual (2003 ed.), *available* at https://www.ethics.senate.gov/downloads/pdffiles/manual.pdf—but rather through an outside political consultant with a private firm, and then claim protection under the Speech or Debate Clause. *See, e.g.*, *United States v. Menendez*, 132 F. Supp. 3d 610, 624 (D.N.J. 2015) ("Nothing . . . in *Gravel* or later cases suggests that the Speech or Debate Clause protects a *former* aide who has left the employment of a Member." (emphasis in original)), *aff'd*, 831 F.3d 155 (3d Cir. 2016), *cert. denied*, 580 U.S. 1198 (2017).

Moreover, contrary to the conclusory framing of Menendez's claim, Soliman had no role in advising or assisting Menendez with respect to the merits of candidates or the policies they might advance. Rather, his job concerned "how the candidate would be received politically and

27

in the press." (Tr. 3866.)  And indeed, Soliman testified that, in this role, he undertook, at Menendez's direction or with his assent, actions such as placing stories with the press (Tr. 3881, 3897-99), and engaged in discussions about what to tell Sellinger as to why he was not being recommended (Tr. 3905.  Nothing in Soliman's testimony—which Menendez does not cite or describe—could plausibly be deemed a protected legislative act.  Instead, it falls squarely into the category of activities the Supreme Court has held are "political in nature rather than legislative" and thus not entitled to "the protection afforded by the Speech or Debate Clause." *Brewster*, 408 U.S. at 512.

So too with the testimony of Sellinger himself.  Menendez does not cite or describe Sellinger's testimony concerning his meeting with Menendez, which plainly did not involve actual "vetting" by Menendez apart from whether Sellinger was likely to be recused from Daibes's pending criminal case.  That bears no resemblance to protected legislative information gathering. *Cf. Menendez*, 831 F.3d at 171 (rejecting argument that because communications with the Executive Branch could have been motivated by "policy concerns," they were protected, because the actual communications were at least predominantly made "with an eye toward Dr. Melgen's specific situation"); *cert. denied*, 580 U.S. 1198 (2017); *United States v. McDade*, 28 F.3d 283, 300 (3d Cir. 1994) (drawing distinction between letter advocating on behalf of specific company and letter that discussed a "broader policy question"), *cert. denied*, 514 U.S. 1003 (1995); *see generally United States v. Johnson*, 383 U.S. 169, 172 (1966) (rejecting claim that the Speech or Debate Clause covers corrupt "attempt to influence the Department of Justice").

So too with respect to Menendez's meetings with Egyptian officials.  Arkin's pertinent testimony on direct examination concerned the degree to which Menendez changed his *public*

stance, and, in particular, why he said he would not sign a particular public letter.  (*See* Tr. 4512-14.)  As the Court previously and properly recognized, "This evidence does not implicate the Speech or Debate Clause in any manner whatsoever and Menendez offers no authority to suggest otherwise."  *Menendez III*, 2024 WL 5103452, at *47.  And again, at trial, Menendez's counsel not only did not object, but also appeared to agree.  (*See* Tr. 4339 (Government: "We've talked with the defense at length about this. . . . Ms. Arkin is expected to testify about conversations with Mr. Menendez regarding his work as a senator, but not holds, not legislation.  We're steering far clear of that."); Tr. 4484 (Court: "Press releases are fair game and you [defense counsel], in fact, say you want to introduce some." Defense counsel: "Correct."); Tr. 4485 (Court: "It seems to me that the context, which, again, is my focus on these things, is it's concerning a press release.  Fair game vis-à-vis speech and debate."); Tr. 4487 (Court: "[I]t does seem to me with the representation that she's not going to be talking about arms and no question will elicit anything about arms, I'm going to allow it to proceed. . . . I think I've laid down the guidelines.  You have the statement that there's not going to be any testimony about arms. Let's proceed on that basis."); *see also* Dkt. 479 (Government letter describing history of defense objections and the parties conferring); Tr. 4489 (Court acknowledging receipt of letter prior to ruling).)

Nor does Menendez explain how the limited evidence of his meetings actually presented at trial (which was presented through Arkin's testimony and documentary evidence, not all of which Menendez objected to (*see* Dkt. 611 at 96-97))—not his characterization of it—should be deemed protected "information-gathering" (Menendez Mem. 8, 10).  The evidence did not include a single question Menendez asked or reference a particular arms sale or any other particular legislative matter.  *See Menendez III*, 2024 WL 5103452, at *47 ("the testimony regarding the

March 13 meeting [which is the only meeting Menendez identified in his post-trial motions] was that everything said by Menendez at that meeting had been 'said before publicly.' (Tr. 4689.).");  *see also Menendez I*, 720 F. Supp. 3d at 313-14.[10]  Menendez is not entitled bail pending appeal on the ground that the Government introduced evidence that it did not introduce.[11]

### C.    Hana Raises No Substantial Question of Law or Fact Regarding the Government's Presentation of Documentary Evidence

Hana's complaints that it was supposedly unfair and unconstitutional for the Government to present voluminous documentary evidence against him (Hana Mem. 25-34) do not raise a substantial question of law or fact, for the reasons set forth in the Court's thorough opinion rejecting each of those claims.  *See Menendez III*, 2024 WL 5103452, at *40-45.  Evidentiary rulings are reviewed deferentially on appeal, *see, e.g.*, *Gatto*, 986 F.3d at 117, and here the Court's rulings were manifestly correct.

The Court has already rejected each of Hana's arguments on the basis of well-established law.  Hana's claim that the summary charts were improper because they (accurately) summarized evidence the Government chose and did not summarize additional evidence Hana believed provided context (Hana Mem. 27-28) has no merit, based on the Second Circuit's clear law.  *See, e.g.*, *Menendez III*, 2024 WL 5103452, at *42 (citing, *e.g.*, *United States v. Ho*, 984 F.3d 191, 209-

---

[10] The Court also rejected Menendez's prior claim that the information he provided *to* such officials was protected legislative conduct.  *Menendez I*, 720 F. Supp. 3d at 313.  Menendez does not appear to re-raise that claim in his motion.

[11] Menendez also appears to repeat his same legally baseless argument that the Second Circuit allegedly suggested in *United States v. Biaggi* 853 F.2d 89 (2d Cir. 1988), that the content of a meeting or communication is irrelevant; rather, if it "could bear on a legislative act," regardless of whether it did, it is categorically immune (Menendez Mem. 10).  That radical position is demonstrably, and dangerously, wrong.  (*See* Dkt. 611 at 87-89); *see also Menendez III*, 2024 WL 5103452, at *47.

10 (2d Cir. 2020)).  Hana's claims that the Government urged unreasonable inferences (Hana Mem. 28-30) are likewise contradicted by the record, as this Court recognized, and are also unpreserved.  *See Menendez III*, 2024 WL 5103452, at *43.[12]  Hana's complaints about cross-examination (Hana Mem. 30-34), similarly, do not address, let alone escape, the binding Second Circuit precedent supporting the limitation of cross-examination to the scope of direct examination, let alone explain why his demand to "hijack the government's case to present [his] own exculpatory evidence" presents any substantial issue of law or fact.  *Menendez III*, 2024 WL 5103452, at *44; *see also id.* at *43 (citing, *e.g.*, *United States v. Koskerides*, 877 F.2d 1129, 1136-37 (2d Cir. 1989)).

Moreover, even if there had been any error related to the mode of presentation of the documentary evidence, any such error would certainly have been harmless given, among other things, the extensive properly admitted evidence.  *See, e.g.*, *United States v. Rom*, 528 F. App'x 24, 29 (2d Cir. 2013) (holding any error in use of summary chart harmless in light of factors including evidence supporting verdict, lack of error in chart, and lack of indication that the jury was confused or unable to comprehend the methodology).  This alone warrants the denial of bail pending appeal on this ground.  *See, e.g.*, *United States v. Singh*, No. 21 Cr. 397 (CBA), 2022 WL 16855789, at *2 (E.D.N.Y. Nov. 10, 2022) (denying bail pending appeal; "Even if it were determined that it was a substantial question and the Court of Appeals would rule that the testimony should not have been admitted, [the defendant] has failed to show that the admission of the prior similar act was so integral to the merits of the conviction that it would require reversal of the

---

[12] Hana's attempt to liken one of the Government's summary witnesses to the very different concept of an "overview witness" (Hana Mem. 28) presents no substantial issue and indeed is entirely inapposite, as this Court recognized.  *Menendez III*, 2024 WL 5103452, at *45.

conviction or a new trial." (internal quotation marks omitted)); *United States v. Sahachaisere*, No. 13 Cr. 452 (ENV), 2018 WL 3489555, at *2 (E.D.N.Y. July 19, 2018) (denying bail pending appeal; "the evidence presented in the government's case was voluminous, comprehensive[,] and overwhelmingly incriminating" (internal quotation marks omitted)).

### D.    Hana Raises No Substantial Question of Law or Fact Regarding the Preclusion of Irrelevant Testimony Regarding his Business

Hana's objection to the Court's evidentiary ruling preventing him from introducing specific evidence of IS EG Halal's operations after 2019 (Hana Mem. 21-25), which Hana did not even bother to raise in his lengthy post-trial Rule 33 motion, presents no substantial question of law or fact. Even leaving aside the deferential standard of review on appeal of this Court's evidentiary determination, *see, e.g.*, *Gatto*, 986 F.3d at 117, this Court's ruling was manifestly correct on the merits.

To the extent that evidence about Hana's business was relevant, it was permitted. This Court correctly permitted Hana to present evidence about IS EG Halal's operations through 2019—*i.e.*, "after the awarding of the monopoly contract in April of 2019 and the McKinney phone call," and "a few months after that, to account for the . . . lack of disruptions in the market"—and precluded testimony about its later operations, because "I don't think it's relevant that IS EG Halal is a thriving business currently, if it is." (Tr. 6061.) How IS EG Halal operated *after* it received its monopoly and *after* Menendez called McKinney to advise and pressure him to stop "interfering" with Egypt's grant of a monopoly to IS EG Halal simply does not inform whether or not Hana entered into a corrupt agreement with Menendez—a point that Hana does not meaningfully dispute. *See, e.g.*, *United States v. Scopo*, 861 F.2d 339, 345 (2d Cir. 1988) (district courts have "wide discretion to exclude proffered evidence that is collateral, rather than material,

to the issues in the case"). Instead, Hana argues such evidence was necessary to respond to certain Government arguments about whether IS EG Halal generally was a legitimate business. (Hana Mem. 23-25.) However, the Government never argued that IS EG Halal was not a real business at all, let alone in the post-2019 time period. In any event, the proffered evidence did not rebut, or indeed pertain in any way to, the undisputed point that the Government did make about IS EG Halal's operations—which was that the company (and Hana) had no prior experience with halal certification *before* the monopoly was granted and *before* Menendez called McKinney.[13]

In addition, although the Court excluded certain IS EG Halal witness testimony, Hana still was able to offer substantial evidence regarding IS EG Halal and Hana's successful business operations *after* 2019. (*See* Tr. 6177 (Silvarredonda, an IS EG international account manager, testifying about setting up international offices, including in India, Brazil, New Zealand, and Australia); Tr. 6269-70 (Sayed, senior veterinarian for General Organization for Veterinary Services and, since October 2021, the supervisor of IS EG offices in South America, in Brazil, Uruguay, Paraguay, and Argentina, testifying about his responsibilities for technical aspects of IS EG Halal's halal slaughter, overseeing authorization of documents to make sure they conform to sanitary and technical specifications, and conducting field visits and issuing certifications of validity side-by-side with sheikhs); Tr. 6289 (Sayed testifying about post-2019 relationship between IS EG Halal and Egyptian entity); Tr. 6123-24 (Gannaway, defense summary witness, testifying about 2021 cooperation agreement between IS EG Halal and Egyptian government, admitted as defense exhibits Hana 191 and 191-T); *see also* Tr. 950 (Hanna, assistant to Hana,

---

[13] Hana's reference to arguments that the Government made at *sentencing* (Hana Mem. 24-25)— to which Hana was not precluded from presenting responsive evidence, if he had any—is irrelevant to whether certain evidence was properly excluded at *trial*.

testifying that Hana is also the chief executive officer of EG Trade, an international trading company).)  And in his closing arguments Hana's counsel was able to rely on substantial admitted evidence to argue that "IS EG Halal was a very good choice," because Hana worked hard and developed a successful business.  (*See* Tr. 6793-94 (Defense counsel: "Will, as even Jose Uribe testified, worked very hard to get up to speed with regard to halal and did it, eventually running an operation that, as the testimony made clear, did not result in anything like the market disruptions that McKinney and Tate had feared.  . . .  By May 14, less than two weeks after the contract went into effect, the system was apparently working well.  . . .  And even Mr. McKinney had to acknowledge that there was a $28 million increase in U.S. beef exports to Egypt from 2018, before IS EG, to 2022.").)

Thus, even if there had been error in precluding any IS EG Halal witness testimony, which there was not, it would be harmless, given the strength of the evidence of a *quid pro quo* against Hana (*see supra* Section II.B); that the proffered testimony touched on, at most, an ancillary question in the case; and, as this Court recognized in denying Hana's reconsideration motion (Tr. 6230), the excluded evidence would have been cumulative of other admitted evidence regarding IS EG Halal's and Hana's successful business operations *after* 2019.

### E.    Daibes Raises No Substantial Question of Law or Fact Regarding the Preclusion of Irrelevant Specific Act Evidence Concerning His Propensity to Give Gifts

Daibes's objection to the Court's well-considered evidentiary ruling preventing him from introducing specific instances of his giving of gifts (Daibes Mem. 10-13) presents no substantial question of law or fact.  Again, leaving aside the highly deferential appellate review of evidentiary rulings of this sort, *see, e.g.*, *Gatto*, 986 F.3d at 117, the Court's rulings excluding this evidence were correct on the merits.  Prior specific instances of gift giving are barred by the plain terms of

Rule 405(b), as the Court correctly held on the basis of the Second Circuit's binding precedent. *See Menendez III*, 2024 WL 5103452, at *49 (citing *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997)). Daibes's attempts to bootstrap the Government's fair comment on the trial evidence in summation, or his own requested jury instruction providing detail on a defense theory, into a basis to admit otherwise inadmissible evidence (Daibes Mem. 12)—neither of which were preserved by a contemporaneous objection—have also already been considered and correctly rejected based on the law. *See Menendez III*, 2024 WL 5103452, at *50-52 (citing *United States v. Briggs*, 457 F.2d 908, 912 (2d Cir. 1972)). And in a trial based on truly overwhelming evidence of corrupt *quid pro quos*, even if there had been any error in precluding specific instances of Daibes's gift-giving, such error would certainly have been harmless.

IV.    **EVEN IF SOME—OR, IN MENENDEZ'S CASE, ALL—OF THE DEFENDANTS' CLAIMS RAISED A SUBSTANTIAL ISSUE OF LAW OR FACT, THE DEFENDANTS WOULD STILL NOT BE ENTITLED TO BAIL PENDING APPEAL**

   A.    **Menendez Would Not Be Entitled to Bail Pending Appeal Even if Each of His Appellate Claims Was Meritorious**

Menendez fails to carry his burden in seeking bail pending appeal, because none of the claims of error he asserts—even if any, or even *all* of them, were substantial or even meritorious—would be likely to result in a new trial on "all counts on which imprisonment has been imposed," *Randell*, 761 F.2d at 125. To be sure, as set forth in Sections II and III, *supra*, none of his claims of error raises a substantial issue of law or fact likely to result in reversal of *any* count, but the Court can deny Menendez's motion for bail pending appeal even if it assumed *all* of them raised substantial issues. Despite spending over twenty pages cataloguing asserted errors, Menendez

does not identify any that could possibly invalidate his convictions for obstruction of the grand jury investigation in this district, even assuming that all of his appellate claims were meritorious.[14]

Counts Seventeen and Eighteen convicted Menendez of conspiring to obstruct, and obstructing, the investigation of a grand jury in the Southern District of New York. Menendez concedes, as he must, that these counts are properly venued. (Menendez Mem. 28.) They also, of course, do not involve any evidence even arguably protected by the Speech or Debate Clause, do not rely on the constitutionality of Section 219, and do not rely on the definition of an official act under *McDonnell*, and thus would stand even if *every* claim of error Menendez now presses were meritorious.

Menendez's only real argument that his Speech or Debate or *McDonnell* claims of error could possibly have affected the obstruction counts is the patently incorrect claim that "[a] jury could only find that the Senator tried to cover up a bribe if it first found that he took a bribe in the first place." (Menendez Mem. 27-28.) This course is wrong as a matter of both law and fact (and common sense). No element of Title 18, United States Code, Section 1503—the count of conviction in Count Eighteen and the object of the conspiracy in Count Seventeen—relies on any other crime having been committed, whether by the defendant or anyone else. Even if Menendez had factually not been guilty of corruption or foreign influence offenses, he could still readily have been convicted for attempting to obstruct the grand jury's investigation. Far from being impossible, such scenarios are relatively common. *See, e.g.*, *United States v. Baldeo*, No. 13 Cr.

---

[14] Indeed, since Menendez filed his motion, the Second Circuit in the published *Mangano* decision affirmed the sufficiency of the evidence of an obstruction of justice conviction, further showing that—as Menendez does not contest—there is no valid challenge to the obstruction convictions in this case. *See Mangano*, 2025 WL 479623, at *24-26.

125 (PAC) (S.D.N.Y. Mar. 5, 2015) (ECF No. 161) (denying bail pending appeal for defendant acquitted of fraud but convicted of obstruction of investigation of fraud), *bail pending appeal denied*, No. 15-286 (2d Cir. Mar. 17, 2015), *conviction aff'd*, 615 F. App'x 26 (2d Cir. 2015). Indeed, the Second Circuit has repeatedly affirmed convictions for obstructing investigations of corruption offenses, even when vacating the convictions on some or all of the underlying corruption offenses. *See, e.g.*, *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 152 (2d Cir. 2008) (affirming conviction on obstruction of justice charge even while reversing convictions on all of the underlying corruption charges); *Mangano*, 2025 WL 479623, at *26 (affirming conviction on conspiracy to obstruct justice and obstruction of justice counts even while reversing, on sufficiency grounds, convictions on certain of the underlying corruption offenses). Moreover, apart from his constitutional challenge to Section 219 and his sufficiency challenge to a handful (though not remotely all) of the official acts, Menendez does not even claim he is factually innocent of the charges, just that the offense was allegedly committed in the wrong location, or that evidentiary errors entitle him to a new trial, rendering each of these errors even less relevant to the obstruction charges.[15]

---

[15] Menendez's only other argument for how his claims of error could possibly affect the obstruction of justice counts relies on the deeply misleading and selective quotation of the Government's remark in summation that the bribery counts were the "building block" for many (but not all) of the other charges. That remark obviously referred to the fact that the *quid pro quo* elements of the other corruption offenses were defined with respect to the bribery elements that the Government was about to analyze with respect to the first two bribery counts it discussed, not that other counts related to other parts of the scheme stood or fell *factually* on those counts, and certainly not, as Menendez claims, that *all* of the other counts related to—let alone depended on—the bribery counts. (*Compare* Menendez Mem. 27 ("As the government put it to the jury, the substantive bribery charges were the 'building block[s]' for *everything else*." (emphasis added)) *with* Tr. 6373 ("I'm going to spend some of the most time on these two counts because, *in a way*, they're the building block of *most of the rest* of the other counts." (emphasis added)).

Where asserted appellate issues directly implicate only some—but not all—of the counts on which sentence was imposed, it is common to deny bail pending appeal without deciding whether those issues are substantial, on the grounds that the defendant cannot carry his burden with naked or unpersuasive assertions of spillover prejudice.  Indeed, in *United States v. Randell*, after articulating the standard for a substantial question, the Second Circuit held that it was "not required to decide whether" the asserted appeal issues were substantial, since they did not directly challenge the conviction on five tax evasion counts.  *See* 761 F.2d at 125 ("[W]e are not required to decide whether these questions are substantial, since they pose no challenge to petitioner's conviction on the five tax evasion counts.").  The defendant in that case argued that the appeal issues could cause spillover prejudice as to the remaining counts, but the Second Circuit rejected this argument as insufficient to carry the heavy burden for bail pending appeal.  *See id.* at 125-26 ("Petitioner's only claim with respect to the tax counts is that the jury could have been affected by the 'spillover' from the court's other alleged errors.  We do not believe that this 'spillover' argument is sufficient to satisfy the burden of persuasion that Fed. R. App. P. 9(c), as amended by § 210 of the Bail Reform Act of 1984, places upon petitioner."); *United States v. Sabbeth*, 125 F. Supp. 2d 33, 43-44 (E.D.N.Y. 2000) (denying bail pending appeal, even where defendant raised substantial issue as to certain counts, because other counts upon which the sentence would "far exceed the likely time required to decide the appeal" did not raise substantial questions), *bail pending appeal denied*, No. 00-1586 (2d. Cir. Jan. 23, 2001).  This rule applies even when there is some logical relationship between the challenged counts and the unchallenged counts, such as between substantive counts and corresponding conspiracy counts.  *See, e.g.*, *United States v. Griffith*, No. 99 Cr. 786 (HB), 2001 WL 91389, at *1 (S.D.N.Y. Jan. 25, 2001) (denying bail

pending appeal, reasoning, "[a]ssuming for the sake of argument that [the defendant's] appeal raises questions which are likely to result in reversal or an order for a new trial relative to his convictions on the substantive counts of the indictment, this Court is firmly convinced that there was overwhelming evidence introduced at trial to convict [the defendant] on the conspiracy charge.").[16]

Indeed, and directly relevant here, even where a court assumes the possibility of a meritorious challenge to the underlying corruption convictions, it is still appropriate—indeed, required—to deny bail pending appeal based on the obstruction of justice charges where the challenges assumed *arguendo* to be meritorious do not bear on those charges. *See, e.g.*, *United States v. Mangano*, No. 16 Cr. 540 (JMA), 2022 WL 2872670, at *5 (E.D.N.Y. July 20, 2022) (denying bail pending appeal, reasoning, "even assuming *arguendo* that Mangano's 'advice' argument raises a substantial question concerning all four bribery counts, as explained *infra*, Mangano still has not raised a substantial question concerning his obstruction of justice conviction" (underlining converted to italics)), *bail pending appeal denied*, No. 22-861 (2d Cir. Sept. 13, 2022); *see also Mangano*, 2025 WL 479623, at *26 (reversing certain underlying corruption convictions but affirming obstruction of justice conviction).

---

[16] For that reason, Menendez is wrong to claim that the fact that the indictment charged, and the Government argued, an overarching conspiracy means that any error as to one part of the conspiracy would necessarily invalidate all of the corruption conspiracy and substantive counts as to all parts of the overarching scheme. (Menendez Mem. 26.) To the contrary, a substantial issue calling into question a substantive count does not necessarily raise a substantial issue even to the corresponding conspiracy count. *See, e.g.*, *Griffith*, 2001 WL 91389, at *1. But in any event, as explained in this section, even the vacatur of *all* of the corruption and foreign influence conspiracy and substantive counts would not invalidate the obstruction counts, which is all the Court needs to decide to deny bail pending appeal.

Menendez's brief suggestion that—should he prevail on all of his challenges to other counts—the obstruction of justice charges would not result in a sentence that would exceed the expected duration of the appeals process (Menendez Mem. 28) is both conclusory (and thus not sufficient to carry his burden) and entirely unpersuasive.  Even if Menendez prevailed on every issue he raises in his motion such that "only those two counts survived" (Menendez Mem. 28), which as discussed above, he will not, the sentence on Counts Seventeen and Eighteen alone would far exceed the expected duration of the appeal.  The Court sentenced Menendez to 60 months on Count Seventeen and 120 months on Count Eighteen.  It is highly likely that, at any resentencing following the hypothetical vacatur on other counts, the Court would impose the same sentences on the obstruction of justice offenses given the "extreme seriousness" of the underlying conduct.  (*See* Menendez Sent'g Tr. 54 ("I believe the sentence is appropriate given the seriousness, extreme seriousness, of the numerous offenses that this jury found the defendant guilty of and the need for punishment and deterrence.").)  This is particularly the case given that the challenges he raises do not establish Menendez's actual innocence of the corruption charges and indeed many are to venue alone, which is particularly irrelevant when considering the seriousness of the defendant's relevant conduct.  *See, e.g.*, *United States v. Lasher*, No. S5 12 Cr. 868 (NRB), 2015 WL 7769528, at *3 (S.D.N.Y. Nov. 30, 2015) (denying bail pending appeal where certain charges were not challenged, remarking that based on the court's familiarity with case and trial, the court would have imposed the same sentence even in the absence of the challenged charges), *bail pending appeal denied*, No. 15-2915 (2d Cir. Dec. 3, 2015); *Purcell v. United States*, Nos. 22 Civ. 4802 (DLC), 18 Cr. 81 (DLC), 2023 WL 4763957, at *3 (S.D.N.Y. July 26, 2023) (noting imposition of same sentence on remaining counts following the reversal by the Second Circuit of one count for lack of venue);

40

*cf., e.g.*, *United States v. Carrano*, No. 17 Cr. 460 (SHS), 2018 WL 6991040, at *1 (S.D.N.Y. Dec. 28, 2018) (this Court denying bail pending appeal where Court would impose the same sentence if a Sentencing Guidelines challenge was successful), *bail pending appeal denied*, No. 18-3781 (2d Cir. Jan. 9, 2019).

Moreover, although any recalculation of Menendez's Sentencing Guidelines range would not prevent the Court from imposing the same sentence on Count Seventeen and Count Eighteen even in the event of a successful appeal, *see, e.g.*, *Carrano*, 2018 WL 6991040, at *1, the Sentencing Guidelines range for Menendez's obstruction of justice charges would be far above the duration of any appeals process even on favorable assumptions to Menendez. Even leaving aside Menendez's culpability for the underlying corruption offenses, the Sentencing Guidelines range for the obstruction of justice offenses would still be very high, because his obstruction of the investigation of his *co-defendants'* offenses (including his wife's) would produce a statutory cross-reference, under U.S.S.G. § 2J1.2(c), to the underlying corruption offenses, which as the Court is aware have very high offense levels for each of the codefendants. Indeed, even if Menendez were in fact *innocent* of all of the other offenses—which he is not, and which his appeal would never establish even if he prevailed on each legal issue he raises now—the obstruction of the investigation solely into *Nadine Menendez's* conduct would produce a Guidelines range at or near the ten-year statutory maximum on Count Eighteen, well in excess of the five-year maximum on Count Seventeen, and far beyond the expected duration of the appeals process.[17]  Thus, to the

---

[17] The Government's present conservative estimate of the Guidelines range in that scenario—again, assuming appellate rulings so favorable to Menendez that *none* of Menendez's own corruption or foreign influence conduct was relevant conduct, which the Government doubts is even theoretically possible—results in a Sentencing Guidelines range of 97 to 121 months. Under

extent the Sentencing Guidelines would even be a relevant factor at a hypothetical (and highly implausible) resentencing, even conservatively recalculated sentencing guidelines would produce a sentence far in excess of the expected duration of the appeal.[18]

---

this calculation, Menendez's offense level under Chapter Two of the Sentencing Guidelines Manual is 6 levels lower than the Chapter Two offense level of Nadine Menendez's conduct. *See* U.S.S.G. § 2J1.2(c)(1) (cross-referencing U.S.S.G. § 2X3.1). Nadine Menendez's Chapter Two offense level, in turn, is 32, composed of a 12-level base offense level, U.S.S.G. § 2C1.1(a)(2), plus 2 for more than one bribe or extortion, *id.* § 2C1.1(b)(1), plus 14 for bribes amounting to more than $500,000 but not more than $1,500,000, *id.* §§ 2C1.1(b)(2), 2B1.1(b)(1)(H), plus 4 because the offense involved an elected public official, *id.* § 2B1.1(b)(3). This calculation results in a Chapter Two offense level for Menendez of 26, *see id.* § 2X3.1(a)(1). Menendez's offense level would be further adjusted upward by 4 levels pursuant to U.S.S.G. § 3B1.1(a), given his supervision of Nadine Menendez and the extensive nature of the obstructive criminal activity based on the involvement of, at a minimum, Menendez, Nadine Menendez, Uribe, and the unwitting services of multiple attorneys. *See, e.g., United States v. Paccione*, 202 F.3d 622, 624 (2d Cir. 2000) ("[I]n assessing whether a criminal activity is 'otherwise extensive,' unknowing participants in the scheme may be included as well."). This would produce an adjusted offense level of 30, resulting in a 97 to 121 month Guidelines range, which could be followed by running one month of the sentence on Count Seventeen consecutively with a statutory maximum sentence on Count Eighteen if the Court wished to impose a top-of-the-Guidelines sentence. All of these calculations are justified by the extensive trial evidence with which the Court is familiar, and indeed track the findings the Court already made at the sentencings of Menendez and his codefendants, and—particularly with respect to Nadine Menendez's conduct—none of them is vulnerable to the appeal issues raised by Menendez's motion.

[18] Indeed, even leaving aside the reasons to consider the underlying offense conduct, as if Menendez's appeal could somehow magically cause his and his codefendants' convictions for serious corruption offenses to vanish from the Court's consideration at a resentencing—which it of course cannot—even a highly conservative calculation of Menendez's obstruction offenses based solely on the base offense level of 14 under U.S.S.G. § 2J1.2(a); the 2-level adjustment for the selection of essential and especially probative documents to alter and extensiveness in scope, planning and preparation under U.S.S.G. § 2J1.2(b)(3); and the 4-level aggravating role adjustment under U.S.S.G. § 3B1.1(a), would still produce a Sentencing Guidelines range of 33 to 41 months, well in excess of the expected duration of the appeals process. *See supra* n. 6 (noting sixteen-month average Second Circuit appeal duration).

### B.    Hana and Daibes Would Need to Prevail on All or Nearly All of Their Arguments to Meet the Standard for Bail Pending Appeal

Hana and Daibes, unlike Menendez, do at least indicate appellate arguments that are directed at each count upon which they were sentenced, but none of those arguments presents any substantial question of law or fact.  (*See* Hana Mem. 37-39; Daibes Mem. 8-17.)  Indeed, to obtain a new trial on all counts, Hana and Daibes would need to prevail on not just some but all or nearly all of their arguments, when in fact they raise substantial issues of law or fact as to none.

None of Hana's arguments would—even if it raised a substantial question—on its own be likely to cause, or even capable of causing, a new trial on all counts.  To prevail in his arguments about official acts (Hana Mem. 9-15), for example, Hana would have to convince the Court of Appeals to (a) agree with him that "Tell Will I am going to sign off" on a sale could not be viewed by a rational jury as a promise to sign off on a sale, *and* (b) agree with him that no rational jury could infer a promise of military assistance from Menendez's other conduct, *and* (c) agree with him that no rational jury could find that he promised or attempted an official act by seeking to pressure Under Secretary McKinney, *and* (d) agree with him that, in an entirely different context and as to an entirely different part of the scheme, no rational jury could find that Menendez promised or attempted to perform an official act by seeking to pressure Attorney General Grewal. But even with all of this hypothetically accomplished, Hana's arguments would still not be able to upset the portions of Counts One and Two related to Daibes's federal prosecution and Qatar, to say nothing of the conspiracy to have Menendez serve as a foreign agent while a public official (which was charged as a separate count but which the Court deemed to be included in Count One), which does not require proof of any official act at all.  Similarly, Hana's arguments regarding a *quid pro quo* (*id.* at 15-20) would each have to independently succeed against multiple *quid pro*

43

*quos*, and would still fall short of reaching his foreign agent conspiracy conduct, which requires no *quid pro quo* at all. Likewise, even if Hana raised a substantial issue of law or fact regarding the extra-record evidence (*id.* at 34-37), or the preclusion of additional witnesses about his halal company (*id.* at 21-25), it would have nothing to do with the conspiracy and substantive charges related to the aspects of the scheme other than Egypt. Even his challenges to the summary charts (*id.* at 25-34), which at least collectively span the subject matter of each of the counts of conviction, would require him to convince the Second Circuit that three separate summary charts were *each* somehow so flawed as to invalidate all of the counts relating to that subject matter, and that *none* of those flaws was harmless.

Likewise, none of Daibes's arguments is independently sufficient to invalidate all of the counts against him (even if they could invalidate any counts). As with Hana, Daibes's arguments relating to the laptop (Daibes Mem. 15-17) go at most only to a subset of counts, and his arguments regarding a *quid pro quo* (*id.* at 13-15) are really a series of separate arguments directed at multiple different *quid pro quos*, each of which would have to prevail in order to entitle him to a new trial. Daibes's other arguments fare no better. Daibes would have to prevail on *every* challenge to venue on *every* count (*id.* at 9-10)—including the conspiracy counts as to which even preparatory acts suffice—to be entitled to bail pending appeal on that basis. *See Menendez III*, 2024 WL 5103452, at *34-40 (addressing venue for each count separately). Daibes's arguments regarding gift-giving, even if persuasive, do not affect, at a minimum, the conduct related to Egypt, where he engaged in bribery conduct having no even arguable relationship to gift-giving, such as the transmission of checks from Hana's company to Menendez. *See Menendez III*, 2024 WL 5103452, at *12 (noting evidence of Daibes providing bribe checks from Hana and otherwise facilitating Hana's bribe

payments).  These checks were not gifts but purported compensation for services, and in any case were from the funds of IS EG Halal and thus had nothing to do with Daibes's personal generosity from his own funds, so any additional evidence of Daibes's propensity to give gifts, even if admissible for any purpose, would be simply irrelevant with respect to this conduct.  In short, to be entitled to bail pending appeal, Daibes, like Hana, would have to succeed on all or nearly all of his separate arguments, when in fact he raises substantial questions as to none.

Finally, Daibes's suggestion that this Court should follow a 48-year-old outlier out-of-circuit district court case and treat Daibes's generosity as an "extenuating circumstance" allowing bail pending appeal even if he does not raise substantial questions of law or fact (Daibes Mem. 5, 17) is not permitted by the statute, and is in fact a tacit admission that Daibes is aware he does not qualify for bail pending appeal under the law.  *Cf. Sebelius vs. Cloer*, 569 U.S. 369, 381 (2013) ("We reiterate that when a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted; alteration incorporated)).  Rather than allowing Daibes to purchase an exemption from the Bail Reform Act through acts of generosity enabled by his affluence, this Court should apply the law as written.

45

## CONCLUSION

For the foregoing reasons, the defendants' motions for bail pending appeal should be denied.

Dated:  New York, New York
        February 19, 2025

                                Respectfully submitted,

                                MATTHEW PODOLSKY
                                Acting United States Attorney

                        By:     s/_____
                                Eli J. Mark
                                Daniel C. Richenthal
                                Paul M. Monteleoni
                                Lara Pomerantz
                                Catherine Ghosh
                                Assistant United States Attorneys
                                (212) 637-2431/2109/2219/2343/1114
                                Christina A. Clark
                                Special Assistant United States Attorney
                                (202) 307-5191